KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP
Tracy L. Klestadt
Joseph C. Corneau
Christopher J. Reilly
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245

-and-

RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
Joseph L. Schwartz *(pro hac vice admission pending)*
Tara J. Schellhorn
Rachel F. Gillen *(pro hac vice admission pending)*
Headquarters Plaza, One Speedwell Avenue
Morristown, New Jersey 07960
Telephone: (973) 538-0800
Facsimile: (973) 538-1984

Proposed Attorneys for Debtor and Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
                                                                 :
In re                                                            :
                                                                 :        Chapter 11
TRANSMAR COMMODITY GROUP LTD.[1]                                 :
                                                                 :
                                        Debtor.                  :        Case No. 16-13625 (JLG)
                                                                 :
                                                                 :
                                                                 :
                                                                 :
---------------------------------------------------------------- x

## DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION, (C) SCHEDULING A FINAL HEARING, AND (D) GRANTING RELATED RELIEF

---

[1] The Debtor in this chapter 11 case and the last four digits of the Debtor's taxpayer identification number is as follows: Transmar Commodity Group Ltd. (5889).  The Debtor's principal office is located at 200 South Street, 4th Floor, Morristown, NJ 07960.

Transmar Commodity Group Ltd., the above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its undersigned proposed counsel, submits this Motion for entry of an interim order, substantially in the form attached hereto as **Exhibit 1** (the "Interim Order"), and a final order (the "Final Order") (i) approving the Debtor's use of cash collateral, (ii) providing adequate protection, (iii) setting a final hearing (the "Final Hearing") pursuant to Fed. R. Bankr. P. 4001, and (iv) granting related relief (the "Motion").  In support of this Motion, the Debtor submits the *Declaration of Robert J. Frezza in Support of Debtor's Chapter 11 Petition and First Day Motions* (the "First Day Declaration"), submitted contemporaneously herewith, and respectfully states as follows:

## JURISDICTION, VENUE AND STATUTORY PREDICATE

1.     This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334(b).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.     Venue of this proceeding and of this Motion is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a).

3.     The statutory predicates for the relief sought herein are sections 105, 361, 362, 363 and 507 of the United States Code, 11 U.S.C. §§ 101, et. seq. (the "Bankruptcy Code"), and Federal Rules of Bankruptcy Procedure ( "Bankruptcy Rule") 4001 and 9014.

## BACKGROUND

### A.     General Background

4.     On December 31, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code, commencing the above-referenced Chapter 11 case (the "Bankruptcy Case") in the United States Bankruptcy Court for the Southern District of New York (the "Court"). Since the Petition Date, the Debtor has remained in

possession of its assets and has continued management of its business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5.     A detailed description of the Debtor's business and the facts precipitating the filing of the Debtor's Bankruptcy Case are set forth in the First Day Declaration. Those facts are incorporated herein by reference.

**B.     The Secured Credit Facility**

6.     In September 2011, the Debtor entered into a Credit Agreement with various lenders, pursuant to which the lenders made available to the Debtor certain extensions of credit, including certain standby and documentary letters of credit.  That Credit Agreement has been amended and restated on various occasions.

7.     One of those amendments occurred on or about February 26, 2016, when the Debtor entered into that certain Amended and Restated Credit Agreement dated as of February 26, 2016 (the "Prepetition Credit Agreement"), by and among the Debtor and various financial institutions that were from time to time parties thereto (collectively, the "Prepetition Lenders"), including ABN AMRO Capital USA, LLC (the "Prepetition Agent"), which served as administrative agent and collateral agent, Societe Generale ("SocGen"), which served as syndication agent, and BNP Paribas ("BNP") and Natixis, New York Branch ("Natixis"), which together served as co-documentation agents.  The Prepetition Credit Agreement is a committed senior secured borrowing base facility in the total aggregate amount of four hundred million dollars ($400 million).[2]

---

[2] Upon information and belief, the current Prepetition Lenders are the Prepetition Agent, SocGen, BNP, Natixis, Macquarie, Bank Hapoalim, The Bank of Tokyo-Mitsubishi and Israel Discount Bank of New York.

8.     Pursuant to the Prepetition Credit Agreement, the Prepetition Lenders provided the Debtor with a revolving credit facility.

9.     Pursuant to the Prepetition Credit Agreement and all the related loan and security documentation (the "Prepetition Credit Documents"), the Debtor granted the Prepetition Agent and the Prepetition Lenders blanket first-priority liens on virtually all of the Debtor's assets (excluding any pledge of the equity interests in the Debtor's subsidiaries).

10.    As of the Petition Date, there is an outstanding principal balance of not less than $359,900,000 plus accrued and unpaid interest and fees owed by the Debtor under the Prepetition Credit Documents.

**NEED FOR USE OF CASH COLLATERAL AND POST-PETITION RETAINERS**

11.    Through this Motion, the Debtor requests entry of the Interim Order and the Final Order approving the Debtor's use of cash collateral.  The terms of the Debtor's use of cash collateral are set forth in the Interim Order, which has been agreed to between the Debtor, the Prepetition Agent and the Prepetition Lenders, and in accordance with an agreed-upon cash collateral budget (the "Approved Budget"), which is attached as **Exhibit A** to the Interim Order.

12.    The Debtor has determined, in the exercise of its business judgment, with the assistance of its advisors, that it requires the use of cash collateral.  The Debtor has an immediate and critical need to use cash collateral to pay, in accordance with the Approved Budget, various parties in the ordinary course of business and/or as authorized by the Court.  These parties include, but are not limited to, employees, warehousemen, shippers, landlords, third party vendors, utilities, insurance companies and professionals who, in the judgment of the Debtor's management, which includes the Debtor's CRO, provide essential services needed to operate,

maintain and insure the Debtor's assets. The expenses that need to get paid from the use of cash collateral are absolutely critical to the preservation of the Debtor's business and asset value.

13.     As detailed in the First Day Declaration and above, as of the Petition Date, the Prepetition Agent and Prepetition Lenders hold blanket first-priority liens on virtually all of the Debtor's assets.  The Prepetition Agent and Prepetition Lenders have indicated a willingness to authorize the use of cash collateral, but only on the terms and conditions set forth in the Interim Order and in accordance with the Approved Budget.  The Debtor has concluded, in an exercise of sound business judgment, that the use of cash collateral on the terms and conditions set forth in the Interim Order, as well as a Final Order, and in accordance with the Approved Budget, represent the best means available to the Debtor to operate during the period covered by the Approved Budget.

14.     The Debtor has negotiated the Interim Order in good faith and at arm's length with the Prepetition Agent and Prepetition Lenders.

## SUMMARY OF PRINCIPAL TERMS OF THE CASH COLLATERAL ORDER

15.     Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, the following material provisions are included in the Interim Order:[3]

    a)  Entities with an Interest in Cash Collateral: Prepetition Agent and Prepetition Lenders (see Interim Order at ¶¶ C(i) - (v), E, G, 7, 8, 9, 10, 11, 13, 17, 29, 30).

    b)  Purpose of Use of Cash Collateral: An immediate and critical need exists for the Debtor to use cash collateral to continue to fund its business affairs so as to avoid immediate and irreparable harm to the estate and to estate assets, to pay wages, maintain business relationships with customers, vendors and

---

[3] This summary is qualified in its entirety by reference to the applicable provisions of the Interim Order. To the extent there are any inconsistencies between this summary and the provisions of the Interim Order, the provisions of the Interim Order shall control. Any capitalized terms used but not otherwise defined in the summary shall have the respective meanings ascribed to such terms in the Interim Order.

suppliers, pay professionals and make adequate protection payments, in accordance with the Approved Budget.  (See Interim Order at ¶¶ D, 1, 3, and 6).

c)  <u>Duration</u>: The earliest to occur of (a) March 31, 2017, (b) thirty (30) days after entry of the Interim Order if the Final Order shall not have been entered by this Court on or before such date, and (c) the date upon which an Event of Default occurs (as defined in the Interim Order) and a determination by the Prepetition Agent to terminate the Debtor's use of cash collateral (see Interim Order at ¶ 1, 5).  Certain Events of Default are subject to a seven (7) day cure period.

d)  <u>Events of Default</u>:  Events of Default under the Cash Collateral order include, among other things, (i) failure to make timely required payments, (ii) incorrect representations or warranties, (iii) dismissal or conversion of the Case, (iv) appointment of a chapter 11 trustee, (v) incurrence of impermissible liens or claims, (vi) reversal or modification of the Interim Order, (vii) adverse material judgments or stay relief granted against the Debtor, (viii) the Debtor filing a motion to obtain post-petition financing, a plan or sale or substantially all of its assets without the consent of the Prepetition Agent and Prepetition Lenders, (ix) failure to comply with the Approved Budget, (x) a lien challenge by the Debtor with respect to any Prepetition Lien, or (xii) any lien granted under the Interim Order no longer being valid.  (see Interim Order at ¶ 5) Certain Events of Default are subject to a seven (7) day cure period.

e)  <u>Adequate Protection Liens, Claims and Cash Payments</u>: The Prepetition Agent and the Prepetition Lenders are to receive Adequate Protection Liens (as defined in the Interim Order) (see Interim Order at ¶¶ G, 7, 8, 13), an Adequate Protection Superpriority Claim (as defined in the Interim Order) (see Interim Order at ¶¶ G, 9), Adequate Protection Payments, including payment of the Prepetition Agent's professionals' fees/expenses and, subject to entry of the Final Order, the Debtor's payment of all of its cash in excess of $3 million (plus amounts for unpaid adequate protection payments) to the Prepetition Agent on a weekly basis (see Interim Order at ¶¶ 10, 24).

f)  <u>Liens on Proceeds of Avoidance Actions</u>:  Subject to the entry of the Final Order, the Prepetition Agent and the Prepetition Lenders will receive a lien on the proceeds of avoidance actions under chapter 5 of the Bankruptcy Code (see Interim Order at ¶ 7).

g)  <u>Other Protections Granted</u>: Prepetition Agent and Prepetition Lenders are to receive, among other things: (i) reports, information and access to the Debtor's books and records (see Interim Order at ¶¶ 10, 21), (ii) a modification of the automatic stay to enforce remedies, subject to limitations contained in the Interim Order (see Interim Order at ¶ 12), (iii) a requirement that the Debtor comply with the Approved Budget (see Interim Order at ¶6) ;

(iv) limitations on the disposition of assets and the use of cash collateral (see Interim Order at ¶¶ 19, 23), (v) right to request the Debtor obtain a replacement CRO (see Interim Order at ¶ 25), (vi) subject to entry of the Final Order, a waiver of Section 506(c) claims (see Interim Order at ¶ 26), (vii) subject to entry of the Final Order, a limitation on marshaling (see Interim Order at ¶ 27), (viii) subject to entry of the Final Order, Section 552 rights (see Interim Order at ¶ 28), (ix) right to credit bid (see Interim Order at ¶ 29), and (x) a general and complete release (see Interim Order at ¶¶ 35, 37).

h) <u>Carve-Out</u>: Carve-outs for fees due to the Clerk of the Bankruptcy Court and fees and interest of the Office of the Unites States Trustee pursuant to 28 U.S.C. § 1930 and 31 U.S.C. § 3717.  Carve-out not to exceed $25,000 in the aggregate for any Chapter 7 trustee.  Carve-out for fees of professionals retained by the Debtor and any Creditors' Committee, up to the amounts provided for in the Approved Budget prior to a Carve-Out Event and up to $100,000 in the aggregate after a Carve-Out Event (see Interim Order at ¶ 18).

i) <u>Provisions Limiting Court's Power or Discretion or Restricting Trustee, Debtor or Committee</u>: The Interim Order contains stipulations by the Debtor regarding, among other things, the validity, enforceability and priority of the Prepetition Liens and Prepetition Obligations (see Interim Order at ¶ C).  A Creditors' Committee and third parties, subject to obtaining requisite standing from the Court, retain the rights to commence a potential challenge to the Prepetition Lenders' claims and liens within 60 days after entry of the Final Order (see Interim Order at ¶ 22).  The Interim Order contains limitations on the use of cash collateral to take certain actions against the Prepetition Agent or the Prepetition Lenders, but provides that up to $25,000 may be used by a Creditors' Committee for investigation of the liens and claims of the Prepetition Agent and Lenders (see Interim Order at ¶¶ 5, 23).

