**Hearing Date:** April 5, 2017 at 11:00 a.m.
**Objection Deadline:** March 29, 2017 at 4:00 p.m.

KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP
Tracy L. Klestadt
Joseph C. Corneau
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245

-and-

RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
Joseph L. Schwartz (admitted *pro hac vice*)
Tara J. Schellhorn
Rachel F. Gillen (admitted *pro hac vice*)
Headquarters Plaza, One Speedwell Avenue
Morristown, New Jersey 07960
Telephone: (973) 538-0800
Facsimile: (973) 538-1984

Attorneys for the Debtor and Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------- x
                                                                :
In re                                                           :      Chapter 11
                                                                :
TRANSMAR COMMODITY GROUP LTD.[1]                                :
                                                                :
        Debtor.                                                 :      Case No. 16-13625(JLG)
                                                                :
                                                                :
                                                                :
                                                                :
--------------------------------------------------------------- x

### NOTICE OF HEARING ON DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTOR TO CONSENT TO SALE OF ASSETS OF SUBSIDIARY COCOA SERVICES WEST, L.L.C. AND FOR RELATED RELIEF

        **PLEASE TAKE NOTICE** that a hearing (the "Hearing") on the *Debtor's Motion for Entry of an Order Authorizing Debtor to Consent to Sale of Assets of Subsidiary Cocoa Services West, L.L.C. and for Related Relief* (the "Application") shall be held on **April 5, 2017 at 11:00 a.m. (EST)** before the Honorable James L. Garrity, Jr., United States Bankruptcy Judge, in

---

[1] The Debtor in this chapter 11 case and the last four digits of the Debtor's taxpayer identification number is as follows: Transmar Commodity Group Ltd. (5889).  The Debtor's principal office is located at 200 South Street, 4th Floor, Morristown, NJ 07960.

Courtroom 601 at the United States Bankruptcy Court, Southern District of New York, Alexander Hamilton Customs House, One Bowling Green, New York, New York 10004-1408.

**PLEASE TAKE FURTHER NOTICE** that responses or objections to the Application and the relief requested therein, if any, shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, shall set forth the basis for the response or objection and the specific grounds therefore, and shall be filed with the Court electronically in accordance with General Order M-399 by registered users of the Court's case filing system (the User's Manual for the Electronic Case Filing System can be found at http://www.nysb.uscourts.gov, the official website for the Court), with two hard copies delivered directly to Chambers pursuant to Local Bankruptcy Rule 9028-1 and served so as to be actually received no later than **March 29, 2017 at 4:00 p.m.** (the "Objection Deadline"),by (a) counsel for Transmar Commodity Group, Ltd., Riker Danzig Scherer Hyland & Perretti LLP, Headquarters Plaza, One Speedwell Avenue, Morristown, New Jersey 07960 Attn: Joseph L. Schwartz; (b) local counsel for Transmar Commodity Group, Ltd., Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York  10036-7203, Attn.: Tracy L. Klestadt; (c) counsel to ABN AMRO Capital USA LLC, administrative agent and collateral agent under that certain Amended and Restated Credit Agreement, dated as of February 26, 2016, Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038, Attn.: Andrew P. DeNatale; (d) counsel for the Official Committee of Unsecured Creditors, Tarter Krinsky & Drogin LLP, 1350 Broadway, 11th Floor, New York, New York 10018, Attn.: Rocco Cavaliere, (e) the Office of the United States Trustee for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Serene Nakano; and (f) all parties filing a notice of appearance herein.

[remainder of page intentionally blank]

**PLEASE TAKE FURTHER NOTICE** that copies of the above-referenced Application is available on the Bankruptcy Court's official website www.nysb.uscourts.gov for registered users of the Bankruptcy Court's case filing system, or free-of charge from the Debtor's bankruptcy website, http://www.donlinrecano.com/transmar.

