STROOCK & STROOCK & LAVAN LLP
Curtis C. Mechling
Kenneth Pasquale
Francis C. Healy
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

*Attorneys for ABN AMRO Capital USA LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | : | |
| IN RE: | : | Chapter 11 |
| | : | |
| TRANSMAR COMMODITY GROUP LTD., | : | Case No. 16-13625 (JLG) |
| | : | |
| Debtor. | : | |
| | : | |
| | : | |

**NOTICE OF HEARING ON MOTION FOR AN ORDER PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING ABN AMRO CAPITAL USA LLC TO ISSUE A SUBPOENA FOR THE FURTHER PRODUCTION OF DOCUMENTS FROM AND THE ORAL EXAMINATION OF AMERRA CAPITAL MANAGEMENT LLC, BY NANCY OBLER**

      **PLEASE TAKE NOTICE** that a hearing on the annexed Motion, dated May 5, 2017

(the "Motion")[1] for an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") authorizing ABN AMRO Capital USA LLC ("ABN

AMRO") to issue a subpoena for the further production of documents from and the oral

examination of AMERRA Capital Management LLC, by Nancy Obler, as more fully described

in the Motion, will be held before the Honorable James L. Garrity, United States Bankruptcy

Judge, at the United States Bankruptcy Court for the Southern District of New York, Alexander

Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

(the "Bankruptcy Court"), on **May 24, 2017 at 2:00 p.m. (prevailing Eastern Time)**, or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that responses or objections, if any, to approval of the Motion must: (a) be made in writing; (b) state with particularity the grounds therefor; (c) be filed with the Bankruptcy Court (with a copy to the Judge's chambers); (d) conform to the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules of the Southern District of New York; and (e) be served upon: (i) counsel for ABN AMRO, Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, New York 10038-4982 (Attn: Kenneth Pasquale, Esq.); (ii) counsel for the Official Committee of Unsecured Creditors (the "Committee"), Tarter Krinsky & Drogin LLP, 1350 Broadway, 11th Floor, New York, New York 10018 (Attn: Scott S. Markowitz, Esq.); (iii) the Office of the United States Trustee for the Southern District of New York, 271 Varick Street, Suite 1006, New York, New York 10014; and (iv) any person or entity with a particularized interest in the Motion, so as to be received no later than **4:00 p.m. (prevailing Eastern time) on May 17, 2017** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if no objections to the Motion are timely made and served, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without further notice or hearing.

Dated: May 5, 2017           STROOCK & STROOCK & LAVAN LLP
      New York, New York

                       /s/ Kenneth Pasquale
                       Curtis C. Mechling
                       Kenneth Pasquale
                       Francis C. Healy
                       180 Maiden Lane
                       New York, New York 10038
                       Telephone: (212) 806-5400
                       Facsimile: (212) 806-6006

                       *Attorneys for ABN AMRO Capital USA LLC*

STROOCK & STROOCK & LAVAN LLP
Curtis C. Mechling
Kenneth Pasquale
Francis C. Healy
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

*Attorneys for ABN AMRO Capital USA LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | : | |
| IN RE: | : | Chapter 11 |
| | : | |
| TRANSMAR COMMODITY GROUP LTD., | : | Case No. 16-13625 (JLG) |
| | : | |
| Debtor. | : | |
| | : | |
| | : | |

**MOTION FOR AN ORDER PURSUANT TO RULE 2004**
**OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING**
**ABN AMRO CAPITAL USA LLC TO ISSUE A SUBPOENA FOR THE FURTHER**
**PRODUCTION OF DOCUMENTS FROM AND THE ORAL EXAMINATION**
**OF AMERRA CAPITAL MANAGEMENT LLC, BY NANCY OBLER**

ABN AMRO Capital USA LLC ("<u>ABN AMRO</u>"), as administrative agent and collateral agent for itself and other secured lenders (the "<u>Lenders</u>") under the Amended and Restated Credit Agreement, dated as of February 26, 2016, as amended (the "<u>Credit Facility</u>"), by and through its undersigned counsel, respectfully submits this motion ("<u>Motion</u>"), for entry of an Order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), authorizing ABN AMRO to issue a subpoena for the production of certain additional documents from and for the oral examination of AMERRA Capital Management LLC ("<u>AMERRA</u>"), by Nancy Obler, a Managing Director.