## **RELIEF REQUESTED**

16.    The Debtor seeks entry of the Interim Order and a Final Order granting the following relief: (a) authorization for the Debtor to use cash collateral solely in accordance with the Approved Budget; (b) granting adequate protection; (c) scheduling a final hearing (the "Final Hearing"), pursuant to Bankruptcy Rule 4001(c)(2); and (d) granting related relief, as set forth in detail in the Interim Order (**Exhibit 1**).

## BASIS FOR RELIEF

## CASH COLLATERAL AND ADEQUATE PROTECTION –
## THE GOVERNING LEGAL STANDARDS.

17.     Pursuant to section 363(c) of the Bankruptcy Code, a debtor-in-possession may

not use cash collateral without either the consent of the secured party or court approval.  See 11

U.S.C. § 363(c).

18.     The Bankruptcy Code defines "cash collateral" as:

> cash, negotiable instruments, documents of title, securities, deposit
> accounts, or other cash equivalents whenever acquired in which the
> estate and an entity other than the estate have an interest and
> includes the proceeds, products, offspring, rents, or profits of
> property and the fees, charges, accounts or other payments for the
> use or occupancy of rooms and other public facilities in hotels,
> motels, or other lodging properties subject to a security interest as
> provided in section 552 (b) of this title, whether existing before or
> after the commencement of a case under this title.

11 U.S.C. § 363(a).

19.     Section 363(e) of the Bankruptcy Code provides that, upon request of an entity

that has an interest in property to be used by a debtor, the court shall "prohibit or condition such

use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

20.     The Debtor submits that it has satisfied the requirements of section 363(c) and

363(e) of the Bankruptcy Code and should therefore be authorized to use cash collateral.

21.     The Debtor submits that its request to use cash collateral is also warranted under

section 105(a) of the Bankruptcy Code, which provides that "[t]he court may issue any order,

process, or judgment that is necessary or appropriate to carry out the provisions" of the

Bankruptcy Code.  11 U.S.C. § 105(a).

22.     First, the Prepetition Agent and the Prepetition Lenders have consented to the Debtor's use of cash collateral, pursuant to the terms of the Interim Order and consistent with the Approved Budget.

23.     Second, the interests of the Prepetition Agent and the Prepetition Lenders in cash collateral are adequately protected from any potential diminution in value.  For example, the Interim Order provides, *inter alia*, for adequate protection in favor of the interests of the Prepetition Lenders in the form of valid, binding, enforceable, non-avoidable and automatically-perfected replacement liens and security interests on the Debtor's post-petition assets to the same extent, validity and priority existed as of the Petition Date.  Further, as set forth in the Interim Order, the Debtor shall pay the reasonable costs and expenses incurred by the Prepetition Agent, and, subject to entry of the Final Order, make weekly payments of all Excess Cash Collateral. Moreover, as set forth in the Interim Order, to the extent that the adequate protection being granted fails to protect the Prepetition Lenders against any diminution in value of their collateral, the Prepetition Lenders are to receive a superpriority administrative expense claim, pursuant to section 507(b) of the Bankruptcy Code.

24.     The Debtor submits that the proposed adequate protection is fair and reasonable under the circumstances and satisfies the requirements of the Bankruptcy Code.

25.     Accordingly, the Debtor requests that the Court authorize the Debtor's use of cash collateral on an interim and final basis.

### <u>MODIFICATION OF THE AUTOMATIC STAY IS WARRANTED</u>

26.     The Interim Order provides that the automatic stay under section 362 of the Bankruptcy Code shall be vacated or modified to the extent necessary to permit the Prepetition Agent and the Prepetition Lenders to exercise all rights and remedies provided for in the Interim

Order and to take various other actions without further order of or application to the Court following a Termination Date (as defined in the Interim Order).  (See Interim Order at ¶ 12.)  As set forth in the Interim Order, the exercise of remedies is subject to a seven day remedies notice period in accordance with the Local Bankruptcy Rules.

27.    Automatic stay modification provisions have been approved by courts in this district.  See, e.g., In re Gen. Growth Prop. Inc., Case No. 09-11977 (Bankr. S.D.N.Y. May 14, 2009); In re Tronox Inc., Case No. 09-10156 (Bankr. S.D.N.Y. Feb. 6, 2009); In re Chemtura Corp., Case No. 09-11233 (Bankr. S.D.N.Y. Apr. 23, 2009).

28.    As a result, the Debtor submits that a modification of the automatic stay is warranted.

## INTERIM CASH COLLATERAL APPROVAL

29.    Fed. R. Bankr. P. 4001(b) provides that a final hearing on a motion to use cash collateral may not be commenced earlier than 14 days after service of such motion. The Court, however, may conduct an expedited hearing prior to the expiration of this 14-day period and authorize the interim use of cash collateral where, as here, such relief is necessary to avoid immediate and irreparable harm to a debtor's estate.

30.    For the reasons set forth above, the Debtor submits that failure to obtain approval for the use of cash collateral on an expedited basis would lead to immediate and irreparable harm to the estate.  Accordingly, to maintain the ongoing operations of the Debtor, the Debtor urgently seeks the entry of the Interim Order to prevent immediate and irreparable harm to the estate pending the Final Hearing, pursuant to Fed. R. Bankr. P. 4001(b), and authorize the Debtor to use cash collateral in accordance with the Approved Budget and the Interim Order.

**REQUEST FOR FINAL HEARING**

31.     Pursuant to Fed. R. Bankr. 4001(b)(2), the Debtor requests that the Court set a date for the Final Hearing that is as soon as practicable, and fix the time and date prior to the Final Hearing for parties to file objections, if any, to the Motion.

**NOTICE**

32.     Notice of this Motion will be given to: (a) the Office of the U.S. Trustee, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: Serene Nakano, Esq.); (b) the Internal Revenue Service; (c) the parties included on the Debtor's list of twenty (20) largest unsecured creditors; (d) counsel to the Prepetition Agent for itself and the Prepetition Lenders, attn: Andrew P. DeNatale, Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, NY 10038; and (e) all other parties required to receive notice pursuant to Bankruptcy Rule 4001 or requesting to receive notice prior to the date hereof (collectively, the "Notice Parties").  The Debtor submits that, under the circumstances, no other or further notice is required.

33.     No previous request for the relief sought herein has been made by the Debtor to this or any other court.

## CONCLUSION

34.        **WHEREFORE**, for the reasons set forth above, the Debtor respectfully requests that the Court (a) authorize the Debtor's use of cash collateral, on an interim, as well as final basis, (b) enter the Interim Order, substantially in the form attached hereto as **Exhibit 1**, granting the relief requested herein and, after the final Hearing, the Final Order, substantially in the form that shall be filed with the Court prior to the Final Hearing, and (c) such other and further relief as the Court may deem just and proper.

Dated:   New York, New York
         January 3, 2017

<div style="margin-left:40%">

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP

By:

/s/ Tracy L. Klestadt
Tracy L. Klestadt
Joseph C. Corneau
Christopher J. Reilly
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Fax: (212) 972-2245
Email: tklestadt@klestadt.com
       jcorneau@klestadt.com
       creilly@klestadt.com

-and-

RIKER DANZIG SCHERER HYLAND &
PERRETTI LLP
Joseph L. Schwartz *(pro hac vice admission pending)*
Tara J. Schellhorn
Rachel F. Gillen *(pro hac vice admission pending)*
Headquarters Plaza, One Speedwell Avenue
Morristown, New Jersey 07960
Telephone: (973) 538-0800
Facsimile: (973) 538-1984
*Proposed Attorneys for the Debtor and Debtor-in-Possession*

</div>

**<u>Exhibit 1</u>**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------- x
                    :
In re:                    :
                    :  Chapter 11
                    :
TRANSMAR COMMODITY GROUP LTD,[1]  :
                    :  Case No. 16-13625(JLG)
                    :
           Debtor.    :
--------------------------------------------------------- :

**STIPULATION AND INTERIM AGREED ORDER PURSUANT TO**
**11 U.S.C. §§ 361, 362 AND 363 AND RULES 4001(b), 4001(d) AND 9014 OF THE**
**FEDERAL RULES OF BANKRUPTCY PROCEDURE (I) AUTHORIZING**
**DEBTOR'S USE OF CASH COLLATERAL, (II) PROVIDING ADEQUATE**
**PROTECTION THEREOF AND (III) SCHEDULING A FINAL HEARING**

This Stipulation and Interim Agreed Order Pursuant to Sections 105, 361, 362, 363 and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (as amended, the "Bankruptcy Code"), Rules 4001(b) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules") Authorizing Debtor's Use of Cash Collateral, Providing Adequate Protection Thereof and Scheduling a Final Hearing (the "Stipulation and Interim Order") is dated as of December 31, 2016 and is entered into by and among Transmar Commodity Group Ltd, (the "Debtor"), the Prepetition Agent, and the Prepetition Lenders (each as defined below).

This matter having come before the Court upon the Motion of the Debtor in the above-captioned Chapter 11 case (collectively with any Successor Case (as defined herein), the "Case"), for Interim and Final Orders Under 11 U.S.C. §§ 105, 361, 362, 363 and 507 and Rules 4001(b) and 9014 of the Federal Rules of Bankruptcy Procedure (I) Authorizing Debtor's Use of

---

[1]  The last four digits of the Debtor's federal tax identification number are 5889.