Dated:   New York, New York
         March 15, 2017

                        KLESTADT WINTERS JURELLER
                        SOUTHARD & STEVENS, LLP


                  By:   */s/ Tracy L. Klestadt*
                        Tracy L. Klestadt
                        Joseph C. Corneau
                        200 West 41st Street, 17th Floor
                        New York, New York 10036
                        Tel: (212) 972-3000
                        Fax: (212) 972-2245
                        Email: tklestadt@klestadt.com
                               jcorneau@klestadt.com
                               creilly@klestadt.com

                              -and-

                        RIKER DANZIG SCHERER HYLAND &
                        PERRETTI LLP
                        Joseph L. Schwartz (admitted *pro hac vice*)
                        Tara J. Schellhorn
                        Rachel F. Gillen (admitted *pro hac vice*)
                        Headquarters Plaza, One Speedwell Avenue
                        Morristown, New Jersey 07960
                        Telephone: (973) 538-0800
                        Facsimile: (973) 538-1984

                        *Attorneys for the Debtor and*
                        *Debtor-in-Possession*

KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP
Tracy L. Klestadt
Joseph C. Corneau
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245

-and-

RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
Joseph L. Schwartz (admitted *pro hac vice*)
Tara J. Schellhorn
Rachel F. Gillen (admitted *pro hac vice*)
Headquarters Plaza, One Speedwell Avenue
Morristown, New Jersey 07960
Telephone: (973) 538-0800
Facsimile: (973) 538-1984

Attorneys for the Debtor and Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
                               :

In re                             :    Chapter 11
                               :

TRANSMAR COMMODITY GROUP LTD.[1]  :
                               :
     Debtor.                    :    Case No. 16-13625 (JLG)
                               :
                               :
                               :
------------------------------------------------------------- x

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTOR TO
CONSENT TO SALE OF ASSETS OF SUBSIDIARY COCOA SERVICES
WEST, L.L.C. AND FOR RELATED RELIEF**

       Transmar Commodity Group Ltd., the above-captioned debtor and debtor-in-possession

(the "Debtor"), hereby submits its Motion (the "Motion") for entry of an order, substantially in

---

[1] The Debtor in this chapter 11 case and the last four digits of the Debtor's taxpayer identification number is as follows: Transmar Commodity Group Ltd. (5889). The Debtor's principal office is located at 200 South Street, 4th Floor, Morristown, NJ 07960.

the form attached hereto as **Exhibit A**, authorizing the Debtor to consent to the sale of assets by

the Debtor's subsidiary, Cocoa Services West, L.L.C. ("CSW"), outside the ordinary course of

business, and for related relief (the "Motion"). In support of the Motion, the Debtor respectfully

represents as follows:

## BACKGROUND

1.      On December 31, 2016 (the "Petition Date"), the Debtor filed a voluntary petition

for relief pursuant to Chapter 11 of the Bankruptcy Code, commencing the above-referenced

chapter 11 case (the "Bankruptcy Case") in the United States Bankruptcy Court for the Southern

District of New York (the "Court").

2.      Since the Petition Date, the Debtor has remained in possession of its assets and

has continued management of its business as a debtor-in-possession, pursuant to sections 1107

and 1108 of the Bankruptcy Code.

3.      On January 18, 2017, an official committee of unsecured creditors was appointed

in the Bankruptcy Case (the "Committee") [Docket No. 68]. No trustee or examiner has been

appointed in the Bankruptcy Case.

4.      The Debtor is winding down its business operations and liquidating its assets in

this Bankruptcy Case.

5.      A detailed description of the Debtor's business and the facts precipitating the

filing of the Debtor's Bankruptcy Case are set forth in the Declaration of Robert J. Frezza in

Support of Debtor's Chapter 11 Petition and First Day Motions [Docket No. 4].

## JURISDICTION, VENUE AND STATUTORY PREDICATES

6.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157

and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## COCOA SERVICES WEST, L.L.C.

7.     The Debtor is a wholly-owned subsidiary of a private limited liability company organized under the laws of England and Wales known as Transmar Group Ltd. ("Transmar Group").

8.     Transmar Holdings LLC, a Delaware limited liability company ("Transmar Holdings"), in turn, owns 85.135% of Transmar Group, while ITC Cocoa House Ltd., a private limited liability company organized under the laws of England and Wales, owns the other 14.865% of Transmar Group.  ITC Cocoa House Ltd. is a wholly-owned subsidiary of ITOCHU Corporation, a Japanese corporation whose stock is traded on the Tokyo Stock Exchange.

9.     The Debtor, in turn, owns 100% of the equity in the following three (3) direct subsidiaries: (i) Morgan Drive Associates, L.L.C.; (ii) Cocoa Services, L.L.C.; and (iii) CSW.[2]

10.     CSW is a limited liability company wholly owned by the Debtor, and organized under the laws of the State of California.