In support of this Motion, ABN AMRO respectfully represents as follows:

## PRELIMINARY STATEMENT

1.     The Lenders are the most significant creditors in this Chapter 11 case, with claims totaling approximately $360 million in principal and $4.7 million in interest against the Debtor. The Lenders' claims arise in connection with loans made to Transmar Commodity Group LTD. (the "Debtor") under the Credit Facility, in which ABN AMRO serves, among other roles, as administrative agent and collateral agent on behalf of the Lenders.

2.     By this Motion, ABN AMRO seeks authorization pursuant to Rule 2004 to seek additional documents from and conduct an oral examination of AMERRA, by its Managing Director, Nancy Obler, in furtherance of this Court's prior orders [ECF Nos. 124, 125, 183], authorizing ABN AMRO to investigate the acts, conduct, assets, liabilities and financial condition of the Debtor and any other matter relevant to this bankruptcy case, including, but not limited to, the facts and circumstances surrounding the apparent disappearance of hundreds of millions of dollars of the Lenders' collateral from the Debtor's estate.  ABN AMRO's continuing investigation, including its professionals' review of hundreds of thousands of documents produced to date by the Debtors, has revealed that AMERRA ████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████ Although the Debtor's document production is not yet complete, many thousands of emails have already been produced by the Debtor reflecting communications between Mr. Johnson, other Transmar officers and Ms.

Obler, including many during the autumn 2016 period when the deficiencies in the borrowing base first were disclosed to the Lenders.

3.      Although this Court granted ABN AMRO's Ex Parte Motion for an Order to Issue Subpoenas for the Production of Documents and to Examine the Debtor and Others, filed January 17, 2017 (the "Initial Rule 2004 Motion") [ECF No. 64], it limited the relief requested as to AMERRA.  Accordingly, the Court ordered that AMERRA produce "documents, including email if necessary, dating from January 1, 2016 to the present, sufficient to evidence the fact, terms and conditions of transactions between or among AMERRA, [Euromar] and/or the Debtor, provided that AMERRA was a party to some part of the transaction or a related transaction involving the Debtor or Euromar and in fact possesses additional documents." [ECF No. 125]. The Court's order also provided, however, that it was issued without prejudice to ABN AMRO's right to seek further Rule 2004 discovery from AMERRA.  Id.

4.      Accordingly, upon discovering Ms. Obler's knowledge and involvement in the business affairs of the Debtor and its principals, counsel for ABN AMRO requested that AMERRA voluntarily produce additional documents, specifically including emails, text messages and other correspondence to and from Ms. Obler that concerned the Debtor and any of its affiliates, including Euromar, and further requested that AMERRA voluntarily produce Ms. Obler for oral examination under oath.  AMERRA, through its counsel, refused that request.

5.      Accordingly, this Motion is necessary because AMERRA will not voluntarily produce the relevant information to ABN AMRO's or produce Ms. Obler for an oral examination. Given AMERRA's position with respect to these requests and the Lenders' need to pursue their investigation as expeditiously as possible, ABN AMRO respectfully requests that the Court enter an order authorizing ABN AMRO to issue a subpoena to seek certain additional documents from AMERRA and its oral examination, by Nancy Obler.  In order to minimize any

inconvenience upon AMERRA in responding to the discovery requests, the additional documents sought by ABN AMRO are limited to electronic communications (including emails, text messages and Bloomberg terminal messages) (i) between Nancy Obler and any other AMERRA officer, director, employee or representative concerning the Debtor, Euromar, any of their affiliates, or any related entities; and (ii) between Nancy Obler and any non-Debtor third party concerning the Debtor, Euromar or any of their affiliates, or any related entities.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are section 105(a) of the Bankruptcy Code and Rules 2004 and 9016 of the Bankruptcy Rules.