Cash Collateral, (II) Providing Adequate Protection Thereof, and (III) Scheduling a Final

Hearing (the "Motion"), seeking, inter alia:

(1) authorization for the Debtor to use Cash Collateral in accordance with

the Approved Budget (as such terms are defined below);

(2)  the grant of adequate protection to the Prepetition Agent and the

Prepetition Lenders with respect to any Diminution in Value (as defined below) of

the Prepetition Agent's and the Prepetition Lenders' interests in the Prepetition

Collateral (as defined below), whether from the use of the Cash Collateral or the

use, sale, lease, depreciation or other decline in value of the Prepetition Collateral,

or as a result of the imposition of the automatic stay under section 362(a) of the

Bankruptcy Code;

(3) approval of certain stipulations by the Debtor with respect to the

Prepetition Credit Agreement (as defined below) and the claims, liens and

security interests arising therefrom; and

(4) a final hearing (the "Final Hearing") on the Motion to be held within

20 days after entry of this Stipulation and Interim Order to consider entry of a

final order (the "Final Order") authorizing the Debtor's use of the Cash Collateral

and granting the adequate protection described herein.

The Court having considered the Motion, the Declaration of Robert F. Frezza  in Support

of the Debtor's Chapter 11 Petition and First Day Motions, the exhibits attached thereto, and the

evidence and arguments submitted at the interim hearing held on January __, 2017 (the "Interim

Hearing"); and adequate notice of the Interim Hearing having been provided in accordance with

Bankruptcy Rules 4001 and 9014 and the Local Rules; and all objections, if any, to the interim

relief requested in the Motion having been withdrawn, resolved or overruled by the Court as set forth below; and capitalized terms used but not defined herein having the respective meanings ascribed to such terms in the Motion; and it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtor and its estate pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtor and its estate; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.    *Jurisdiction and Venue*.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2), and both the Debtor and the Prepetition Lenders consent to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgements in connection with the Motion consistent with Article III of the United States Constitution.  The statutory predicates for the relief sought herein are sections 361, 362 and 363 of the Bankruptcy Code, Bankruptcy Rules 4001(b), 4001(d) and 9014 and Local Rule 4001-2.  Venue for the Case and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    *Commencement of Case*.  On December 31, 2016 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Court") commencing this Case.

NY 76462667

The Debtor is continuing in the management and operation of its business and property as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this Case. As of the date of this Stipulation and Interim Order, the United States Trustee (the "U.S. Trustee") has not appointed an official committee of unsecured creditors in this Case (any such committee, the "Creditors' Committee").

C.   *Debtor's Stipulations*. The Debtor admits, stipulates, acknowledges and agrees that (the following paragraphs (C)(i) through (C)(vi) are collectively defined as the "Debtor's Stipulations"):

(i)   **Prepetition Facility.** Pursuant to that certain Amended and Restated Credit Agreement, dated as of February 26, 2016 (as amended, restated, supplemented or modified from time to time, the "Prepetition Credit Agreement," and together with all related loan and security documents, the "Prepetition Credit Agreement Documents"), among the Debtor, the financial institutions party thereto (the "Prepetition Lenders"), and ABN AMRO Capital USA LLC, as administrative agent and collateral agent (the "Prepetition Agent"), the Prepetition Lenders provided the Debtor with a revolving credit facility (the "Revolving Prepetition Facility").

(ii)   **Prepetition Obligations.** As of the Petition Date, the Debtor was truly and justifiably indebted to the Prepetition Lenders and the Prepetition Agent, without defense, counterclaim or offset of any kind, in respect of loans made in the aggregate principal amount under the Revolving Prepetition Facility of not less than $359,900,000.00, plus accrued and unpaid interest and fees with respect thereto (such amounts, together with any amounts incurred or accrued but unpaid prior to the Petition Date in accordance with the Prepetition Credit Agreement Documents, including but not limited to, interest, fees, expenses and

4

disbursements (including, without limitation, attorneys' fees, financial advisors' fees, related expenses and disbursements), charges, all Obligations (as defined in the Prepetition Credit Agreement) and all other amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable, in respect of any of the obligations owed by the Debtor pursuant to the Prepetition Credit Agreement Documents, the "Prepetition Obligations").

        (iii)    ***Prepetition Collateral***.  To secure the Prepetition Obligations, the Debtor granted to the Prepetition Agent and the Prepetition Lenders a security interest in and lien upon (the "Prepetition Liens") all "Collateral" under and as defined in the Prepetition Credit Agreement Documents (the "Prepetition Collateral").

        (iv)    ***Validity of Prepetition Liens and Prepetition Obligations***. Subject to the rights of any Creditors' Committee and any other party in interest with requisite standing to challenge the Prepetition Lenders' liens or claims, as set forth in Paragraph 22 herein, (a) the Prepetition Liens are valid, binding, enforceable, non-avoidable and duly perfected; (b) the Prepetition Liens have priority over any and all other liens on the Prepetition Collateral, subject only to certain liens otherwise permitted by Section 8.2 the Prepetition Credit Agreement (and only to the extent any such permitted liens were valid, binding, enforceable, non-avoidable, properly perfected and senior in priority to the Prepetition Liens as of the Petition Date or after the Petition Date pursuant to section 546(b) of the Bankruptcy Code, the "Permitted Senior Prior Liens");[2] (c) the Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtor, enforceable in accordance with the terms of the Prepetition Credit

---

[2]   Nothing herein shall constitute a finding or ruling by this Court that any such Permitted Senior Prior Liens are valid, senior, perfected and non-avoidable.  Moreover, nothing shall prejudice the rights of any party in interest including, but not limited to, the Debtor, the Prepetition Agent, the Prepetition Lenders and any Creditors' Committee to challenge the validity, priority, perfection or extent of any such Permitted Senior Prior Lien and/or security interest.

Agreement Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code); (d) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or the Prepetition Obligations exist, and no portion of the Prepetition Liens or the Prepetition Obligations is subject to any challenge or defense, including, without limitation, avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtor and its estate has no offsets, defenses, claims, counterclaims, objections, challenges, causes of action, and/or choses in action, including, without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code, against the Prepetition Agent or the Prepetition Lenders and/or any of their respective affiliates, parents, subsidiaries, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to any of the Prepetition Credit Agreement Documents or the transactions contemplated thereby; (f) the Debtor does not possess, may not assert and has waived, discharged and released any right it may have to challenge any of the Prepetition Obligations and the Prepetition Liens, and/or to assert any offsets, defenses, claims, counterclaims, objections, challenges, causes of action and/or choses of action against the Prepetition Agent, Prepetition Lenders, and/or any of their respective affiliates, parents, subsidiaries, agents, attorneys, advisors, professionals, officers, directors and employees with respect to actions arising out of, based upon or related to the Prepetition Credit Agreement Documents or the transactions contemplated thereby; and (g) any payments made on account of the Prepetition Obligations to or for the benefit of the Prepetition Agent or the Prepetition Lenders prior to the Petition Date were legal and valid and are not subject to avoidance or disgorgement, and the Debtor has waived any right to challenge such payments.

6

(v)    ***Cash Collateral.***    All of the Debtor's cash and cash equivalents, including, without limitation (i) the cash in certain of its deposit accounts, wherever located, whether as original Prepetition Collateral or proceeds of other Prepetition Collateral and (ii) unused cash held as a retainer or in retainer accounts with respect to the professional fees and expenses of the professionals and advisors retained by the Debtor, constitutes cash collateral as such term is defined in section 363(a) of the Bankruptcy Code (the "Cash Collateral") of the Prepetition Agent and the Prepetition Lenders.

(vi)    ***Default by the Debtor***.    The Debtor is in default of its debts and obligations under the Prepetition Credit Agreement Documents.

D.    _Need for Use of Cash Collateral_.    An immediate and critical need exists for the Debtor to use the Cash Collateral to continue to operate its businesses in the ordinary course, pay wages, maintain business relationships with customers, vendors and suppliers, make payroll, pay professionals, make adequate protection payments and to generally conduct its business affairs so as to avoid immediate and irreparable harm to its estate and the value of its assets.

E.    _Consent to Use of Cash Collateral_.    The Prepetition Lenders are willing to consent to the use of the Cash Collateral by the Debtor only in accordance with the Approved Budget (as defined below) and upon the terms and conditions of this Stipulation and Interim Order.  The Debtor is willing to agree to the terms and conditions for use of Cash Collateral as set forth in this Stipulation and Interim Order.

F.    _Business Judgment and Good Faith_.    Good cause has been shown for entry of this Stipulation and Interim Order.  The relief requested herein is necessary, essential and appropriate to aid the continuation of the Debtor's operations and the preservation and

7

maintenance of its assets and business, absent which the Debtor's ability to maximize the value

of its estate for the benefit of its creditors will be irreparably jeopardized, and the Debtor's

customers will be significantly and adversely impacted.  The authority granted herein to use the

Cash Collateral is necessary to avoid immediate and irreparable harm to, and is therefore in the

best interests of, the Debtor and its creditors and estate.  The terms and conditions of this

Stipulation and Interim Order have been negotiated by the Debtor, Prepetition Agent and

Prepetition Lenders at arms' length and in good faith, are fair, reasonable, and the best available

under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent

with its fiduciary duties, and are enforceable pursuant to their terms.

    G. *Adequate Protection*.  The Prepetition Agent and the Prepetition Lenders,

are entitled to receive adequate protection of their interests in the Prepetition Collateral

(including Cash Collateral) to the extent of any diminution in value from and after the Petition

Date resulting from, among other things, the use, sale or lease by the Debtor (or other decline in

value) of the Prepetition Collateral (including Cash Collateral), the imposition of the Carve-Out

(defined below) and the imposition of the automatic stay pursuant to section 362 of the

Bankruptcy Code (collectively, the "Diminution in Value").

    H. *Notice*.  Notice of the Interim Hearing on the Motion has been provided by

the Debtor, whether by facsimile, email, overnight courier and/or hand delivery, to certain parties

in interest, including: (i) the U.S. Trustee; (ii) the Internal Revenue Service; (iii) the parties

included on the Debtor's list of twenty (20) largest unsecured creditors; (v) counsel to the

Prepetition Agent for itself and the Prepetition Lenders; and (vi) all other parties required to

receive notice pursuant to Bankruptcy Rule 4001 or requesting to receive notice prior to the date

hereof.  The Debtor has made reasonable efforts to afford the best notice possible under the

circumstances and such notice is good and sufficient to permit the interim relief set forth in this Stipulation and Interim Order and no further notice need be given.

I.    *Entry of this Stipulation and Interim Order*.    The Debtor has requested immediate entry of this Stipulation and Interim Order pursuant to Bankruptcy Rule 4001(b)(2). The permission granted herein to use the Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtor and its estate.    The Court concludes that immediate entry of this Stipulation and Interim Order is in the best interests of the Debtor and its estate.

Based upon the foregoing findings and conclusions, the Motion and the record made before this Court, and good and sufficient cause appearing therefor:

IT IS HEREBY STIPULATED, CONSENTED, AGREED, AND ORDERED that:

1.    <u>Authorization to Use Cash Collateral</u>.    The Motion is granted on an interim basis on the terms set forth herein.    Subject to the terms and conditions of this Stipulation and Interim Order, the Debtor is authorized to use the Cash Collateral, solely up to the amounts, at the times, in accordance with and for the purposes identified in the Approved Budget (as defined below), until the Termination Date (as defined below).    Nothing in this Stipulation and Interim Order shall authorize the disposition of any assets of the Debtor or its estate outside the ordinary course of business, or the Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted herein and in accordance with the Approved Budget. The Debtor is expressly prohibited from using the Cash Collateral other than as expressly contemplated in this Stipulation and Interim Order.