## THE POTENTIAL SALE OF ASSETS BY CSW

11.     CSW, which is not a debtor in this or any other bankruptcy case, owns a cocoa processing facility in Union City, California, which CSW operates on real estate leased from an unrelated third party landlord.  CSW is currently in the process of pursuing a non-bankruptcy sale (the "CSW Sale") of substantially all of its assets (the "CSW Assets") outside the ordinary course of business.  There are a number of third parties that have expressed interest in the CSW Assets and who have entered into confidentiality agreements with CSW in order to review documents and related due diligence materials.

---

[2] An organizational chart illustrating the corporate structure of the Debtor and certain related entities and affiliates is annexed hereto as **Exhibit B.**

12.    The CSW Sale will inure to the benefit of the Debtor's estate because it is anticipated that the CSW Sale will generate significant excess sale proceeds after payment in full of all of CSW's creditors, which are *de minimis*. As a result, after CSW's payment of all of its creditors from the CSW Sale proceeds, the net sale proceeds generated from the CSW Sale, will be distributed to the Debtor's estate, as the Debtor owns 100% of the equity of CSW.

13.    Given that CSW does not have sufficient liquidity to pay its professionals to move forward with a sale process with respect to the CSW Assets, the Debtor recently approached its pre-petition lenders (the "Pre-petition Lenders") and requested they consent to the use of their collateral to fund the costs of the CSW sale process, including the payment of CSW's professionals to pursue the CSW Sale.[3]    After lengthy discussions, the Pre-petition Lenders consented to (i) the Debtor's advance to CSW of $15,000 of the Pre-petition Lenders' cash collateral so that CSW's counsel can begin work preparing for a potential CSW Sale and, (ii) assuming CSW receives satisfactory offers from third parties for the CSW Assets, the Debtor's advance to CSW of an additional $35,000 of the Pre-petition Lenders' cash collateral so that it can complete the sale transaction, for a total advance of $50,000.

14.    Once CSW closes on its sale of the CSW Assets and pays its creditors, CSW will reimburse the Debtor the $50,000 that was previously advanced, along with distributing to the Debtor the balance of the net sale proceeds from the CSW Sale.

## **RELIEF REQUESTED**

15.    Through this Motion, the Debtor seeks (i) approval to consent to the CSW Sale, as required by California law, (ii) approval to advance up to $50,000 to CSW so that CSW

---

[3] Riker Danzig Scherer Hyland & Perretti LLP ("Riker Danzig"), bankruptcy counsel to the Debtor, will represent CSW in connection with the CSW Sale. Riker Danzig will be paid directly by CSW for such work. A Supplement to Riker Danzig's Retention Application [Doc. No. 97] is being filed simultaneously herewith to reflect Riker Danzig's representation of CSW.

can move forward and effectuate the CSW Sale, and (iii) related relief, all of which proposes to benefit the estate.

## LEGAL AUTHORITY

16.     Section 363(b) of the Bankruptcy Code provides, in pertinent part, that: "[t]he trustee, after notice and a hearing, may use . . . other than in the ordinary course of business, property of the estate . . . " 11 U.S.C. § 363(b).  Further, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105(a).

17.     To obtain court approval to use property outside the ordinary course of business under section 363(b), the Debtor must show a legitimate business justification for the proposed action. See Comm. of Equity Sec.  Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983) (noting that a debtor much show "some articulated business justification" for using property outside the ordinary course of business under section 363(b)).  If a valid business justification exists, the law vests a debtor's decision to use property out of the ordinary course of business with a "strong presumption" that corporate business decisions are made on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company. Official Comm. of Subordinated  Bondholders v. Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (citing Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).  Accordingly, courts are "loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence." Id.

18.     If a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved.  See In re Lionel Corp., 722 F.2d at 1070; Myers v. Martin (In re Martin),

91 F.3d 389, 395 (3d Cir. 1996) (citing <u>Fulton State Bank v. Schipper (In re Schipper)</u>, 933

F.2d 513, 515 (7th Cir. 1991)); <u>Stephens Indus., Inc. v. McClung,</u> 789 F.2d 386, 390 (6th Cir.