## RELEVANT FACTS

**A.     Background**

7.     On December 31, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in this case.

8.     On January 18, 2017, William K. Harrington, the U.S. Trustee for the Southern District of New York, appointed an Official Committee of Unsecured Creditors pursuant to section 1102 of the Bankruptcy Code [ECF No. 68].

9.     In the interest of brevity, the Court is respectfully referred to the Initial Rule 2004 Motion for the pertinent facts underlying this Motion.[1]  In sum, as set forth in the Initial Rule 2004 Motion, authorization pursuant to Rule 2004 to perform the investigation was requested by

---

[1] The Initial Rule 2004 Motion is incorporated by reference as if fully set forth herein.

ABN AMRO because, *inter alia*, the Lenders believe that the monthly borrowing base reports provided to them by the Debtor were inaccurate, if not falsified, for many months pre-petition.

10.     This Court granted the Initial Rule 2004 Motion by orders dated February 14, 2017 [ECF No. 124, 125]. As set forth above, this Court limited the documents to be produced in the first instance by AMERRA to "documents, including email if necessary, dating from January 1, 2016 to the present, sufficient to evidence the fact, terms and conditions of transactions between or among AMERRA, [Euromar] and/or the Debtor, provided that AMERRA was a party to some part of the transaction or a related transaction involving the Debtor or Euromar and in fact possesses additional documents." [ECF No. 125]. This Court further ordered, however, that this ruling was without prejudice to ABN AMRO's right to seek further Rule 2004 discovery from AMERRA. Id.

**B.     AMERRA's and Ms. Obler's Relationship with the Debtor**

11.     In connection with its investigation, ABN AMRO's professionals learned through the review of documents produced by the Debtor that Ms. Obler █████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████     See Declaration of Kenneth

Pasquale, dated May 4, 2016 ("Pasquale Dec.") at ¶ 3, Exhibits A-H.[2]  ABN AMRO was

unaware of ████████████████████████████████████████████████████

███████████████████████████████

---

[2]  The documents attached to the Pasquale Dec. are all designated as "confidential" by the Debtor under the terms of the Agreed Protective Order [ECF No. 225]. Accordingly, ABN AMRO is simultaneously filing a motion to file under seal a portion of the the Pasquale Dec. and its exhibits, and, in an abundance of caution, to redact portions of this Motion that indirectly refer to the contents of such exhibits.

12.     Upon learning of Ms. Obler's role in advising Mr. Johnson and the Debtor's management team, counsel for ABN AMRO requested that AMERRA voluntarily produce additional documents beyond the scope of this Court's original Order [ECF No. 125], and to voluntarily produce Ms. Obler for oral examination under oath.  AMERRA refused that request. See Pasquale Dec. at ¶ 4.

## RELIEF REQUESTED

13.     By this Motion, ABN AMRO, as administrative agent and collateral agent for the Lenders, seeks an Order pursuant to Bankruptcy Rule 2004, substantially in the form attached hereto as Exhibit A, authorizing ABN AMRO to issue a subpoena to AMERRA directing the production of certain additional documents (within 14 calendar days of entry of the order), and the oral examination under oath of AMERRA's employee, Nancy Obler (to be held no more than seven calendar days after the production of documents by AMERRA in compliance with the subpoena).

## BASIS FOR RELIEF REQUESTED

14.     Bankruptcy Rule 2004(a) provides that on the "motion of any party in interest, the court may order the examination of any entity."  FED. R. BANK. P. 2004(a).  Bankruptcy Rule 2004(b) provides that an examination under the Rule may relate to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate . . . ."  FED. R. BANK. P. 2004(b).

15.     As the basic discovery device used in bankruptcy cases, "[t]he purpose of a Rule 2004 examination is to allow the court to gain a clear picture of the condition and whereabouts of the bankrupt's estate" and "the inquiry may cut a broad swath through the debtor's affairs, those associated with him, and those who might have had business dealings with him."  *In re Johns-Manville Corp*., 42 B.R. 362, 364 (Bankr. S.D.N.Y. 1984) (internal citations omitted); *see also In*

*re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 708-09 (Bankr. S.D.N.Y. 1991) (explaining that the intent of bankruptcy law in general—and Rule 2004 specifically—is for the court to gain an accurate and detailed insight into the affairs of the debtor's estate).