2.    <u>Objections Overruled</u>.    All objections to the interim relief sought in the Motion to the extent not withdrawn or resolved are hereby overruled.

3.    <u>Use of Cash Collateral</u>.    As a condition to the authorization to use the

9

Cash Collateral, the Prepetition Agent and the Prepetition Lenders require, and the Debtor has agreed, that the Cash Collateral shall be used only for the following purposes:  (a) to fund the Debtor's business, including the preservation and maintenance of its assets and property; (b) to make payments to professionals; and (c) to make adequate protection payments in favor of the Prepetition Lenders as set forth in Paragraph 10 hereof, in each case, subject to the Approved Budget.

4.       Continuation of Prepetition Procedures.   The Debtor shall continue its existing cash management system, and all of the Debtor's deposit accounts and amounts on deposit therein shall be subject to the Prepetition Liens and the Adequate Protection Liens (as defined below).

5.       Termination of Cash Collateral.    Unless otherwise agreed in writing between the Prepetition Agent and the Debtor, the Debtor's right to use the Cash Collateral shall terminate (the date of any such termination, the "Termination Date") on the earliest to occur of (a) March 31, 2017 (the "Scheduled Termination Date"), (b) thirty (30) days after entry of this Stipulation and Interim Order if the Final Order shall not have been entered by this Court on or before such date, and (c) the date upon which any of the following events shall have occurred and be continuing (each, an "Event of Default") and a determination by the Prepetition Agent to terminate the Debtor's use of the Cash Collateral, subject to a seven (7) day cure period solely with respect to items (i), (ii), (xi), (xiv), (xix), (xx) and (xxi) below:

(i)       failure by the Debtor to pay any amounts owed to the Prepetition Agent and Prepetition Lenders as Adequate Protection when due under Paragraphs 10 and 24 and hereof;

(ii)      any representation or warranty made after the Petition Date by the Debtor or its agents to the Prepetition Agent or any of the Prepetition Lenders or their respective advisors about the financial condition of the Debtor, the nature, extent, location or quality of any Collateral, or the disposition or use of any Collateral, including Cash Collateral, shall prove to have been incorrect in any material

10

respect when made;

(iii)    the Case shall be dismissed or converted to a Chapter 7 Case;

(iv)    a Chapter 11 Trustee, a responsible officer or an examiner with enlarged powers relating to the operation of the business of the Debtor or any of its subsidiaries (powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code) shall be appointed in the Case, other than if a Chapter 11 Trustee, a responsible officer or an examiner with enlarged powers is appointed as a result of a motion by the Prepetition Agent or the Prepetition Lenders;

(v)    the Debtor shall have created, incurred or suffered to exist any postpetition lien or security interest other than (i) those granted pursuant to this Stipulation and Interim Order, (ii) carriers', mechanics', warehousemen's, repairmen's or other similar liens arising in the ordinary course of business, (iii) pledges or deposits in connection with workers' compensation, unemployment insurance and other social security legislation and (iv) deposits to secure the payment of any postpetition statutory obligations, performance bonds and other obligations of a like nature incurred in the ordinary course of business; provided that the aggregate value of the liens, pledges or deposits referred to in clauses (iii) and (iv) above shall not exceed $50,000 at any one time;

(vi)    any other superpriority administrative claim (other than the Carve-Out) which is *pari passu* with or senior to the claims of the Prepetition Agent and the Prepetition Lenders shall be granted in the Case;

(vii)    the Court shall enter an order reversing, amending, supplementing, staying, vacating or otherwise modifying this Stipulation and Interim Order without the consent of the Prepetition Agent;

(viii)    any judgment in excess of $250,000 not covered by insurance as to any post-petition obligation shall be rendered against the Debtor and the enforcement thereof shall not be stayed; or there shall be rendered against the Debtor a non-monetary judgment with respect to a postpetition event which causes or would reasonably be expected to cause a material adverse change or a material adverse effect on the property, business, condition (financial or otherwise) of the Debtor or the ability of the Debtor to comply with the terms and conditions of, and perform its obligations under, this Stipulation and Interim Order;

(ix)    the Debtor shall file a motion seeking, or the Court shall enter, an order authorizing the Debtor to obtain post-petition financing pursuant to section 364 of the Bankruptcy Code or the Debtor shall at any time incur indebtedness having priority claim status equal to or senior in priority to the Prepetition Obligations or to the liens securing such obligations absent consent of the Prepetition Agent and the Required Lenders (as defined in the Prepetition Credit Agreement);

(x)    the Debtor shall file a chapter 11 plan or a motion seeking approval of a disclosure statement in respect of or authorization to solicit acceptances of a chapter 11 plan, in each case without the prior written consent of the Prepetition Agent, unless such plan provides for the indefeasible payment in full in cash

11

on the plan's effective date of all Prepetition Obligations;

(xi)    failure by the Debtor to comply with the allowed weekly or cumulative Approved Budget including the Permitted Variances (as such terms are defined below);

(xii)    the Debtor shall file a motion seeking, or the Court shall enter, an order authorizing the sale of all or any portion of the Debtor's assets outside the ordinary course of business, or the Debtor shall sell all or any portion of the Debtor's assets outside the ordinary course of business, unless such order or sale contemplates payment in full in cash of the obligations of the Debtor under the Revolving Prepetition Facility upon consummation of such sale, whether pursuant to a plan of reorganization or otherwise, or such order or sale is otherwise consented to by the Prepetition Agent and the Required Lenders;

(xiii)    any lien purported to be created under this Stipulation and Interim Order shall cease to be, or shall be asserted by the Debtor not to be, a valid and perfected lien, with the priority required by this Stipulation and Interim Order, or the Debtor purports to revoke, terminate or rescind any lien granted hereunder;

(xiv)    the occurrence of any "Termination Event" under, and as such term is defined in, any other cash collateral order or stipulation entered in this Case that has not been cured within the applicable cure period (to the extent applicable);

(xv)    the commencement of any objection, challenge or cause of action by the Debtor against any of the Prepetition Agent or the Prepetition Lenders with respect to the Prepetition Credit Agreement Documents including, without limitation, any action to avoid, modify, dispute, challenge or subordinate any of the Prepetition Obligations or any Prepetition Liens, or entry of an order in any action by any other party granting such relief;

(xvi)    any lien or security interest purported to be created under the Prepetition Credit Agreement Documents shall cease to be, or shall be asserted by the Debtor not to be, a valid and perfected lien on or security interest in any Prepetition Collateral, with the priority required by the Prepetition Credit Agreement Documents;

(xvii)    the entry of an order by the Court granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (i) to allow any creditor to execute upon or enforce a lien on or security interest in any Collateral, or (ii) with respect to any lien of or the granting of any lien on any Collateral to any state or local environmental or regulatory agency or authority, which in either case would have a material adverse effect on the business, operations, inventory, property, assets, or condition financial or otherwise, of the Debtor;

(xviii)    termination of the Debtor's exclusive periods under section 1121(d) of the Bankruptcy Code, unless such termination occurs as a result of a motion filed by the Prepetition Agent or the Prepetition Lenders;

(xix)    the Debtor produces a budget variance report, notice or other reporting showing that it has failed to comply with the Approved Budget (including any Permitted Variances);

12

(xx)    other than in accordance with Paragraph 25 hereof, the termination, resignation of, or material modification of the duties or authority of the Debtor's chief restructuring officer unless a replacement chief restructuring officer satisfactory to the Prepetition Agent is retained by the Debtor within five (5) business days thereof; and

(xxi)    any violation of any other provision of this Stipulation and Interim Order.

The Debtor shall promptly provide notice to the Prepetition Agent (with a copy to counsel for any Creditors' Committee and the United States Trustee) of the occurrence of any Event of Default.  On the Termination Date, all Cash Collateral on deposit in the account(s) in which the Cash Collateral is held shall be applied in accordance with the provisions governing the priority of payments set forth in the Prepetition Credit Agreement Documents.

6.    Budget.  The Cash Collateral provided by the Prepetition Agent and the Prepetition Lenders to the Debtor shall at all times be used in accordance with the Approved Budget (as defined below).

(a)    Generally.    Attached hereto as Exhibit A is a 13-week budget (as it may be amended from time to time with the consent of the Prepetition Agent and the Required Lenders, the "Approved Budget") which reflects on a line-item basis the Debtor's anticipated cumulative cash receipts and expenditures on a weekly basis and all necessary and required cumulative expenses which the Debtor expects to incur on a weekly basis starting on the Petition Date.  The Approved Budget shall be used by the Prepetition Agent and the Debtor for purposes of testing the variances set forth in subparagraph (b) below.

(b)    Budget Reporting.    The Debtor shall provide to the Prepetition Agent, so as to actually be received by the Prepetition Agent within three (3) business days following the end of each week, weekly line-by-line variance reports, in

13

form and substance acceptable to the Prepetition Agent, for the preceding weekly period and on a cumulative basis for the period from the Petition Date to the report date, comparing actual cash receipts and disbursements to amounts projected in the Approved Budget and showing on a line-by-line basis any variance to the corresponding line item of the Approved Budget together with (i) a reasonably detailed explanation for any variance, in a form reasonably satisfactory to the Prepetition Agent and (ii) a certification of Debtor that such variance reports fairly present the financial condition and results of operations of the Debtor.  In addition to the Approved Budget and the variance reports described in this subparagraph (b), the Debtor shall also provide to the Prepetition Agent, so as to actually be received by the Prepetition Agent within six (6) days following the end of each week, (i) weekly reports in respect of accounts receivable and inventory, including, without limitation, account receivables collections, asset sales, forecasts and potential bidders on assets and (ii) weekly reports setting forth the projected delivery schedule of all sales of the Debtor's inventory currently contracted for and all spot or strategic sales of the Debtor's inventory currently anticipated, and all sales of inventory at the Debtor's processors.

The Debtor shall notify the Prepetition Agent (i) of any material adverse deviation of the Debtor's financial performance from that set forth in the Budget within five (5) days after occurrence of such material adverse deviation and (ii) as soon as reasonably practicable if the professional fees and disbursements incurred by the Debtor and any Creditors' Committee have exceeded or are likely to exceed the budgeted amount for such week by more than ten percent (10%).