1986); <u>In re Delaware & Hudson R.R. Co.</u>, 124 B.R. 169, 176 (D. Del. 1991) (courts have

applied the "sound business purpose" test to evaluate motions brought pursuant to section

363(b)).

19.    In addition, under section 105(a) of the Bankruptcy Code, the Court has

expansive equitable power to fashion any order or decree that seeks to preserve or protect the

value of the debtor's assets. <u>See</u>, <u>e.g.</u>, <u>In re Chinichian,</u> 784 F.2d 1440, 1443 (9th Cir. 1986)

("Section 105 sets out the power of the bankruptcy court to fashion order as necessary

pursuant to the purposes of the Bankruptcy Code."); <u>In re NWFX, Inc.</u>, 864 F.2d 588, 590 (8th

Cir. 1988) ("The overriding consideration in bankruptcy...is that equitable principles govern");

<u>In re Cooper Properties Liquidating Trust, Inc.</u>, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986)

("The Bankruptcy Court is one of equity and as such it has a duty to protect whatever equities

a debtor may have in property for the benefit of their creditors as long as that protection is

implemented in a manner consistent with the bankruptcy laws.").

20.    CSW, which owns valuable assets that, when sold, will supplement and inure

to the benefit of the Debtor's estate, is a limited liability company wholly owned by the

Debtor, organized under the laws of the State of California, and managed by managers

pursuant to an operating agreement executed by the Debtor as of February 15, 2016 (the

"<u>Operating Agreement</u>"), a true copy of which is attached as **<u>Exhibit C</u>**.<sup>4</sup>

21.    Section 17704.07(c) of the California Revised Uniform Limited Liability

Company Act (the "<u>California LLC Act</u>") provides the following:

---

<sup>4</sup> Section 5(a) of the Operating Agreement appoints the following individuals as the managers of CSW: Peter G.
Johnson, Mary Johnson, Peter B. Johnson, Timothy B. Johnson and William Yu.  Peter B. Johnson resigned as a
manager of CSW on December 7, 2016.

In a manager-managed limited liability company . . . (4) [t]he consent of all members of the limited liability company is required to . . . (A) [s]ell, lease, exchange, or otherwise dispose of all, or substantially all, of the limited liability company's property, with or without the goodwill, outside the ordinary course of the limited liability company's activities . . . ."

22.    Pursuant to the California LLC Act, the Debtor, which is the sole member of CSW, must consent to the CSW Sale.  However, pursuant to Section 5(b) of the Operating Agreement, the managers of CSW have complete authority to act on behalf of CSW, except that "Shareholder Reserved Matters" (as defined in the Shareholders' Agreement of the Debtor's direct parent, Transmar Group (the "Transmar Group Shareholder Agreement")) require the unanimous written consent of the shareholders of Transmar Group.  Schedule 1 of the Transmar Group Shareholder Agreement, in turn, defines "[a] change in the ownership of any subsidiary of [Transmar Group]" as a Shareholder Reserved Matter, which could potentially be viewed to include CSW, an indirect subsidiary of Transmar Group.  However, given that CSW seeks to sell its assets, and not its membership interests, the CSW Sale would not result in a change in the ownership of CSW.  As a result, Section 5(b) of the Operating Agreement does not appear to be implicated, causing the unanimous written consent of Transmar Group's shareholders not to be required.[5]

## **WAIVER OF STAY REQUESTED**

23.    The Debtor further seeks a waiver of any stay of the effectiveness of the order granting the Motion.  Pursuant to Rule 6004(h) of the Bankruptcy Rules, "an order authorizing

---

[5] Transmar Group's shareholders are Transmar Holdings and ITC Cocoa House Ltd. (together, the "Indirect Shareholders"), both of which are receiving notice of the Motion.  In addition to the fact that Section 5(b) of the Operating Agreement does not appear to be applicable, given the fact that the Debtor is winding down its operations and liquidating its assets, to the extent the consent requirement under the Operating Agreement were applicable, that consent requirement is largely irrelevant and/or moot in that the Indirect Shareholders' economic interests in CSW are worthless.  To the extent the CSW Sale may require the consent of the Indirect Shareholders, who are receiving notice of this Motion, the Debtor requests that those parties' consent be deemed to have been obtained.

the use, sale or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise."

24.    For the reasons, set forth above, authorizing the Debtor to consent to the CSW Sale is essential to this Bankruptcy Case in order to maximize the value of the estate. Accordingly, the Debtor respectfully submits that the requirements of Rule 6004(h) should be waived.