16.     Rule 2004 examinations are not limited to use by debtors and official committees. To the contrary, courts have repeatedly recognized that creditors and other parties in interest may utilize Bankruptcy Rule 2004 in order to conduct a Rule 2004 examination. *See In re Lehman Bros. Inc.*, No. 08-01420, 2008 WL 5423214, at *2-3 (Bankr. S.D.N.Y. Nov. 26, 2008) (granting motion filed by individual creditors to conduct Rule 2004 examination to determine "what is owed to these individuals"); *People's Bank v. Poirier (In re Poirier)*, 214 B.R. 53, 58 (Bankr. D. Conn. 1997) (stating that "[t]he broad scope and ready availability of a Rule 2004 Examination *provides a forum for an individual creditor* to question a debtor at great length on all matters relevant to the debtors' financial affairs . . . .") (emphasis added).

17.     Here, there is an urgent need for the Court to grant the Motion in order for ABN AMRO to advance its investigation of the Debtor's business and financial affairs.  ABN AMRO believes that production of certain, limited additional documents from AMERRA and Ms. Obler's oral examination are essential because ████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████  In order to minimize any inconvenience upon AMERRA in responding to the discovery requests, the additional documents sought by ABN AMRO are limited to electronic communications (including emails, text messages and Bloomberg terminal messages) (i) between Nancy Obler and any other AMERRA officer, director, employee or representative concerning the Debtor, Euromar, any of their affiliates, or any related entities; and (ii) between Nancy Obler and any non-Debtor third party concerning the Debtor, Euromar, any of their affiliates, or any related entities.  To be clear, ABN

AMRO is not seeking from AMERRA emails and other communications between Ms. Obler and any Transmar (transmargroup.com) email custodian, in reliance upon ABN AMRO's belief that such communications have been or will be produced by the Debtor.

18.    The requested relief will allow ABN AMRO to continue to, *inter alia*, (a) investigate Debtor's record-keeping processes and operations, including, but not limited to, transactions with its affiliates and certain third parties; (b) investigate the facts, circumstances and events that resulted in the disappearance of hundreds of millions of dollars in collateral value and other property of the Debtor's estate reflected in the borrowing base reports; and (c) determine whether the Lenders, individually, and the Debtor's creditors, generally, have viable claims against any parties as a result of the facts and circumstances that resulted in this bankruptcy case.

19.    Moreover, ABN AMRO's investigation, and any facts and information discovered as a result thereof, will inure to the benefit of the Debtor's estate and its creditors, and will not be duplicative of any investigation conducted by the creditors committee.

## NO PRIOR REQUEST

20.    No prior request for the relief sought in this Motion has been made to this or any other Court.

## RESERVATION OF RIGHTS

21.    ABN AMRO, as administrative agent and collateral agent for the Lenders, reserves all of its and the Lenders' rights, remedies and defenses in this chapter 11 case, including, but not limited to, all of its and the Lenders' rights with respect to seeking relief pursuant to Rule 2004 and discovery on any matters unrelated to this Motion.

**WHEREFORE**, for the reasons stated herein, ABN AMRO, as administrative agent and collateral agent for the Lenders, respectfully requests that this Court enter an Order, pursuant to

Bankruptcy Rule 2004, in the form attached hereto as <u>Exhibit A</u> (a) authorizing ABN AMRO to issue a subpoenas compelling the production of certain additional documents from AMERRA and the oral examination of Nancy Obler; and (b) granting such other and further relief as this Court may deem just and proper.