(c)    <u>Budget Covenants</u>.  The Debtor acknowledges and agrees

14

that, on a weekly basis, (i) the aggregate cash operating disbursements by the Debtor

must be no greater than 10% of the aggregate amount thereof for such week as set forth

in the Approved Budget, (ii) the cumulative aggregate cash operating disbursements by

the Debtor must be no greater than 10% of the cumulative aggregate amount thereof for

such cumulative period as set forth in the Approved Budget, (iii) the aggregate cash

professional fees by the Debtor must be no greater than 10% of the aggregate amount

thereof for such week as set forth in the Approved Budget, (iv) the cumulative aggregate

cash professional fees by the Debtor must be no greater than 10% of the cumulative

aggregate amount thereof for such cumulative period as set forth in the Approved Budget,

(v) the aggregate cash receipts by the Debtor must be no less than 80% of the aggregate

amount thereof for such week as set forth in the Approved Budget, and (vi) the

cumulative aggregate cash receipts by the Debtor must be no less than 90% of the

cumulative aggregate amount thereof for such cumulative period as set forth in the

Approved Budget (the "Permitted Variance").

      7.    Adequate Protection Liens.  Pursuant to sections 361 and 363(e) of the

Bankruptcy Code, as adequate protection of the interests of the Prepetition Agent and

Prepetition Lenders in the Prepetition Collateral (including the Cash Collateral) to the extent of

any Diminution in Value, the Prepetition Agent, for the benefit of itself and the Prepetition

Lenders, is hereby granted, in all cases subject to the Carve-Out (as defined below), continuing,

valid, binding, enforceable and automatically perfected postpetition additional and replacement

security interests in and liens and mortgages on (collectively, the "Adequate Protection Liens")

as follows:

      (a)    a first priority perfected security interest in, and lien and mortgage

on, all prepetition and postpetition property of the Debtor, whether tangible or intangible, not subject to a valid, perfected, enforceable and unavoidable lien or security interest on the Petition Date and;

> (b)       a junior perfected security interest in and lien and mortgage on all prepetition and postpetition property of the Debtor, whether tangible or intangible, that is subject to (i) a valid, perfected, enforceable and unavoidable consensual lien or security interest in existence on the Petition Date or (ii) a valid and unavoidable consensual lien or security interest in existence on the Petition Date that is perfected subsequent thereto as permitted by section 546(b) of the Bankruptcy Code;

provided, however, that the Adequate Protection Liens shall be senior to any other liens, including, without limitation, any other adequate protection replacement liens. The Adequate Protection Liens shall not be secured by any avoidance actions under Chapter 5 of the Bankruptcy Code (the "Avoidance Actions"); provided, however, that, subject to entry of the Final Order, the Adequate Protection Liens shall be secured by the proceeds of any Avoidance Actions.

> 8.       Enforceability of the Adequate Protection Liens. The Adequate Protection Liens shall be deemed perfected as of the commencement of this Case and shall be valid and enforceable against any trustee appointed in this Case or in any Successor Case. No claim or lien having a priority superior to or *pari passu* with those granted by this Stipulation and Interim Order to the Prepetition Agent and the Prepetition Lenders (including, without limitation, liens and security interests, if any, granted in favor of any federal, state, municipal or other governmental unit, commission or board for any liability of the Debtor) shall be granted or allowed while any portion of the Revolving Prepetition Facility or Prepetition Obligations

remain outstanding, and the Adequate Protection Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise, in each case other than the Carve Out.  Any provision of any lease or other license, contract or other agreement that requires the consent or approval of one or more landlords or other parties or the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other postpetition collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code.  Any such provision shall have no force and effect with respect to the transactions granting postpetition liens in such leasehold interest, or the proceeds of any assignment and/or sale thereof by the Debtor, in favor of the Prepetition Agent and Prepetition Lenders in accordance with the terms of this Stipulation and Interim Order.

9.     <u>Adequate Protection Superpriority Claim</u>.  Pursuant to section 507(b) of the Bankruptcy Code, upon entry of this Stipulation and Interim Order, the Prepetition Agent and Prepetition Lenders are hereby granted an allowed superpriority administrative expense claim in the Case (the "<u>Adequate Protection Superpriority Claim</u>"), to the extent of any Diminution in Value, which Adequate Protection Superpriority Claim shall have priority over any and all administrative expense claims and unsecured claims against the Debtor or its estate in the Case, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(b), 507(a), 546(c), 546(d), 726, or 1114 of the Bankruptcy Code, or any other provision of the Bankruptcy Code; and (b) which shall at all times be senior to the rights of the

Debtor and its estate and any trustee or other estate representative appointed in this Case or any Successor Case. Notwithstanding the foregoing, the Adequate Protection Superpriority Claim shall be subject to the Carve-Out.

> 10. <u>Adequate Protection Payments and Protections</u>. (a) As further adequate protection, the Debtor shall pay all reasonable prepetition and post-petition fees, costs and expenses incurred by the Prepetition Agent, including the fees and expenses of legal counsel and other professionals retained by the Prepetition Agent (including, without limitation, its financial advisor, RPA Advisors LLC, and its counsel, Stroock & Stroock & Lavan LLP and Emmet, Marvin & Martin LLP), as and when due and payable under the Prepetition Credit Agreement. The invoices for such fees and expenses shall not be required to comply with the U.S. Trustee fee guidelines, may be in summary form only, and shall be provided to counsel to the Debtor, with a copy to the U.S. Trustee and counsel for any Creditors' Committee.[3] The U.S. Trustee or any Creditors' Committee may object to the reasonableness of the fees, costs and expenses included in any professional fee invoice submitted hereunder; <u>provided</u> that any such objection shall be forever waived and barred unless it (a) is filed with this Court and served on the applicable professional no later than ten (10) days after service by such professional of its invoice and (b) describes with particularity the items or categories of fees, costs and expenses that are the subject of the objection and provides the specific basis for the objection to each such item or category of fees, costs and expenses; <u>provided</u> <u>further</u>, <u>however</u>, that the Debtor shall promptly pay all amounts that are not the subject of any such objection. Any hearing on an objection to the payment of any fees, costs and expenses of the Prepetition Agent set forth in a

---

[3] Such invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine.

professional fee invoice shall be limited to the reasonableness of the fees, costs and expenses which are the subject of such objection  If and only if the Court determines, by final non-appealable  order, that the Prepetition Lenders were undersecured as of the Petition Date under section 506(b) of the Bankruptcy Code then parties in interest may assert that any payments of professional fees made pursuant to this Stipulation and Interim Order in respect of the Prepetition Credit Agreement constitute and may be recharacterized as principal repayments on account of the Prepetition Credit Agreement or seek to have such payments disgorged solely to the extent such payments exceed the allowed principal amount of such secured claim.

(b)     The Debtor shall provide to the Prepetition Agent such reports and information as may be reasonably requested by the Prepetition Agent, including the reports set forth in Paragraph 6 hereof.  In addition, the Prepetition Agent shall have the right, upon reasonable notice to the Debtor, at any time during normal business hours, to inspect, audit, examine, check, and make copies of, and extract non-privileged information from, the Debtor's records and to obtain company information from the Debtor's management, and the Debtor shall make its records and management available to the Prepetition Agent for such purposes.  Further, the Debtor authorizes its independent certified public accountants, financial advisors, investment bankers, and consultants to cooperate, consult with, and provide to the Prepetition Agent all such information as may be reasonably requested with respect to the business, results of operations and financial condition of the Debtor.

11.     <u>Reservation of Rights of Prepetition Lenders</u>.  (a)  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Agent and Prepetition Lenders hereunder is insufficient to compensate them for any Diminution in Value of their respective interests in the

19

Prepetition Collateral during the Case.

(b)   Except on the terms of this Stipulation and Interim Order, at all times before the Termination Date, the Debtor is hereby enjoined and prohibited from at any time (i) using the Cash Collateral, (ii) using the Prepetition Collateral and (iii) applying to any court for an order (other than the Final Order) authorizing the use of the Cash Collateral or the Prepetition Collateral.

12.   <u>Modification of Automatic Stay</u>.   Subject to paragraph 15 below, the automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms, rights, benefits, privileges, remedies and provisions of this Stipulation and Interim Order without further notice to any party or motion or application to, order of, or hearing before this Court.

13.   <u>Perfection of Adequate Protection Liens</u>.   This Stipulation and Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, without limitation, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the Adequate Protection Liens, or to entitle the Prepetition Agent or the Prepetition Lenders to the priorities granted herein.  Notwithstanding the foregoing, the Prepetition Agent is authorized to file, as it in its sole discretion deems necessary, such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the Adequate Protection Liens, and all such financing statements, mortgages, notices

20

and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect the Adequate Protection Liens.  The Debtor is authorized and directed to execute and deliver promptly upon demand to the Prepetition Agent all such financing statements, mortgages, notices and other documents as the Prepetition Agent may reasonably request.  The Prepetition Agent, in its discretion, may file a photocopy of this Stipulation and Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar documents, and the subject filing or recording officer is authorized to file or record such copy of this Stipulation and Interim Order.  For the avoidance of doubt, the automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby lifted as necessary to allow the Prepetition Agent to take the actions described in this paragraph.

14.    Proceeds of Subsequent Financing.    If the Debtor, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed in this Case, shall obtain credit or incur debt pursuant to sections 364(b), 364(c) or 364(d) of the Bankruptcy Code or in violation of the Prepetition Credit Agreement Documents at any time prior to the time at which Repayment in Full (as defined below) has occurred, then, unless otherwise agreed by the Prepetition Agent in writing in its sole discretion, all the cash proceeds derived from such credit or debt shall immediately be turned over to the Prepetition Agent to be applied in a manner consistent with the Prepetition Credit Agreement Documents.

15.    Rights and Remedies Upon Event of Default.    On the Termination Date, (a) the Debtor's right to use the Cash Collateral on the terms and conditions set forth in this Stipulation and Interim Order shall terminate automatically, (b) the principal of and accrued

NY 76462667

interest on the Prepetition Obligations, together with all fees and other liabilities constituting the obligations owing to the Prepetition Agent and the Prepetition Lenders, including, without limitation, any unpaid amounts owing as Adequate Protection, to the extent not already accelerated, shall automatically become immediately due and payable, (c) the Prepetition Agent and each Prepetition Lender may set off amounts in any account of the Debtor maintained with the Prepetition Agent or such Prepetition Lender, respectively, and (d) the Prepetition Agent and the Prepetition Lenders may, upon seven (7) days' written notice (the "Remedies Notice Period") to counsel for the Debtor (with a copy to counsel for any Creditors' Committee and the United States Trustee), exercise any other rights and remedies available under this Stipulation and Interim Order or applicable law, including, without limitation, foreclosing upon and selling all or a portion of the Prepetition Collateral; provided that, notwithstanding the foregoing clause (d), during the Remedies Notice Period, the Prepetition Agent may take reasonable steps to preserve and protect the Prepetition Collateral; provided further that the only basis upon which a party in interest may object to, and seek to prevent, the exercise of enforcement remedies by the Prepetition Agent is with respect to whether an Event of Default has or has not occurred.  The actions described in clauses (c) and (d) above (including the actions described in the first proviso to clause (d)) may be taken without further notice (other than the seven (7) days' notice set forth above) to any party or further order of or application to the Court as the Prepetition Agent or the Prepetition Lenders shall, in their discretion, elect, and the automatic stay is hereby deemed modified and vacated to the extent necessary to permit such actions, so long as no order prohibiting such action is entered by this Court during the Remedies Notice Period.  Upon the exercise of any such enforcement rights, the Debtor shall cooperate in the disposition of the Prepetition Collateral and shall not otherwise interfere or actively encourage others to interfere

22

with the Prepetition Agent's enforcement of its rights.  The Prepetition Agent and the Prepetition Lenders shall be entitled to apply the payments or proceeds of the Prepetition Collateral in accordance with the provisions of the Prepetition Credit Agreement Documents.