## NOTICE

25.    Notice of this Motion will be given to: (a) the Office of the U.S. Trustee (Attn: Serene Nakano, Esq.); (b) all required governmental entities; (c) all secured creditors; (d) Stroock & Stroock & Lavan LLP, as counsel to ABN AMRO Capital USA LLC, administrative agent and collateral agent under that certain Amended and Restated Credit Agreement, dated as of February 26, 2016 (Attn: Andrew P. DeNatale); (e) counsel to the Committee (Attn.: Rocco A. Cavaliere); (f) Transmar Group; (g) Transmar Holdings; (h) ITC Cocoa House Ltd., and (i) any such other party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-1(b) (collectively, the "Notice Parties"). The Debtor submits that no other or further notice need be given.

## NO PRIOR REQUEST

26.    No previous request for the relief sought herein has been made by the Debtor to this or any other court.

[remainder of page intentionally blank]

## CONCLUSION

**WHEREFORE** the Debtor respectfully requests that the Court enter an order, substantially in the form annexed hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         March 15, 2017

                                        KLESTADT WINTERS JURELLER
                                        SOUTHARD & STEVENS, LLP

                                By:   */s/ Tracy L. Klestadt*
                                      Tracy L. Klestadt
                                      Joseph C. Corneau
                                      200 West 41st Street, 17th Floor
                                      New York, New York 10036
                                      Tel: (212) 972-3000
                                      Fax: (212) 972-2245
                                      Email: tklestadt@klestadt.com
                                             jcorneau@klestadt.com
                                             creilly@klestadt.com

                                              -and-

                                      RIKER DANZIG SCHERER HYLAND &
                                      PERRETTI LLP
                                      Joseph L. Schwartz (admitted *pro hac vice*)
                                      Tara J. Schellhorn
                                      Rachel F. Gillen (admitted *pro hac vice*)
                                      Headquarters Plaza, One Speedwell Avenue
                                      Morristown, New Jersey 07960
                                      Telephone: (973) 538-0800
                                      Facsimile: (973) 538-1984

                                      *Attorneys for the Debtor and*
                                      *Debtor-in-Possession*

**<u>Exhibit A</u>**

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
                                           :

In re                                :     Chapter 11
                                             :

TRANSMAR COMMODITY GROUP LTD.[1]    :

                       Debtor.           :     Case No. 16-13625(JLG)
                                             :

                                             :

------------------------------------------------------------- x

### ORDER AUTHORIZING THE DEBTOR TO CONSENT TO SALE OF ASSETS OF SUBSIDIARY COCOA SERVICES WEST, L.L.C. AND FOR RELATED RELIEF

**UPON** the motion (the "Motion")[2] of Transmar Commodity Group Ltd., the above-captioned debtor and debtor-in-possession (the "Debtor") for entry of an Order authorizing the Debtor to consent to the sale of assets by the Debtor's subsidiary, Cocoa Services West, L.L.C. ("CSW"), outside the ordinary course of business, and for related relief; and this Court having jurisdiction to consider the Motion and the relief requested therein; and consideration of the Motion and the relief required being a core proceeding; and venue being proper before this Court; and due and sufficient notice of the Motion having been given under the particular circumstances to the Notice Parties, which include the Indirect Shareholders; and it appearing that no other or further notice need be provided; and this Court having determined that relief requested in the Motion being in the best interest of the Debtor, its creditors, and all parties in interest; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted

---

[1] The Debtor in this chapter 11 case and the last four digits of the Debtor's taxpayer identification number is as follows: Transmar Commodity Group Ltd. (5889).  The Debtor's principal office is located at 200 South Street, 4th Floor, Morristown, NJ 07960.

[2] All capitalized terms used but not otherwise defined herein shall have the same meanings ascribed to them in the Motion.

herein; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**IT IS ORDERED** as follows:

1.      The Motion is granted as set forth herein.

2.      The Debtor is authorized and empowered, pursuant to section 105(a) and 363(b) of the Bankruptcy Code, to consent to the CSW Sale, as required by California law.

3.      To the extent that the CSW Sale may require the consent of the Indirect Shareholders, the Indirect Shareholders are deemed to have consented to the CSW Sale.