Dated: May 5, 2017
       New York, New York

STROOCK & STROOCK & LAVAN LLP

<u>/s/ Kenneth Pasquale</u>
Curtis C. Mechling
Kenneth Pasquale
Francis C. Healy
180 Maiden Lane
New York, New York 10038-4982
Telephone: (212) 806-5400

*Attorneys for ABN AMRO Capital USA LLC*

**DEFINITIONS**

1. Wherever appropriate in this request, the singular form of any word includes the plural and vice versa, and the masculine form of a word shall be interpreted as feminine and vice versa.

2. "Affiliates" means each of Cocoa Origins Africa, LLC, Cocoa Services, L.L.C., Cocoa Services West, L.L.C., Morgan Drive Associates, L.L.C., Morristown Group LLC, ITC Cocoa House Ltd., Transmar Holdings LLC, Transmar Group Ltd., Euromar Commodities LLC, Euromar Commodities GmbH ("Euromar"), Transmar Ecuador S.A., and each other entity depicted on the "Corporate Structure" chart annexed as Exhibit A to the Frezza Declaration, including, but not limited to, each of their current or former members, partners, subsidiaries, affiliates, parents, predecessors and successors, divisions, departments and operating units, and including, without limitation, each of their current or former officers, directors, shareholders, members, managers, partners, employees, agents, officials, representatives, and all persons and entities acting or purporting to act on their behalf.

3. "AMERRA" means AMERRA Capital Management, LLC, including its managed funds and investment vehicles.

4. The terms "all," "any," and "each" shall be construed as encompassing any and all.

5. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests all responses that might otherwise be construed to be outside their scope.

6.     "Communication(s)" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

7.     "Concerning" means relating to, referring to, describing, evidencing, or constituting.

8.     "Debtor" means the entity Transmar Commodity Group Ltd., including, without limitation, each of its current or former officers, directors, shareholders, members, managers, partners, employees, agents, officials, representatives, and all persons and entities acting or purporting to act on its behalf.

9.     "Document(s)" is defined to be synonymous in meaning and equal in scope to the usage of the term "Documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A).  A draft or non-identical copy is a separate Document within the meaning of this term.

10.     "Employee" means any former or current employee of AMERRA, including its officers, directors, agents and representatives.

11.     "Frezza Declaration" means that certain *Declaration of Robert J. Frezza In Support of Debtor's Chapter 11 Petition and First Day Motions* [Docket No. 4] filed in the Chapter 11 case of *Transmar Commodity Group Ltd.*, Case No. 16-13625, in the United States Bankruptcy Court for the Southern District of New York.[1]

12.     "Identify," when referring to a person, shall mean to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, additionally, the present or last known place of employment.  Once a person has been identified

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Frezza Declaration.  Though reference may be made herein to the Frezza Declaration, ABN AMRO does not adopt such facts as true and reserves all of its rights to rebut any statements set forth therein.

in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

13.      "<u>Identify</u>," when referring to Documents, means to give, to the extent known, the (i) type of document; (ii) its general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).  In the alternative, the responding party may produce the Documents, together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d).

14.      "<u>Information</u>" shall be expansively construed and include, without limitation, facts, data, opinion, images, impressions, concepts and formulae.

15.      "<u>Person</u>" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

16.      "<u>Relate to</u>" or "<u>relating to</u>" any given subject shall mean any Information or Documents that comprise, constitute, contain, embody, evidence, identify, reflect, state, refer to, deal with, or are in any way pertinent to that subject, including, but not limited to, Documents concerning the preparation of other Documents.

17.      "<u>Request</u>" or "<u>Requests</u>" refers generally to the document requests set forth herein.

18.      "<u>Thing(s)</u>" means any tangible object encompassed within the most inclusive definition of this term in any decision from a court in this or any other controlling jurisdiction, including, but not limited to, any tangible things that constitute or contain matters within the scope of Rule 26(b) of the Federal Rules of Civil Procedure.

19.      "<u>You</u>" and "<u>Your</u>" mean or refer to the person or entity to which or whom these requests are directed, including its current and former officers, directors, employees and representatives.

<u>**INSTRUCTIONS**</u>

1.      You shall produce all Documents, Things, and Information responsive to these requests that are in your possession, custody, or control, including all Documents and things in the possession, custody, or control of your past or present agents, employees, companies, licensees, representatives, investigators, or attorneys.