16.      Good Faith; No Modification or Stay of this Interim Order.  Based upon the terms of this Stipulation and Interim Order and the Prepetition Agent's and Prepetition Lenders' consent thereto, the payments, liens, security interests, superpriority claims and other protections provided in this Stipulation and Interim Order are fair and reasonable to protect the interests of the Prepetition Agent and Prepetition Lenders.  The Prepetition Agent and Prepetition Lenders have acted in good faith in connection with their agreement to permit the use of Cash Collateral as approved by this Stipulation and Interim Order, and their reliance on this Stipulation and Interim Order is in good faith.  If this Stipulation and Interim Order or any of the provisions hereof are hereafter modified, vacated, stayed, or reversed by subsequent order of this Court or any other court without the express, written consent of the Prepetition Agent, such modification, vacation, stay or reversal shall not affect (a) the validity of any obligation, indebtedness or liability incurred by the Debtor to the Prepetition Agent or any Prepetition Lender pursuant to this Stipulation and Interim Order before the later of (i) the effective date of such modification, vacation, stay or reversal and (ii) the date of the Prepetition Agent's and each Prepetition Lender's receipt of notice thereof, (b) the validity and enforceability of the rights, remedies, liens, security interests and priorities created and authorized by this Stipulation and Interim Order, or (c) the Prepetition Agent's or any Prepetition Lender's right and ability to collect and apply all amounts due to it under the Prepetition Credit Agreement Documents as approved by this Stipulation and Interim Order.

Notwithstanding any modification, vacation, stay or reversal of this Stipulation and

23

Interim Order, any indebtedness, obligation or liability incurred by the Debtor pursuant to this Stipulation and Interim Order arising prior to the later of the effective date of such modification, vacation, stay or reversal or the Prepetition Agent's and each Prepetition Lender's receipt of notice thereof, shall be governed in all respects by the original provisions of this Stipulation and Interim Order, and the Prepetition Agent and each Prepetition Lender shall continue to be entitled to all of the rights, remedies, privileges and benefits, including any payments authorized herein, and all security interests, liens, and priorities granted herein, with respect to all such indebtedness, obligations or liabilities incurred or existing prior to such date, and with respect to the Debtor's use of the Cash Collateral prior to such date. Without limiting the generality of the foregoing, in the event this Court or any other court hereafter modifies any of the provisions of this Stipulation and Interim Order, such modifications shall not affect the rights, remedies, liens and priorities of the Prepetition Agent and the Prepetition Lenders granted pursuant to this Stipulation and Interim Order with respect to the Prepetition Obligations and any Cash Collateral used prior to any such modifications.

17. <u>Proofs of Claim</u>. The Prepetition Agent and the Prepetition Lenders will not be required to file proofs of claim in this Case for any claim related to the Prepetition Obligations. Notwithstanding anything to the contrary contained in any order entered by the Court in relation to the establishment of a bar date in this Case, the Prepetition Agent, on behalf of itself and the Prepetition Lenders, is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in this Case for any claim allowed herein. Any proof of claim filed by the Prepetition Agent shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the Prepetition Lenders. Any order entered by the Court in

relation to the establishment of a bar date in the Case shall not apply to the Prepetition Agent or the Prepetition Lenders.

18.   <u>Carve-Out</u>.

(a)   As used in this Stipulation and Interim Order, the "<u>Carve-Out</u>" means:  (i) the quarterly fees and interest thereon required to be paid pursuant to 28 U.S.C. §1930(a)(6); (ii) any fees payable to the Clerk of the Court; (iii) all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code in an aggregate amount not to exceed $25,000; (iv) the accrued and unpaid fees and expenses incurred prior to a Carve-Out Event (as defined below), by the professionals retained by the Debtor or any Creditors' Committee, up to the amounts provided for in the Approved Budget (the "<u>Permitted Professional Fees</u>"); and (v) all unpaid fees and expenses incurred by the professionals retained by the Debtor or any Creditors' Committee after a Carve-Out Event, in an aggregate amount not to exceed $100,000; <u>provided</u>, <u>however</u>, that with respect to the foregoing clauses (iv) and (v), in each case, such fees and expenses (A) shall be net of any unused retainers held by the respective professionals; (B) will only be paid to the extent allowed by the Court; and (C) will be subject to the rights of the Prepetition Agent, the Prepetition Lenders and any other party in interest to object to the allowance thereof.

(b)   <u>No Direct Obligation to Pay Professional Fees and Disbursements</u>. None of the Prepetition Agent or the Prepetition Lenders shall be responsible for the direct payment or reimbursement of any Permitted Professional Fees under any chapter of the Bankruptcy Code.

(c)   <u>Payment of Permitted Professional Fees Prior to the Carve-Out Event</u>.   Prior to a Carve-Out Event, the Debtor shall be permitted to pay the Permitted

Professional Fees pursuant to the Approved Budget and an order of the Court, as the same may be due and payable.

(d)    Payment of Permitted Professional Fees Subsequent to the Carve-Out Event.  Upon the occurrence and during the continuation of an Event of Default (each, a "Carve-Out Event") and to the extent unencumbered funds are not available to pay in full the administrative expenses set forth in the Approved Budget, the right of the Debtor to pay Permitted Professional Fees outside the Carve-Out shall terminate, but the Debtor shall be authorized to pay all accrued and unpaid Permitted Professional Fees after a Carve-Out Event, subject to Paragraph 18(a) hereof.  After the occurrence of a Carve-Out Event, the Debtor shall provide immediate notice by email or facsimile to all applicable professionals informing them that a Carve-Out Event has occurred and further advising them that the Debtor's ability to pay such professionals is subject to and limited by the Carve-Out.  At all times (prior and subsequent to a Carve-Out Event), the Permitted Professional Fees may be paid only to the extent they are allowed by the Court, or as otherwise permitted pursuant to the compensation procedures approved by the Court.

19.    Disposition of Prepetition Collateral/Application of Proceeds.  The Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Prepetition Collateral other than in the ordinary course of business without the prior written consent of the Prepetition Agent (and no such consent shall be implied from any other action, inaction or acquiescence by the Prepetition Agent or from any order of this Court).  To the extent that any Prepetition Collateral is sold, transferred, leased, encumbered or otherwise disposed of as contemplated by the terms of the Prepetition Credit Agreement Documents, any proceeds of such sale, lease or other disposition of the Prepetition Collateral shall be applied in a manner

26

consistent with the Prepetition Credit Agreement Documents.

20.   <u>Maintenance of Prepetition Collateral</u>.   Until the earliest of (a) the indefeasible repayment in full in cash of all Prepetition Obligations ("<u>Repayment in Full</u>"), (b) the resolution of this Case, or (c) the closing of a sale of the applicable Prepetition Collateral, the Debtor shall (i) insure the Prepetition Collateral as required under the Prepetition Credit Agreement Documents and (ii) maintain the cash management system in effect as of the Petition Date, subject to approval by the Court, as modified by any order that may be entered by the Court and that is acceptable to the Prepetition Agent and the Required Lenders.

21.   <u>Copies of Documents</u>.   The Debtor shall provide the Prepetition Agent with copies of all documents provided to any official committee appointed in this Case, as well as copies of all non-privileged consultants' reports, appraisals, business plans and similar documents as they become available to the Debtor, including, without limitation, any and all audits and other non-privileged reports prepared by the Debtor's accountants.   The Debtor shall provide the Prepetition Agent with a description of any documents withheld as privileged and shall give the basis for such assertion of privilege.   In addition, the Debtor shall timely file and serve upon the Prepetition Agent and its counsel all pleadings and other documents filed by the Debtor in this Case, including the financial reports required by the U.S. Trustee's office.

22.   <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>.

(a)   Nothing herein shall prejudice the rights of any Creditors' Committee and any other party in interest with requisite standing, other than the Debtor (which has expressly waived its rights in this regard), to:  (i) seek to object to or to challenge the findings herein, the Debtor's Stipulations, or any other stipulations herein, including, but not

27

limited to, those in relation to (A) the validity, extent, priority, characterization or perfection of the security interests and liens of the Prepetition Agent with respect to the Prepetition Collateral, or (B) the validity, allowability, priority, characterization, secured status or amount of the Prepetition Obligations evidenced by the Prepetition Credit Agreement Documents; or (ii) otherwise assert any claim or cause of action, including, without limitation, any derivative action, against the Prepetition Agent and the Prepetition Lenders.  For the avoidance of doubt, the Debtor has herein expressly waived any and all rights to (i) challenge any of the Debtor's Stipulations, including, without limitation, those stipulations as to the priority, extent, validity and perfection of the Prepetition Agent's and Prepetition Lenders' claims, liens, and interests, of any nature, under the Prepetition Credit Agreement Documents or (ii) otherwise assert any claim or cause of action, including, without limitation, any derivative action, against the Prepetition Agent or Prepetition Lenders.

Any party, including any Creditors' Committee, if appointed, must commence an adversary proceeding or contested matter, as required by the applicable Bankruptcy Rules, seeking to bring any claim, counterclaim, objection, challenge, cause of action and/or chose in action against the Prepetition Agent and the Prepetition Lenders by no later than sixty (60) calendar days from the date of entry of the Final Order (the "Challenge Period").

(b)    The Challenge Period may only be extended with the written consent of the Prepetition Agent and the Required Lenders or by order of the Court.

(c)    Except to the extent asserted in an adversary proceeding or contested matter (as required by the applicable Bankruptcy Rules) filed during the Challenge Period, upon the expiration of the Challenge Period, to the extent not otherwise waived or barred:  (i) any and all claims, counterclaims, objections, challenges, causes of action and/or

choses in action as described in paragraph (a) above sought to be brought by any party (including, without limitation, any Creditors' Committee or any trustee or other estate representative appointed in this Case or any Successor Case), shall be deemed to be forever waived and barred; and (ii) all of the Debtor's Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, validity and perfection of the Prepetition Agent's and Prepetition Lenders' claims, liens, and interests, of any nature, under the Prepetition Credit Agreement Documents, or otherwise incorporated or set forth in this Stipulation and Interim Order, shall be of full force and effect and forever binding upon the Debtor, the Debtor's bankruptcy estate and all creditors, interest holders, and other parties in interest in this Case. Without limiting the foregoing, the Prepetition Obligations shall constitute allowed claims, not subject to disallowance or subordination, for all purposes in this Case and the Prepetition Agent's and Prepetition Lenders' liens on and security interests in the Prepetition Collateral shall not be subject to any other or further challenge by any party in interest.