4.      The Debtor is authorized and empowered, pursuant to section 105(a) and 363(b) of the Bankruptcy Code, to advance up to $50,000 to CSW so that CSW can effectuate the CSW Sale.

5.      The 14-day stay period under Rule 6004(h) of the Federal Rules of Bankruptcy Procedure is hereby waived and this Order shall be immediately effective upon its entry.

6.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated:    New York, New York
_____, 2017

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Corporate Structure**

Exhibit A – Corporate Structure



**<u>Exhibit C</u>**

**Operating Agreement**

# OPERATING AGREEMENT
## OF
## COCOA SERVICES WEST, L.L.C.

This Operating Agreement (this "**Agreement**") of COCOA SERVICES WEST, L.L.C., a California limited liability company (the "**Company**"), effective as of February 15, 2016 (the "**Effective Date**"), is entered into by and between Transmar Commodity Group Ltd., a New York corporation (the "**Member**"), and the Company.

WHEREAS, the Company was formed as a limited liability company on September 26, 2003, by the filing of Articles of Organization (the "**Articles**") with the Secretary of State of the State of California pursuant to and in accordance with the Beverly-Killea Limited Liability Company Act; and

WHEREAS, the Member became the sole member of the Company on the Effective Date; and

WHEREAS, the Member agrees that the membership in and management of the Company shall be governed by the terms set forth herein, and that this Agreement shall supersede all prior agreements with respect to such matters, subject in each case to the provisions of the Shareholders' Agreement (the "**Shareholders' Agreement**") of Transmar Group Ltd, a United Kingdom limited company ("**Transmar Group**"), dated as of 15 February 2016, among Transmar Holdings LLC, ITC Cocoa House Limited, Morristown Group LLC and ITOCHU Corporation.

NOW, THEREFORE, the Member and the Company agree as follows:

1.      <u>Name</u>. The name of the Company is COCOA SERVICES WEST, L.L.C.

2.      <u>Purpose</u>. The purpose of the Company is to engage in any lawful act or activity for which limited liability companies may be formed under the California Revised Uniform Limited Liability Company Act (as amended from time to time, the "**Act**") and to engage in any and all activities necessary or incidental thereto.

3.      <u>Principal Office; Registered Agent</u>.

      (a)      <u>Principal Office</u>. The location of the principal office of the Company shall be as the Managers (as defined below) may from time to time designate.

      (b)      <u>Registered Agent</u>. The registered agent of the Company for service of process in the State of California and the registered office of the Company in the State of

California shall be as set forth in the records of the Secretary of State of the State of California. In the event the registered agent ceases to act as such for any reason or the registered office shall change, the Managers shall promptly designate a replacement registered agent or file a notice of change of address, as the case may be, in the manner provided by law.

4.    Members.

(a)    Current Member. The name and address of the Member are as follows:

| Name | Address |
|------|---------|
| Transmar Commodity Group Ltd. | 200 South Street, 4th Floor Morristown, New Jersey 07960 |

(b)    Additional Members. One or more additional members may be admitted to the Company with the consent of the Member. Prior to the admission of any such additional members to the Company, the Member shall amend this Agreement to make such changes as the Member shall determine to reflect the fact that the Company shall have such additional members. Each additional member shall execute and deliver a supplement or counterpart to this Agreement, as necessary.

(c)    No Withdrawal or Dissociation. The Member may not withdraw from, and shall not otherwise become dissociated from, the Company.

5.    Management.

(a)    Appointment of the Managers. The Member hereby appoints Peter G. Johnson, Mary Johnson, Peter B. Johnson, Timothy B. Johnson and William Yu to serve at its pleasure as the managers of the Company (the "**Managers**"). The Member may terminate a Manager's appointment as such and appoint a new Manager or Managers at any time. If at any time there are less than two Managers in place, then each reference to "the Managers" throughout this Agreement shall be read as a reference to the Manager.