2.      Documents and Things shall be produced with sufficient information to identify the files or repositories in which such responsive Documents and Things are maintained in the normal course of business, including, for example, an index, key, code, or other means of ascertaining the source of the produced Documents and Things.

3.      All Documents that are produced in electronic format should be provided with: (i) Group IV "tiff" images and IPRO-ready OPT files; (ii) a Concordance DAT delimited file with boundaries; (iii) full text OCR, with OCR text files provided on a document level; and (iv) all metadata fields associated with each electronic document.  ABN AMRO also requests that all spreadsheets created in Microsoft Excel or similar spreadsheet program be produced in their native format.  ABN AMRO reserves its right to request that other Documents be produced in their native format if necessary.  The following metadata fields are also to be produced with all Documents produced in electronic format:

| Field Name | Description |
|---|---|
| **BEGDOC** | Auto-generated number assigned to first page of document |
| **ENDDOC** | Auto-generated number assigned to last page of document |
| **BEGATTACH** | Auto-generated number assigned to first page of the parent document in a family |
| **ENDATTACH** | Auto-generated number assigned to last page of an attachment in a document family |

| | |
|---|---|
| **PARENT_ID** | The beginning DOCID for a parent document |
| **ATTACH_IDS** | The beginning DOCID for all attachments |
| **ATTCOUNT** | The number of attachments to an email |
| **DOC_TYPE** | The type of file from the header (e.g., Microsoft Outlook, Excel, Word, etc.) |
| **PARENT_CHILD** | Vendor populated field where "P" denotes a parent document and "A" denotes an attachment |
| **PAGECOUNT** | The number of pages of each individual document |
| **FROM** | Name of the sender of an email from the "From" field in Outlook |
| **TO** | Recipients of an email from the "To" field in Outlook |
| **CC** | Name of persons to whom a copy of an email was sent |
| **BCC** | The name of any person blind copied on an email |
| **SUBJECT** | The text in the "Subject" line or "Re" line of an email or application file |
| **CUSTODIAN** | The name of the person from which a collection of email or application files originate |
| **AUTHOR** | The name of the author or the creator of an application file from the "Author" field |
| **DATE_SENT** | The date on which an email was sent |
| **DATE_RCVD** | The date on which an email was received |
| **DATE_LASTMOD** | The date on which an email or application file was last modified |
| **DATE_CREATED** | The date an email or application file was created |
| **TIME_CREATED** | The time at which an email or application file was created |
| **TIME_SENT** | The time at which an email was sent |
| **TIME_RCVD** | The time at which an email was received |
| **TITLE** | The text in the "Title" field of an application file |
| **LAST_AUTHOR** | The name in the "last author" field for an application file |

| LAST_SAVED | The date in the "last saved" field for an application file |
|---|---|
| LAST_PRINTED | The date in the "last printed" field for an application file |
| APPLICATION | The name of the application that generated the native file |
| FILEEXT | The file name extension for each email, attachment or application file |
| FILENAME | The name of the application file, including extension |
| FILESIZE | The size of a document in bytes |
| SOURCEFOLDER | The full path information for email, attachments and application files beginning with the original source folder name |
| HASHVALUE | Output of algorithm-generated value for each individual file |
| SEARCH_HIT | The search term or terms that "hit" on a document |
| NATIVE_FILE | Hyperlink to the native file |

4.      Whenever you are asked to produce Information or a Document that is deemed by you to be properly withheld from production for any reason, you shall provide a privilege log that will include listing such Information or Document by title or subject heading, date, author, person who signed the document, addressee and all recipients, and a statement of the ground(s) asserted for withholding the document, including attorney-client privilege or work product privilege.

5.      If you withhold any Information or any Document on the claim of attorney/client privilege, work product doctrine or similar protection, identify the privilege or protection claimed as well as each Communication (including oral Communications) and Document for which such privilege or protection is claimed, together with the following information with respect to each such Communication and Document:

(a)  Date;

(b)  Sender;

(c) Addressee;

(d) Subject;

(e) The basis on which the privilege or protection is claimed; and

(f) The names of persons to whom copies of any part of the Document were furnished, together with an identification of their employer and their job titles.