As to any of the findings herein, the Debtor's Stipulations and the other stipulations herein which are expressly challenged as described above, such findings and stipulations shall be binding and preclusive on any Creditors' Committee and any other party in interest except to the extent a final order is entered in favor of the plaintiff sustaining any such challenge or claim in any such timely filed adversary proceeding or contested matter.

Nothing in this Stipulation and Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including any committee, standing or authority to pursue any cause of action belonging to the Debtor or its estate.

23.    <u>Limitations on Use of the Cash Collateral and the Carve-Out</u>.

(a)    The Cash Collateral and the Carve-Out may not be used, or sought

to be used, (i) in connection with preventing, hindering, or delaying any of the Prepetition Agent's or the Prepetition Lenders' enforcement or realization upon any of the Prepetition Collateral once an Event of Default has occurred and has not been cured within the cure period set forth herein (other than with respect to the rights otherwise granted herein with respect to the Remedies Notice Period); or (ii) except as permitted by the terms of this Stipulation and Interim Order, in connection with selling or otherwise disposing of Prepetition Collateral without the prior written consent of the Prepetition Agent and the Required Lenders.

(b)     The Cash Collateral and the Carve-Out also may not be used (i) in connection with: (A) investigating, objecting, challenging, litigating, contesting, opposing, marshaling or seeking to subordinate or recharacterize in any way any claims, liens, or Prepetition Collateral (including the Cash Collateral described herein) held by or on behalf of the Prepetition Agent or the Prepetition Lenders; (B) investigating, asserting, commencing or prosecuting any claims or causes of action of any kind or nature whatsoever, including, without limitation, any Avoidance Actions, against the Prepetition Agent or the Prepetition Lenders, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees, in each case with respect to the Prepetition Credit Agreement Documents or the transactions contemplated therein or thereby or the exercise of enforcement actions and/or remedies thereunder; (C) investigating, prosecuting an objection to, challenging, or contesting or opposing in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, character or enforceability of any of the Prepetition Obligations or the Prepetition Liens, or any other rights or interests of any of the Prepetition Agent or the Prepetition Lenders; (D) paying any amount on account of any claims arising prior to the Petition Date unless such payments are (1) approved by an order of this Court (including hereunder) and (2) in accordance

NY 76462667

with the Approved Budget; or (E) preventing, hindering or otherwise delaying the exercise by

the Prepetition Lenders of any rights and/or remedies under this Stipulation and Interim Order,

the Prepetition Credit Agreement Documents, or applicable law, or the enforcement or

realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the

Prepetition Lenders upon any of the Prepetition Collateral; (ii) to make any distribution under a

plan of reorganization in this Case; (iii) to make any payment in settlement of any claim, action

or proceeding, before any court, arbitrator or other governmental body without the prior written

consent of the Prepetition Agent and the Required Lenders, unless otherwise ordered by the

Court; (iv) to pay any fees or similar amounts to any person who has proposed or may propose to

purchase interests in the Debtor without the prior written consent of the Prepetition Agent and

the Required Lenders, (v) for using or seeking to use any insurance proceeds constituting

Prepetition Collateral without the prior consent of the Prepetition Agent and the Required

Lenders; or (vi) for incurring Indebtedness (as defined in the Prepetition Credit Agreement

Documents) outside the ordinary course of business without the prior consent of the Prepetition

Agent and the Required Lenders.  Notwithstanding the foregoing, the Prepetition Collateral and

the Carve-Out are permitted to be used to reimburse any Creditors' Committee in connection

with a normal and customary investigation by such committee of the liens and security interests

granted to the Prepetition Agent and Prepetition Lenders; provided, that the amount of such

reimbursement shall be capped at $25,000 (the "Investigation Reimbursement Costs").  For the

avoidance of doubt, the line item in the Approved Budget for the fees and expenses of counsel to

any Creditors' Committee shall include the Investigation Reimbursement Costs.

    24.  <u>Excess Cash Collateral</u>.  Subject to entry of the Final Order, the Debtor

shall pay all cash on hand (determined as of the close of business on Friday of each week) in

31

excess of $3,000,000 plus accrued but unpaid fees, costs and expenses payable under Paragraph 10 hereof (the "Excess Cash Collateral") to the Prepetition Agent at or before Monday of each week, for distribution to the Prepetition Lenders in accordance with the terms of the Prepetition Credit Agreement Documents; provided, however, that prior to the entry of the Final Order, Excess Cash Collateral shall be segregated or otherwise reserved and shall not be used by the Debtor for any purpose.

25.     Replacement of CRO.  Upon the request of the Prepetition Agent, and after the Prepetition Agent has provided the Debtor with a list of three individuals to be considered for the role of a replacement chief restructuring officer, and subject to the approval of the Court, as set forth below, the Debtor shall (a) select a replacement chief restructuring officer from such individuals, the identity and terms of employment of which are acceptable to the Prepetition Agent and the Required Lenders and (b) file an application with the Court seeking authorization to employ such replacement chief restructuring officer within thirty (30) days following such request.

26.     Section 506(c) Claims.  Subject to entry of the Final Order, no costs or expenses of administration which have been or may be incurred in the Case at any time shall be charged against the Prepetition Agent, Prepetition Lenders, or any of their claims, or the interests of the Prepetition Agent or Prepetition Lenders in the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the Prepetition Agent and the Required Lenders, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agent or lenders.  Notwithstanding anything to the contrary herein, the and liens and security interests granted to the Prepetition Agent and the Prepetition Lenders herein shall not include, apply to or encumber Avoidance Actions;

provided, however, that, upon entry of the Final Order, such liens and security interests shall include, apply to and encumber the proceeds of Avoidance Actions.

        27.    No Marshaling.  Subject to entry of the Final Order, the Prepetition Agent and the Prepetition Lenders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral, including, without limitation, the Cash Collateral.

        28.    Section 552(b).  Subject to entry of the Final Order, the Prepetition Agent and the Prepetition Lenders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to any of the Prepetition Agent or Prepetition Lenders with respect to the proceeds, products, offspring or profits of any of the Prepetition Collateral, including, without limitation, the Cash Collateral.

        29.    Right to Credit Bid.  The Prepetition Agent (at the direction of the Prepetition Lenders) shall have the unqualified right to "credit bid" up to the full amount of the Prepetition Obligations in connection with any sale or other disposition of all or any portion of the Prepetition Collateral, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code, and shall automatically be deemed a "qualified bidder" with respect to any disposition of Prepetition Collateral under or pursuant to (a) section 363 of the Bankruptcy Code, (b) a plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code, or (c) a sale or disposition by a chapter 7 trustee for any of the Debtors under section 725 of the Bankruptcy Code.  The Prepetition Agent shall have the right to assign, transfer, sell or otherwise dispose of its rights to credit bid, except as may be

NY 76462667

prohibited by the Prepetition Credit Agreement Documents.

30.    <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Stipulation and Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the Prepetition Agent's or Prepetition Lenders' right to seek any other or supplemental relief in respect of the Debtor; (b) any of the rights of any of the Prepetition Agent or Prepetition Lenders under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request a modification of the automatic stay of section 362 of the Bankruptcy Code; (ii) request modified or additional adequate protection; (iii) request dismissal of the Case, conversion of the Case to a case under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers; or (iv) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan; or (c) any other rights, claims or privileges (whether legal, equitable or otherwise) of any of the Prepetition Agent or Prepetition Lenders.  Notwithstanding anything herein to the contrary, the entry of this Stipulation and Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the Debtor's, any Creditors' Committee's or any party in interest's right to oppose any of the relief requested in accordance with the immediately preceding sentence except as expressly set forth in this Stipulation and Interim Order.  Nothing in this Stipulation and Interim Order shall be construed as or deemed to constitute the consent of the Prepetition Agent or the Prepetition Lenders to the use, sale or lease of the Prepetition Collateral, including the Cash Collateral, on any terms other than as expressly provided herein.

31.    <u>No Waiver by Failure to Seek Relief</u>.  The failure of the Prepetition Agent or the Prepetition Lenders to seek relief or otherwise exercise their rights and remedies under the Prepetition Credit Agreement Documents or applicable law, as the case may be, shall not

34

constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the Prepetition Agent or the Prepetition Lenders.

32.    <u>Binding Effect of Stipulation and Interim Order</u>.    Immediately upon execution by this Court, the terms and provisions of this Stipulation and Interim Order shall become valid and binding upon and inure to the benefit of the Debtor, the Prepetition Agent, the Prepetition Lenders, all other creditors of the Debtor, any Creditors' Committee or other committee appointed in the Case, and all other parties in interest and their respective successors and assigns, including any trustee or other estate representative appointed in this Case or any Successor Case, <u>provided</u>, that the Prepetition Agent and Prepetition Lenders shall have no obligation to allow any trustee or other estate representative appointed in this Case or any Successor Case to use the Cash Collateral.

33.    <u>No Modification of Stipulation and Interim Order</u>.    Until and unless the Repayment in Full of the Revolving Prepetition Facility, the Debtor irrevocably waives the right to seek, and shall not seek or consent to, directly or indirectly: (a) without the prior written consent of the Prepetition Agent (i) any modification, stay, vacatur or amendment to this Stipulation and Interim Order; (ii) a priority claim for any administrative expense or unsecured claim against the Debtor (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 506(c), 507(a) or 507(b) of the Bankruptcy Code) in the Case, equal or superior to the Adequate Protection Superpriority Claims, other than the Carve-Out; or (iii) any lien on any of the Prepetition Collateral or postpetition property with priority equal or superior to the Prepetition Liens or the Adequate Protection Liens.    The Debtor irrevocably waives any right to seek any amendment, modification or extension of this Stipulation and Interim Order without the prior

NY 76462667

written consent, as provided in the foregoing, of the Prepetition Agent and no such consent shall

be implied by any other action, inaction or acquiescence of the Prepetition Agent.

34.    <u>Setoff and Recoupment</u>.    Notwithstanding anything to the contrary

contained herein, nothing in this Stipulation and Interim Order shall limit or impair the nature,

extent, validity and/or priority of rights, if any, of any party in interest in the Case under sections

545, 546(c), and 553 of the Bankruptcy Code and/or the equitable doctrine of recoupment.

35.    <u>Limits on Lender Liability</u>.    Nothing in the Prepetition Credit Agreement

Documents or any actions taken or omitted to be taken by the Prepetition Agent or the

Prepetition Lenders in reliance upon such documents shall in any way be construed or interpreted

to impose or allow the imposition upon the Prepetition Agent or Prepetition Lenders of any

liability for any claims arising from any and all activities of the Debtor in the operation of its

business following the Petition Date.    In permitting the use of Cash Collateral or in exercising

any rights or remedies as and when permitted pursuant to this Stipulation and Interim Order, the

Prepetition Agent and the Prepetition Lenders shall not be deemed to be in control of the

operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with

respect to the operation or management of the Debtor (as such terms, or any similar terms, are

used in the United States Comprehensive Environmental Response, Compensation and Liability

Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute), nor shall they

owe any fiduciary duty to the Debtor, their creditors or estates, or shall constitute or be deemed

to constitute a joint venture or partnership with the Debtors. Furthermore, nothing in this

Stipulation and Interim Order shall in any way be construed or interpreted to impose or allow the

imposition upon the Prepetition Agent and the Prepetition Lenders of any liability for any claims

arising from the prepetition or postpetition activities of the Debtor and its respective affiliates (as

36

defined in section 101(2) of the Bankruptcy Code).

36.    <u>Survival</u>.   The provisions of this Stipulation and Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in the Case; (b) converting the Case to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing the Case; (d) approving the sale of any Collateral pursuant to section 363(b) of the Bankruptcy Code; or (e) pursuant to which this Court abstains from hearing the Case.   Notwithstanding the entry of any such order, the terms and provisions of this Stipulation and Interim Order, including the claims, liens, security interests and other protections granted to the Prepetition Agent and the Prepetition Lenders pursuant to the Prepetition Credit Agreement Documents, shall continue in full force and effect in the Case and shall maintain their priority until Repayment in Full has occurred.

Notwithstanding any termination of the Debtor's authority to use the Cash Collateral pursuant to the terms of this Stipulation and Interim Order, all liens, security interests, priorities, rights, remedies and other protections provided to the Prepetition Agent and the Prepetition Lenders in this Stipulation and Interim Order shall survive such termination and remain in full force and effect with the same continuing priority as described herein with respect to any of the Prepetition Obligations, any claims and obligations arising under this Stipulation and Interim Order that are outstanding on such termination date, and any fees incurred by the Prepetition Agent and the Prepetition Lenders after termination of this Stipulation and Interim Order in enforcing their rights hereunder.

37.    <u>Release</u>.   Subject to the rights of any Creditors' Committee and/or any other party with requisite standing, as set forth in Paragraph 22 herein, the Debtor hereby forever, unconditionally and irrevocably releases, discharges and acquits the Prepetition Agent,

NY 76462667

the Prepetition Lenders and each of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys and agents, past, present and future, and their respective heirs, predecessors, successors and assigns (collectively, the "Releasees") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, reasonable attorneys' fees), debts, liens, actions and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether or not known or matured, arising out of or relating to the Collateral or this Stipulation and Interim Order, including, without limitation, (A) any so-called "lender liability" or equitable subordination claims or defenses, (B) any and all claims and causes of action arising under the Bankruptcy Code, and (C) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the Prepetition Liens or the Prepetition Obligations. The Debtor further waives and releases any defense, right of counterclaim, right of set-off or deduction to the payment of the Prepetition Obligations, that the Debtors now have or may claim to have against the Releasees, arising out of, connected with or relating to any and all acts, omissions or events occurring prior to the Court entering this Stipulation and Interim Order.

38.    No Third Party Beneficiaries.    No rights are intended to be created hereunder for the benefit of any third party or creditor or any direct or indirect incidental beneficiary except as specifically provided herein. The Carve-Out shall not be available to any party other than those specifically authorized to receive payment therefrom as provided in paragraph 18 hereof.

39.    Scheduling of Final Hearing.    The Final Hearing to consider entry of the Final Order is scheduled for _____  __, ____ at __:00 a.m./p.m. before the Honorable

38

_____, United States Bankruptcy Judge, on the __th floor, in Courtroom __, at the United States Bankruptcy Court for the Southern District of New York. On or before _____ __, ____, the Debtor shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Stipulation and Interim Order and of the Final Hearing (the "Final Hearing Notice"), together with copies of this Stipulation and Interim Order and the Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; (c) counsel for any Creditors' Committee, if appointed by such date; and (d) any other party to whom notice is required to be given pursuant to Bankruptcy Rules 2002 and 4001 and the Local Rules. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order must file written objections with the Clerk of the Court on or before _____ __, ____ at 4:00 p.m. (Eastern Time) and must serve such objections so that they are received on or before such date by: (i) counsel to the Debtor, attn: Joseph L. Schwartz, Esq., Riker, Danzig, Scherer, Hyland & Perretti LLP, Headquarters Plaza, One Speedwell Avenue, Morristown, New Jersey 07962; (ii) counsel to any Creditors' Committee; (iii) counsel to the Prepetition Agent, attn: Andrew P. DeNatale, Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, NY 10038; and (v); the Office of the United States Trustee for the Southern District of New York, attn: _____, U.S. Federal Office Building, 201 Varick Street, Room 1006, New York, New York 10014.

40.    *Nunc Pro Tunc* Effect of this Stipulation and Interim Order.    This Stipulation and Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution by the parties and approval by the Court.

41.    Retention of Jurisdiction.    The Court has and will retain jurisdiction to

39

enforce this Stipulation and Interim Order according to its terms.


SO ORDERED by the Court this ___ day of _____, 2017.


_____
JAMES L. GARRITY, JR.
UNITED STATES BANKRUPTCY JUDGE

40

**<u>Exhibit A</u>**

**Transmar Commodity Group**
**Cash Collateral Budget**
**As of December 31, 2016**

### EXHIBIT A
### To The Amendment to the Collateral Agreement

| | January | | | | February | | | | March | | | W12 | W13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | W1 | W2 | W3 | W4 | W5 | W6 | W7 | W8 | W9 | W10 | W11 | W12 | W13 |
| Monday | 2-Jan-17 | 9-Jan-17 | 16-Jan-17 | 23-Jan-17 | 30-Jan-17 | 6-Feb-17 | 13-Feb-17 | 20-Feb-17 | 27-Feb-17 | 6-Mar-17 | 13-Mar-17 | 20-Mar-17 | 27-Mar-17 |
| Friday | 6-Jan-17 | 13-Jan-17 | 20-Jan-17 | 27-Jan-17 | 3-Feb-17 | 10-Feb-17 | 17-Feb-17 | 24-Feb-17 | 3-Mar-17 | 10-Mar-17 | 17-Mar-17 | 24-Mar-17 | 31-Mar-17 |
| | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected | Projected |
| **Opening Cash Balance** | $ 5,263,207 | $ 3,918,647 | $ 6,889,451 | $ 10,228,595 | $ 13,894,319 | $ 18,457,547 | $ 23,275,564 | $ 25,496,198 | $ 26,981,226 | $ 27,732,197 | $ 27,638,250 | $ 26,826,039 | $ 26,773,127 |
| **Cash Receipts** | | | | | | | | | | | | | |
| Accounts Receivables | 2,496,371 | 3,333,700 | 3,579,933 | 3,947,124 | 5,572,722 | 5,157,323 | 3,270,377 | 1,688,576 | 1,136,831 | 78,346 | - | 14,451 | 5,641 |
| Other Receipts | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Cash Receipts** | 2,496,371 | 3,333,700 | 3,579,933 | 3,947,124 | 5,572,722 | 5,157,323 | 3,270,377 | 1,688,576 | 1,136,831 | 78,346 | - | 14,451 | 5,641 |
| **Operating Disbursements** | | | | | | | | | | | | | |
| Inventory Purchases | (1,662,987) | (1,528) | (1,673) | (964) | (63) | (94,894) | (1) | (84,903) | - | (66,326) | - | (56,061) | - |
| Salaries and Benefits | (184) | (138,000) | - | (112,882) | - | - | - | - | - | - | - | - | - |
| SG&A | (103,809) | (9,534) | (576) | (1,927) | (85,647) | (7,695) | (78) | (8,747) | (49,325) | (7,695) | (6,810) | (2,015) | (15,465) |
| Warehousing | (797,203) | - | - | - | (457,846) | (104,796) | - | - | - | - | - | - | - |
| Logistics | (793,273) | (37,761) | (65,000) | - | - | - | (0) | - | (18,222) | - | - | - | - |
| Melting | (201,975) | (19,023) | (14,090) | (10,576) | (23,789) | (26,870) | (10,664) | (397) | - | (50) | - | 213 | (397) |
| Other Disbursements | (90,500) | (2,050) | (4,451) | (50) | (64,950) | (50) | (2,000) | (4,501) | (39,095) | - | (2,000) | (4,501) | - |
| **Total Operating Disbursements** | (3,649,931) | (207,896) | (85,789) | (126,400) | (632,294) | (234,306) | (12,744) | (98,547) | (88,420) | (92,293) | (8,810) | (62,363) | (15,862) |
| **TOTAL Operating Cash Flow** | (1,153,560) | 3,125,804 | 3,494,144 | 3,820,724 | 4,940,428 | 4,923,017 | 3,257,634 | 1,590,028 | 1,048,411 | (13,947) | (8,810) | (47,912) | (10,221) |
| **Other (Sources)/ Uses** | | | | | | | | | | | | | |
| Professional Fees | (191,000) | (155,000) | (155,000) | (155,000) | (377,200) | (105,000) | (1,037,000) | (105,000) | (297,440) | (80,000) | (803,400) | (5,000) | 311,040 |
| *Debtor Counsel* | - | - | - | - | - | - | (480,000) | - | - | - | (336,000) | - | 166,000 |
| *Debtor Financial Advisor* | - | - | - | - | - | - | (452,000) | - | - | - | (246,400) | - | (1,600) |
| *Senior Lender Counsel* | (75,000) | (75,000) | (75,000) | (75,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | - | (10,000) |
| *Senior Lender Advisor* | (75,000) | (75,000) | (75,000) | (75,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (25,000) | (25,000) | - | 140,000 |
| *Special Lender Counsel* | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) | - | (5,000) | (5,000) | (5,000) | (5,000) | (5,000) |
| *Claims Agent* | (20,000) | - | - | - | (75,000) | - | - | - | - | (81,000) | - | - | (4,000) |
| *UCC Counsel & Advisor* | (16,000) | - | - | - | (67,200) | - | - | - | (77,440) | - | - | - | (69,360) |
| *Debtor NY Local Counsel* | - | - | - | - | - | - | (100,000) | - | - | - | (60,000) | - | 60,000 |
| *Transmar Germany Counsel* | - | - | - | - | (30,000) | - | (15,000) | - | - | - | - | - | 35,000 |
| **Total Other (Sources)/ Uses** | (191,000) | (155,000) | (155,000) | (155,000) | (377,200) | (105,000) | (1,037,000) | (105,000) | (297,440) | (80,000) | (803,400) | (5,000) | 311,040 |
| **TOTAL Net Cash Flow** | (1,344,560) | 2,970,804 | 3,339,144 | 3,665,724 | 4,563,228 | 4,818,017 | 2,220,634 | 1,485,028 | 750,971 | (93,947) | (812,210) | (52,912) | 300,819 |
| **Ending Cash Balance** | $ 3,918,647 | $ 6,889,451 | $ 10,228,595 | $ 13,894,319 | $ 18,457,547 | $ 23,275,564 | $ 25,496,198 | $ 26,981,226 | $ 27,732,197 | $ 27,638,250 | $ 26,826,039 | $ 26,773,127 | $ 27,073,946 |