(b)    Powers and Duties of the Managers. The business and affairs of the Company shall be managed by the Managers. The Managers shall have exclusive and complete authority and discretion to manage the operations and affairs of the Company and to make all decisions regarding the business of the Company (the "**Managers**"). The Member may *provided* that decisions with respect to Shareholder Reserved Matters (as defined in the Shareholders' Agreement) shall require the unanimous written consent of the shareholders of Transmar Group, and *provided further* that decisions with respect to Board Reserved Matters (as defined in the Shareholders' Agreement) shall require the unanimous consent of the directors of Transmar Group then in office (the provisos in this sentence, the "**Consent Requirements**"). Any action taken by the Managers shall constitute the act of and serve

2

to bind the Company, *provided* that a single Manager or Officer (as defined below) may be authorized to execute agreements and other documents on behalf of the Company. Persons dealing with the Company are entitled to rely conclusively on the power and authority of the Managers as set forth in this Agreement. Subject to the Consent Requirements, the Managers shall have such authority, rights and powers in the management of the Company to do any and all other acts and things necessary, proper, convenient or advisable to effectuate the purposes of this Agreement.

(c)     Voting by Managers. Each Manager shall have one vote on any matter that comes before the Managers, and, except as otherwise required by this Agreement, the affirmative vote of a majority of the Managers then in office shall be required to approve any action.

(d)     Election of Officers; Delegation of Authority. The Managers may, from time to time, designate a President, a Secretary, and one or more officers with such titles as may be designated by the Managers, to act in the name of the Company with such authority as may be delegated to such officers by the Managers (each such designated person, an **"Officer"**). Any Officer shall act pursuant to such delegated authority until such Officer is removed by the Managers. Any action taken by an Officer pursuant to authority delegated to such Officer shall constitute the act of and serve to bind the Company. Persons dealing with the Company are entitled to rely conclusively on the power and authority of any Officer set forth in this Agreement and any instrument designating such Officer and the authority delegated to him or her. As of the Effective Date, the President shall be Peter G. Johnson and the Secretary shall be Patricia Johnson Gasek.

(e)     Compensation and Reimbursement of the Managers. The Managers shall not receive any compensation for their services as such unless such compensation is approved by Transmar Group. The Company shall reimburse the Managers for all ordinary, necessary and direct expenses incurred by the Managers on behalf of the Company in carrying out the Company's business activities. All reimbursements for expenses shall be reasonable in amount.

6.     Liability of the Member and the Managers; Indemnification.

(a)     Liability of the Member and the Managers.

(i)     Neither the Member nor any Manager (each a **"Covered Person"**) shall be liable to the Company or (in the case of the Managers) to the Member for money damages, except to the extent resulting from (*A*) a breach of the duty of loyalty (as such duty is modified by Section 6(a)(iii), (*B*) a financial benefit received by such Covered Person to which such Covered Person is not entitled, (*C*) a breach of a duty under California Corporations Code Section 17704.06 (regarding liability for improper distributions), (*D*) intentional infliction of harm on the Company or the Member, (*E*) an

3

intentional violation of criminal law, or (*F*) a breach of this Agreement or any other agreement between such Covered Person and the Company;

(ii)    Whenever in this Agreement a Covered Person is permitted or required to make a decision (*A*) in its "discretion" or under a grant of similar authority or latitude, such Covered Person shall be entitled to consider such interests and factors as it desires, including its own interests, and shall have no duty or obligation to give any consideration to any interest of or factors affecting the Company or any other Person, or (*B*) in "good faith" or under another express standard, such Covered Person shall act under such express standard and shall not be subject to any other or different standard imposed by this Agreement or applicable law.

(iii)    Subject to the last sentence of this Section 6(a)(iii) and the other provisions of this Agreement, no Covered Person shall be liable to the Company or to any Covered Person for breach of the fiduciary duty of loyalty on account of (*A*) failing to account to the Company or hold as trustee for it any property, profit or benefit derived by such Covered Person, except as explicitly required by this Agreement; (*B*) dealing with the Company in the conduct or winding up of the Company's activities as or on behalf of a Person having an interest adverse to the Company; (*C*) competing with the Company in the conduct of its activities before the dissolution of the Company; or (*D*) any other act or omission unless (*x*) such act or omission results in such Covered Person receiving a financial benefit to which such Covered Person is not entitled by law or pursuant to this Agreement or (*y*) such Covered Person knows or believes such act or omission to be contrary to the best interests of the Company or the Member.  No Covered Person shall be liable to the Company or any Covered Person for failing to present to the Company any opportunity to participate in any matter, transaction or interest that is presented to or acquired, created or developed by, or which otherwise comes into the possession of, such Covered Person.

(iv)    No Covered Person shall be liable to the Company or any other Covered Person for any act or omission that is authorized by the Member.

(v)    The parties hereto agree that the provisions of this Agreement, to the extent that they restrict the duties and liabilities of a Covered Person otherwise existing at law or in equity, are intended to replace such other duties and liabilities to the extent permitted by applicable law.

(b)    <u>Indemnification</u>. The Company, its receiver or its trustee shall, to the extent permitted by applicable law, indemnify, defend and hold each Member and Manager (and their respective heirs, personal representatives, and successors) (each, an "**Indemnitee**") harmless from and against (and shall reimburse or, to the extent reasonably required, advance money to such Indemnitee for) any expense, loss, damage or liability incurred or connected with, or any claim, suit, demand, loss, judgment,

4

liability, cost or expense (including reasonable attorneys' fees) arising from or related to, the Company or any act or omission of such Indemnitee on behalf of the Company, and amounts paid in settlement of any of the foregoing, *provided* that, in the case of a claim asserted against a Manager (or his/her heirs, personal representatives, or successors), the same were not the result of fraud, willful misconduct or gross negligence on the part of the Manager, and *provided further* that any indemnity or advance under this Section 6(a) shall be provided out of and to the extent of Company assets only, and neither the Member nor any other person shall have any personal liability on account thereof. The Company may procure insurance to satisfy its obligations pursuant to this Section 6(a).

7.    Term. The term of the Company shall be perpetual unless the Company is dissolved and terminated in accordance with Section 11.

8.    Capital Contributions. The Member agrees to contribute to the Company such cash, property or services as determined from time to time by the Member.

9.    Tax Status; Income and Deductions.

(a)    Tax Status. As long as the Company has only one member, it is the intention of the Company and the Member that the Company be treated as a disregarded entity for federal and all relevant state tax purposes and neither the Company nor the Member or Managers shall take any action or make any election which is inconsistent with such tax treatment. All provisions of this Agreement are to be construed so as to preserve the Company's tax status as a disregarded entity.

(b)    Income and Deductions. All items of income, gain, loss, deduction and credit of the Company (including, without limitation, items not subject to federal or state income tax) shall be treated for federal and all relevant state income tax purposes as items of income, gain, loss, deduction and credit of the Member.

10.    Distributions. Distributions shall be made to the Member at the times and in the amounts determined by the Managers or by the Member.

11.    Dissolution; Liquidation.

(a)    The Company shall dissolve, and its affairs shall be wound up, upon the first to occur of the following: (*i*) the written consent of the Member, which consent shall be subject to the Consent Requirements, or (*ii*) any other event or circumstance giving rise to the dissolution of the Company under the Act, unless the Company's existence is continued pursuant to the Act.

(b)    Upon dissolution of the Company, the Company shall immediately commence to wind up its affairs and the Member shall promptly liquidate the business of the Company. During the period of the winding up of the affairs of the Company, the

5

rights and obligations of the Member and the Managers under this Agreement shall continue.

(c)     In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets of the Company shall be applied as follows: (*i*) first, to creditors, to the extent otherwise permitted by law, in satisfaction of liabilities of the Company (whether by payment or the making of reasonable provision for payment thereof); and (*ii*) thereafter, to the Member.

(d)     Upon the completion of the winding up of the Company, the Member shall file a certificate of cancellation with respect to the Articles in accordance with the Act.

12.     Miscellaneous.

(a)     Amendments. Amendments to this Agreement may be made only with the consent of the Member, such consent being subject to the Consent Requirements.

(b)     Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of California.

(c)     Entire Agreement. This Agreement, together with the Articles and all related Exhibits and Schedules, constitutes the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein and therein, and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to such subject matter.

(d)     Severability. In the event that any provision of this Agreement shall be declared to be invalid, illegal or unenforceable, such provision shall survive to the extent it is not so declared, and the validity, legality and enforceability of the other provisions hereof shall not in any way be affected or impaired thereby, unless such action would substantially impair the benefits to any party of the remaining provisions of this Agreement.

*{Signature page to follow}*

6

4699390v2

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first written above.

**MEMBER**

TRANSMAR COMMODITY GROUP LTD.

By: _____
     Peter G. Johnson
     President

**COMPANY**

COCOA SERVICES WEST, L.L.C.

By: _____
     Peter G. Johnson
     President & Manager

7