6.     If you maintain that any Document or Thing requested by ABN AMRO has been destroyed, set forth the contents of the Document or Thing, the date of its destruction, and the name of the person who authorized its destruction.

7.     Where an objection is made to a request, state all grounds upon which your objection is based.

8.     The Documents, Things, and Information produced pursuant to this request are to be segregated and identified by the number of the request below to which they are responsive, or are to be produced as they are maintained in the ordinary course of business.

9.     Unless otherwise specified, these requests seek information and Documents prepared during, or related to, the period of time from January 1, 2015 through December 31, 2016, without regard to the date the information came into your possession.

## DOCUMENT REQUESTS

1.     All Documents, including emails, text messages, and Bloomberg terminal messages, to or from Nancy Obler (including communications in which Nancy Obler was copied as a "cc") and any Employee concerning (i) the Debtor, and/or (ii) any of the Affiliates.

2.     All Documents, including emails, text messages, and Bloomberg terminal messages, to or from Nancy Obler (including communications in which Nancy Obler was copied as a "cc") and any Person concerning (i) the Debtor, and/or (ii) any of the Debtor's Affiliates,

*expressly excluding* (i) any Documents sent to or from the Debtor and/or any of the Affiliates

(including as a "cc"), and (ii) any custodian using the email domain "transmargroup.com".

# EXHIBIT  A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| IN RE: | : | Chapter 11 |
|  | : |  |
| TRANSMAR COMMODITY GROUP LTD., | : | Case No. 16-13625 (JLG) |
|  | : |  |
| Debtor. | : |  |
|  | : |  |
|  | : |  |

## ORDER PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING ABN AMRO CAPITAL USA LLC TO ISSUE A SUBPOENA FOR THE FURTHER PRODUCTION OF DOCUMENTS AND THE ORAL EXAMINATION OF AMERRA CAPITAL MANAGEMENT, LLC, BY NANCY OBLER

Upon consideration of the Motion (the "Motion") of ABN AMRO Capital USA LLC, as administrative agent and collateral agent for itself and other secured lenders ("ABN AMRO"), for entry of an Order, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing ABN AMRO to issue a subpoena for the production of documents from and the oral examination of AMERRA Capital Management LLC ("AMERRA"), by its Managing Director, Nancy Obler, as more fully described in the Motion; and the Court having jurisdiction over the matter in accordance with 28 U.S.C. §§ 157 and 1334; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; it is hereby

ORDERED, that the Motion is granted; and it is further

ORDERED, that ABN AMRO may, in its discretion, and is authorized pursuant to Rule 2004 to serve a subpoena upon AMERRA in order to obtain additional documents and take its oral examination, by Nancy Obler; and it is further

ORDERED, that AMERRA shall produce to ABN AMRO the documents requested in the Exhibit attached to the Motion within fourteen (14) calendar days of service of such requests by ABN AMRO, or such other period of time as agreed between these parties; and it is further

ORDERED, that ABN AMRO shall provide the Debtor, the Official Committee of Unsecured Creditors (the "Committee") and the Office of the United States Trustee with copies of all subpoenas or other discovery requests issued pursuant to this Order, as and when served, and shall provide access to or copies of all documents produced in response to such subpoenas and discovery requests, as and when provided to ABN AMRO; and it is further

ORDERED, that Nancy Obler shall be made available for oral examination by ABN AMRO within seven (7) calendar following AMERRA's production of documents, or on such other date as agreed between these parties; and it is further

ORDERED, that the Debtor, the Committee and the Office of the United States Trustee shall be entitled to attend all oral examinations of AMERRA, by Nancy Obler; and it is further

ORDERED, that nothing herein shall prejudice ABN AMRO's rights under Rule 2004 and other applicable laws to seek further document productions and oral examinations in connection with this bankruptcy case; and it is further

ORDERED, that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: May  __, 2017
      New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE