**Hearing Date and Time:** April 17, 2018 at 10:00 a.m.
**Objection Deadline:** April 10, 2018 at 4:00 p.m.

WINDELS MARX LANE & MITTENDORF, LLP
James M. Sullivan
156 West 56th Street
New York, New York 10019
Telephone (212) 237-1000

*Attorneys for Alan Nisselson, Chapter 7 Trustee for*
*Transmar Commodity Group Ltd.*

KLESTADT WINTERS JURELLER SOUTHARD
& STEVENS, LLP
Tracy L. Klestadt
Joseph C. Corneau
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245

-and-

RIKER DANZIG SCHERER
HYLAND & PERRETTI LLP
Joseph L. Schwartz (admitted *Pro Hac Vice*)
Tara J. Schellhorn
Rachel F. Gillen (admitted *Pro Hac Vice*)
Headquarters Plaza, One Speedwell Avenue
Morristown, New Jersey 07960
Telephone: (973) 538-0800
Facsimile: (973) 538-1984

*Attorneys for Cocoa Services, L.L.C. and Morgan*
*Drive Associates, L.L.C.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------ X
                                                             :
In re:                                                       :    Chapter 7
                                                             :
TRANSMAR COMMODITY GROUP LTD.,                               :    Case No. 16-13625 (JLG)
                                                             :
                    Debtor.                                  :
                                                             :
------------------------------------------------------------ X
                                                             :
In re:                                                       :    Chapter 11
                                                             :
COCOA SERVICES, L.L.C., et al.,                              :    Case No. 17-11936 (JLG)
                                                             :
                    Debtors.                                 :    Jointly Administered
                                                             :
------------------------------------------------------------ X
```

**NOTICE OF HEARING ON JOINT MOTION OF ALAN NISSELSON,**
**CHAPTER 7 TRUSTEE FOR TRANSMAR COMMODITY GROUP LTD.,**
**AND DEBTORS COCOA SERVICES, L.L.C. AND MORGAN DRIVE, L.L.C.**
**FOR AN ORDER APPROVING SETTLEMENT PURSUANT TO FEDERAL**
**RULE OF BANKRUPTCY PROCEDURE 9019(a)**

**PLEASE TAKE NOTICE** that a hearing (the "Hearing") on the *Joint Motion of Alan Nisselson, Chapter 7 Trustee for Transmar Commodity Group Ltd. and Cocoa Services, L.L.C. and Morgan Drive, L.L.C. for an Order Approving Settlement Pursuant to Federal Rule of Bankruptcy Procedure 9019(a)* (the "Motion") shall be held on **April 17, 2018 at 10:00 a.m. (prevailing Eastern Time)** before the Honorable James L. Garrity, Jr., United States Bankruptcy Judge, in Courtroom 601, at the United States Bankruptcy Court, Southern District of New York, Alexander Hamilton Customs House, One Bowling Green, New York, New York 10004-1408.

**PLEASE TAKE FURTHER NOTICE** that responses or objections to the Motion and the relief requested therein, if any, shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, shall set forth the basis for the response or objection and the specific grounds therefore, and shall be filed with the Court electronically in accordance with General Order M-399 by registered users of the Court's case filing system (the User's Manual for the Electronic Case Filing System can be found at http://www.nysb.uscourts.gov, the official website for the Court), with two (2) hard copies delivered directly to Chambers pursuant to Local Bankruptcy Rule 9028-1 and served so as to be actually received no later than **April 10, 2018 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline"), by: (a) counsel for the Trustee, Windels Marx Lane & Mittendorf, LLP, 156 West 56th Street, New York, New York 10019 Attn: James M. Sullivan; (b) counsel for Cocoa Services, L.L.C. and Morgan Drive, L.L.C., Riker Danzig Scherer Hyland & Peretti LLP, Headquarters Plaza, One Speedwell Avenue, Morristown, New Jersey 07960 Attn: Joseph L. Schwartz and Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10036-7203, Attn.: Tracy L. Klestadt; (c) the Office of the United States Trustee for the Southern District of New York, Attn: Serene Nakano, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014; and (d) all parties filing a Notice of Appearance herein.

*[remainder of page intentionally left blank]*

**PLEASE TAKE FURTHER NOTICE** that a copy of the above-referenced Motion is available on the Bankruptcy Court's official website www.nysb.uscourts.gov for registered users of the Bankruptcy Court's case filing system, or free of charge from the Subsidiary Debtors' bankruptcy website, https://cases.primeclerk.com/cocoaservices/

Dated: New York, New York
      March 19, 2018

WINDELS MARX LANE & MITTENDORF, LLP

By: */s/ James M. Sullivan*_____
    James M. Sullivan
    156 West 56th Street
    New York, New York 10019
    Telephone (212) 237-1000
    Email: jsullivan@windelsmarx.com

*Attorneys for Alan Nisselson, Chapter 7 Trustee for Transmar Commodity Group Ltd.*

KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP

By: *_/s/ Tracy L. Klestadt*_____
    Tracy L. Klestadt
    Joseph C. Corneau
    200 West 41st Street, 17th Floor
    New York, New York 10036
    Tel: (212) 972-3000
    Email: tklestadt@klestadt.com
        jcorneau@klestadt.com

-and-

RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
Joseph L. Schwartz (admitted *pro hac vice*)
Tara J. Schellhorn
Rachel F. Gillen (admitted *pro hac vice*)
Headquarters Plaza, One Speedwell Avenue
Morristown, New Jersey 07960
Telephone: (973) 538-0800

*Attorneys for Cocoa Services, L.L.C. and Morgan Drive Associates, L.L.C.*

WINDELS MARX LANE & MITTENDORF, LLP
James M. Sullivan
156 West 56th Street
New York, New York 10019
Telephone (212) 237-1000

*Attorneys for Alan Nisselson, Chapter 7 Trustee for
Transmar Commodity Group Ltd.*

KLESTADT WINTERS JURELLER SOUTHARD
& STEVENS, LLP
Tracy L. Klestadt
Joseph C. Corneau
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245

-and-

RIKER DANZIG SCHERER
HYLAND & PERRETTI LLP
Joseph L. Schwartz (admitted *Pro Hac Vice*)
Tara J. Schellhorn
Rachel F. Gillen (admitted *Pro Hac Vice*)
Headquarters Plaza, One Speedwell Avenue
Morristown, New Jersey 07960
Telephone: (973) 538-0800
Facsimile: (973) 538-1984

*Attorneys for Cocoa Services, L.L.C. and Morgan
Drive Associates, L.L.C.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X

|  |  |  |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| TRANSMAR COMMODITY GROUP LTD., | : | Case No. 16-13625 (JLG) |
| | : | |
| Debtor. | : | |
| | : | |

---------------------------------------------------------------X

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| COCOA SERVICES, L.L.C., <u>et al.</u> | : | Case No. 17-11936 (JLG) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |

X

**JOINT MOTION OF ALAN NISSELSON, CHAPTER 7 TRUSTEE FOR TRANSMAR
COMMODITY GROUP LTD., AND DEBTORS COCOA SERVICES, L.L.C. AND MORGAN
DRIVE, L.L.C. FOR AN ORDER APPROVING SETTLEMENT
<u>PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019(a)</u>**

Alan Nisselson, Chapter 7 Trustee (the "TCG Trustee") for Transmar Commodity Group Ltd. ("TCG"), and Cocoa Services L.L.C. ("Cocoa Services") and Morgan Drive Associates, L.L.C. ("Morgan Drive," and together with Cocoa Services, the "Subsidiary Debtors"), hereby jointly move for entry of an order, substantially in the form annexed hereto as **Exhibit A**, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving a settlement between TCG and the Subsidiary Debtors memorialized in a settlement agreement (the "Settlement Agreement"), a copy of which is attached hereto as **Exhibit B**.  In support of the Motion, the TCG Trustee and the Subsidiary Debtors respectfully submit as follows:

## JURISDICTION, VENUE AND STATUTORY PREDICATE

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).

2.      Venue is proper before this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicate for the relief sought herein is Rule 9019 of the Bankruptcy Rules.

## BACKGROUND

**A.      The TCG Bankruptcy Case.**

4.      On December 31, 2016, TCG filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "TCG Bankruptcy Case"), and operated as a debtor-in-possession in possession until July 26, 2017, when the Court entered an order converting the TCG Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code [Case No. 16-13625, Docket No. 402].

5.      On May 23, 2017, ABN AMRO Capital USA LLC (the "Agent"), which serves as

2

syndication agent, administrative agent and collateral agent for itself and a group of prepetition lenders[1] that hold a first priority blanket lien against essentially all of TCG's assets, filed a motion to convert TCG's chapter 11 case to a case under chapter 7 of the Bankruptcy Code [Case No. 16-13625, Docket No. 295]

6.    On July 11, 2017, the Court entered an order (the "Conversion Order"), which, among other things, approved conversion of the TCG Bankruptcy Case to chapter 7 and identified the assets of TCG that are subject of a first priority lien in favor of the Agent on behalf of the Prepetition Lenders (the "Encumbered Assets") [Case No. 16-13625, Docket No. 388], and on July 26, 2017, the Court entered a supplemental order converting the TCG Bankruptcy Case to a chapter 7 case [Case No. 16-13625, Docket No. 402]

7.    By Notice dated July 26, 2017, the United States Trustee appointed the TCG Trustee as interim trustee of TCG's chapter 7 estate [Case No. 16-13625, Docket No. 403].  The TCG Trustee has qualified and is now serving as permanent trustee.

8.    On October 13, 2017, the TCG Trustee and the Agent filed a stipulation and proposed order implementing the Conversion Order (the "Encumbered Assets Stipulation"), which set forth the terms under which the TCG Trustee would liquidate the Encumbered Assets for the benefit of the Agent and the Lenders [Case No. 16-13625, Docket No. 450].  The Encumbered Assets Stipulation was "So Ordered" by the Court on October 13, 2017 [Case No. 16-13625, Docket No. 464].  Among other things, the Encumbered Assets Stipulation provides that the TCG Trustee will remit the net proceeds he receives from the Encumbered Assets to the Agent, to hold for the benefit of the Prepetition Lenders.

---

[1] The prepetition lenders are ABN AMRO Bank N.V., Bank Hapoalim, The Bank of Tokyo Mitsubishi UFJ, Ltd., BNP Paribas, Israel Discount Bank of New York, Macquarie Bank, Natixis, and Societe Generale (collectively, the "Prepetition Lenders").

3

**B.    The Subsidiary Debtors' Bankruptcy Cases.**

9.      On July 14, 2017, the Subsidiary Debtors, which are wholly-owned subsidiaries of TCG, each filed voluntary Chapter 11 petitions for relief with the Court (the "Subsidiary Debtors' Bankruptcy Cases").

10.     Cocoa Services and Morgan Drive are operating their respective businesses as debtors-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

11.     No committee, trustee or examiner has been appointed in the Subsidiary Debtors' Bankruptcy Cases.

12.     On July 20, 2017, the Court approved the Subsidiary Debtors' retention of Prime Clerk, LLC as the Subsidiary Debtors' claims agent (the "Claims Agent") to, among other things, maintain the claims register (the "Claims Register") in connection with the Subsidiary Debtors' Bankruptcy Cases [Case No. 17-11936, Docket No. 22].

13.     On August 28, 2017, Cocoa Services filed with the Court its Schedules of Assets and Liabilities [Case No. 17-11936, Docket No. 86] (the "Cocoa Services Schedules").

14.     On August 28, 2017, Morgan Drive filed with the Court its Schedules of Assets and Liabilities [Case No. 17-11936, Docket No. 88] (the "Morgan Drive Schedules").

**C.    The Subsidiary Debtors' Joint Plan.**

15.     On January 12, 2018, the Subsidiary Debtors filed their *Joint Plan of Liquidation of Cocoa Services, L.L.C. and Morgan Drive Associates, L.L.C. Under Chapter 11 of the Bankruptcy Code* (the "Plan") [Case No. 17-11936, Docket No. 160] and corresponding disclosure statement [Case No. 17-11936, Docket No. 161]. By order dated February 23, 2018, the Court approved the Subsidiary Debtors' disclosure statement related to the Plan.

D.      **The TCG Claims.**

16.     As reflected on Schedule E/F of the Cocoa Services Schedules, Cocoa Services'

books and records reflect that Cocoa Services has, *inter alia*, the following unsecured debts:

(i) $3,811,085.39 due to "Transmar" and (ii) $3,093,074.30 due to TCG.

17.     As reflected on Schedule D of the Cocoa Services Schedules, Cocoa Services'

books and records reflect a disputed, contingent, unliquidated secured claim (the "Cocoa

Services Schedule D Claim") held by TCG relating to certain cocoa product owned by TCG that

was in the possession of Cocoa Services at the time Cocoa Services filed the Cocoa Services

Schedules.

18.     As reflected on Schedule E/F of the Morgan Drive Schedules, Morgan Drive's

books and records reflect that Morgan Drive owes the sum of $51,990.00 to TCG.

19.     On or about November 2, 2017, the TCG Trustee, on behalf of TCG, filed the

following four (4) separate proofs of claim against Cocoa Services:  (i) Claim No. 32 in an

unliquidated amount relating to the TCG inventory that was formerly in Cocoa Services'

possession; (ii) Claim No. 34 in the amount of $1,200,181.32 for alleged preferential transfers

made by TCG to Cocoa Services; (iii) Claim No. 43 in the amount of $3,093,074.30; and

(iv) Claim No. 44 in the amount of $3,811,085.39 (collectively, the "TCG/Cocoa Services

Claims").

20.     On or about November 2, 2017, the TCG Trustee, on behalf of TCG, also filed the

following two (2) proofs of claim against Morgan Drive: (i) Claim No. 41 in the amount of

$51,990.00; and (ii) Claim No. 42 in an unliquidated amount for alleged preferential payments

made by TCG to Morgan Drive (collectively, the "TCG/Morgan Drive Claims" and, together

with the Cocoa Services Claims, the "TCG Claims").

21.     Under the terms of the Conversion Order, the TCG Claims are Encumbered Assets that are subject to first priority liens in favor of the Agent on behalf of the Prepetition Lenders.

**E.     The Settlement.**

22.     The Subsidiary Debtors and the TCG Trustee have engaged in settlement discussions regarding the TCG Claims and the Plan.  In connection with those settlement discussions, Cocoa Services and Morgan Drive have provided the TCG Trustee with information and documentation concerning the TCG Claims.  The Agent has agreed to the settlement on behalf of the Prepetition Lenders.

23.     To avoid the expense and the risk associated with potential litigation related to the allowance of the TCG Claims and confirmation of the Plan, the Subsidiary Debtors and the TCG Trustee have agreed to a resolution, discussed below, with respect to the TCG Claims and the Plan.

<u>**THE SETTLEMENT AGREEMENT**</u>

24.     The Settlement Agreement, a copy of which is annexed as <u>**Exhibit B**</u>, is the product of arms' length negotiation between the TCG Trustee and the Subsidiary Debtors.  The TCG Trustee and the Subsidiary Debtors submit that the Settlement Agreement is fair and equitable, and is in the best interests of both the Subsidiary Debtors' and the TCG estates, and should therefore be approved.

25.     The salient terms[2] of the Settlement Agreement are as follows:

- <u>Allowance of TCG Claim Nos. 41, 43 and 44</u>.  Claim No. 41 ($51,990.00 claim against Morgan Drive), Claim No. 43 ($3,093,074.30 claim against Cocoa Services), and Claim No. 44 ($3,811,085.39 claim against Cocoa Services) are

---

[2] To the extent there are any inconsistencies between this summary and the Settlement Agreement, the Settlement Agreement shall control.  Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Settlement Agreement.

allowed on a final basis as general unsecured claims pursuant to section 502 of the Bankruptcy Code, and shall not be subject to any further objection by any party in interest or reconsideration under section 502(j) of the Bankruptcy Code.

- <u>Withdrawal of TCG Claims No. 32, 34 and 42</u>.  Claim No. 32 (unliquidated claim against Cocoa Services), Claim No. 34 ($1,200,181.32 claim against Cocoa Services) and Claim No. 42 (unliquidated claim against Morgan Drive) shall be deemed withdrawn.  Upon entry of the Approval Orders, the Subsidiary Debtors shall direct the Claims Agent to remove these claims from the Claims Register. The Cocoa Services Schedule D Claim shall be of no further force or effect in accordance with Rule 3003(c)(2) of the Federal Rules of Bankruptcy Procedure.

- <u>Covenants of TCG Trustee</u>.  The TCG Trustee shall (i) not object to confirmation of the Plan, (ii) not object to any amendment to the Plan unless such amendment would impair the TCG Trustee's rights under the Settlement Agreement or the Plan or would otherwise deprive the TCG Trustee of the benefits he is contemplated to receive under the Plan or the Settlement Agreement, (iii) not take any actions intended to frustrate or interfere with confirmation of the Plan, and (iv) not take any actions intended to frustrate or interfere with confirmation of any amendment to the Plan unless such amendment would impair the TCG Trustee's rights under the Settlement Agreement or the Plan or would otherwise deprive the TCG Trustee of the benefits he is contemplated to receive under the Plan or the Settlement Agreement.

- <u>Covenants of Subsidiary Debtors</u>.  Effective immediately, the Subsidiary shall not seek to amend the Plan in a way that would impair the TCG Trustee's rights under the Settlement Agreement or the Plan or would otherwise deprive the TCG Trustee of the benefits he is contemplated to receive under the Plan or the Settlement Agreement.

- <u>Release</u>.  Except for the claims expressly allowed by the Settlement Agreement, the TCG Trustee, on one hand, and the Subsidiary Debtors, on the other hand, release the other from any and all claims, causes of action, suits, debts, obligations, liabilities, accounts, damages, demand rights, titles, defenses, or demands whatsoever, known or unknown, asserted or unasserted to the extent permitted by law.  For the avoidance of doubt, the releases granted under the Settlement Agreement shall inure only to the benefit of TCG and the Subsidiary Debtors and not any nondebtor third parties.

- <u>Effective Date</u>.  Except as expressly set forth in the Settlement Agreement, the terms of the Settlement Agreement shall become effective upon entry of the Approval Orders.

## **RELIEF REQUESTED AND BASIS THEREFOR**

26.     Through this Motion, the TCG Trustee and the Subsidiary Debtors seek an order

7

approving the Settlement Agreement pursuant to Bankruptcy Rule 9019.

27.    Bankruptcy Rule 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). In ruling on a motion pursuant to Bankruptcy Rule 9019(a), the court must find that the proposed settlement is fair and equitable and is in the best interests of the estate. See Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968); Fischer v. Pereira (In re 47-49 Charles Street, Inc.), 209 B.R. 618, 620 (S.D.N.Y. 1997); In re Ionosphere Clubs, Inc., 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd 17 F.3d 600 (2d Cir. 1994); In re Fugazy, 150 B.R. 103, 106 (Bankr. S.D.N.Y. 1993).

28.    In order to reach such a decision, a bankruptcy court must be apprised "of all facts necessary for an intelligent and objective opinion" of whether the creditor's claim will be successful, the likely expense, length and the degree of complexity of the litigation, the potential difficulties of collecting on a judgment "and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." TMT Trailer Ferry, 390 U.S. at 424.

29.    To constitute a fair and equitable compromise or settlement, the bankruptcy court must find that the settlement does not "fall below the lowest point in the range of reasonableness." Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983); In re Drexel Burnham Lambert Group, Inc., 138 B.R. 723, 758-59 (Bankr. S.D.N.Y. 1992).

30.    The bankruptcy court should also consider the fair and reasonable course of action for the debtor's estate, with the limited available assets, giving consideration to the interests of creditors and the avoidance of burdening the estate with undue waste or needless or fruitless litigation. In re Del Grosso, 106 B.R. 165, 167-168 (Bankr. N.D. Ill. 1989); see also In re Culmtech, Ltd., 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990); In re Lawrence & Erausguin, Inc.,

8

124 B.R. 37, 38 (Bankr. N.D. Ohio 1990); In re Bell & Beckwith, 93 B.R. 569, 574-75 (Bankr. N.D. Ohio 1988).

31.     The bankruptcy court is not required to determine conclusively the merits of a claim subject to compromise or to find that a proposed settlement constitutes the best results obtainable to ensure that the settlement meets the reasonableness threshold.  Instead, the court should "canvass the issues" to determine whether the proposed settlement is fair and equitable, is in the best interests of the estate and otherwise does not fall outside the range of reasonableness. In re Apex Oil Co., 92 B.R. 847, 867 (Bankr. E.D. Mo. 1988).

32.     Here, the TCG Trustee and the Subsidiary Debtors considered several factors in determining that entering into the Settlement Agreement is in the best interests of their respective estates.

33.     First, the Settlement Agreement was reached through good faith, arms' length negotiations, during which time the TCG Trustee and the Subsidiary Debtors were each represented by experienced counsel.  As a result, all parties were fully informed and advised with respect to the business and legal implications of the Settlement Agreement's terms.

34.     Second, the TCG Trustee, on the one hand, and the Subsidiary Debtors, on the other hand, each recognize that potential litigation with respect to either or both the TCG Claims and confirmation of the Plan could be protracted, burdensome, costly, and uncertain and could entail complex factual and legal disputes.  Therefore, the TCG Trustee and the Subsidiary Debtors have entered into a good faith compromise, subject to Court approval, for the complete and final settlement of any and all claims, disputes, and causes of action between and among them, thereby avoiding the need for any litigation.

35.     Third, because the TCG Trustee has agreed to support the Plan as part of the

Settlement Agreement, there is a greater likelihood that the Plan will be confirmed, which will benefit the Subsidiary Debtors, their creditors, which includes TCG, and their estates.

36.     <u>Fourth</u>, the TCG estate will benefit from the proposed settlement in that it will avoid costly, uncertain litigation and will receive distributions from the Cocoa Services' and Morgan Drive estates in a more expedient manner.

37.     Based upon the foregoing, the TCG Trustee and the Subsidiary Debtors respectfully submit that the Settlement Agreement is fair and equitable and is in the best interests of TCG's and the Subsidiary Debtors' estates.

[*remainder of page intentionally left blank*]

## **CONCLUSION**

**WHEREFORE**, the TCG Trustee and the Subsidiary Debtors respectfully request that

this Court enter an order, substantially in the form annexed hereto as **Exhibit A**, approving the

Settlement Agreement, and granting such other and further relief as may be just and proper.

Dated:  New York, New York
March 19, 2018

WINDELS MARX LANE & MITTENDORF,
LLP

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP


By:  _/s/ James M. Sullivan_____
James M. Sullivan
156 West 56th Street
New York, New York 10019
Telephone (212) 237-1000
Email: jsullivan@windelsmarx.com

*Attorneys for Alan Nisselson, Chapter 7 Trustee
for Transmar Commodity Group Ltd.*

By:  _/s/ Tracy L. Klestadt_____
Tracy L. Klestadt
Joseph C. Corneau
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000
Email: tklestadt@klestadt.com
jcorneau@klestadt.com

-and-

RIKER DANZIG SCHERER HYLAND &
PERRETTI LLP
Joseph L. Schwartz (admitted *pro hac vice*)
Tara J. Schellhorn
Rachel F. Gillen (admitted *pro hac vice*)
Headquarters Plaza, One Speedwell Avenue
Morristown, New Jersey 07960
Telephone: (973) 538-0800

*Attorneys for Cocoa Services, L.L.C. and
Morgan Drive Associates, L.L.C.*

11

## **EXHIBIT A**

Proposed Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X
                                                    :
In re:                                              :    Chapter 7
                                                    :
TRANSMAR COMMODITY GROUP LTD.,                      :    Case No. 16-13625 (JLG)
                                                    :
        Debtor.                                     :
                                                    :
--------------------------------------------------------------- X
                                                    :
In re:                                              :    Chapter 11
                                                    :
COCOA SERVICES, L.L.C., et al.,                     :    Case No. 17-11936 (JLG)
                                                    :
        Debtors.                                    :    Jointly Administered
                                                    :
---------------------------------------------------------------X

**ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN THE
CHAPTER 7 TRUSTEE OF TRANSMAR COMMODITY GROUP LTD. AND
DEBTORS COCOA SERVICES, L.L.C. AND MORGAN DRIVE, L.L.C.,
PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019(A)**

**UPON** the Joint Motion (the "Motion")[1] of Alan Nisselson, the Chapter 7 Trustee (the

"TCG Trustee") for Transmar Commodity Group Ltd. ("TCG"), and Cocoa Services L.L.C.

("Cocoa Services") and Morgan Drive Associates, L.L.C. ("Morgan Drive," and together with

Cocoa Services, the "Subsidiary Debtors") for entry of an order, pursuant to Rule 9019 of the

Federal Rule of Bankruptcy Procedure, approving a settlement agreement (the "Settlement

Agreement") between TCG and the Subsidiary Debtors annexed to the Motion as **Exhibit B**;

and the Motion and the relief requested in the Motion being a core proceeding; and venue

being proper before this Court; and due and sufficient notice of the Motion having been given;

and it appearing that no other or further notice need be provided; and this Court having

determined that relief requested in the Motion is in the best interests of TCG, the Subsidiary

---

[1] All capitalized terms used but not otherwise defined herein shall have the same meanings ascribed to them in the Motion.

Debtors, their respective creditors, and all parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and the proposed settlement having met the requirements of Federal Rule of Bankruptcy Procedure 9019; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as set forth herein.

2.      The settlement reflected in the Settlement Agreement is approved, pursuant to Federal Rule of Bankruptcy Procedure 9019.

3.      The TCG Trustee and the Subsidiary Debtors are authorized to enter into the Settlement Agreement and to take such actions as are necessary to implement its terms.

4.      The Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

Dated: New York, New York
_____, 2018

_____
UNITED STATES BANKRUPTCY JUDGE

2

## **EXHIBIT B**

Settlement Agreement

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "<u>Settlement Agreement</u>") dated March 16, 2018, is made

by and between Cocoa Services L.L.C. ("<u>Cocoa Services</u>"), Morgan Drive Associates, L.L.C.

("<u>Morgan Drive</u>," and together with Cocoa Services, the "<u>Subsidiary Debtors</u>"), on the one hand,

and Alan Nisselson, Chapter 7 trustee (the "<u>TCG Trustee</u>") for Transmar Commodity Group,

Ltd. ("<u>TCG</u>" and together with the Subsidiary Debtors, the "<u>Parties</u>"), on the other hand.

## RECITALS

**WHEREAS**, on December 31, 2016, TCG filed a voluntary petition for relief pursuant to

chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") with the United States

Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>"), and operated

as a debtor-in-possession in possession until July 26, 2017, when the Bankruptcy Court entered

an order converting the case to a case under chapter 7 of the Bankruptcy Code [Case No. 16-

13625, Docket No. 402] (the "<u>TCG Bankruptcy Case</u>"); and

**WHEREAS**, on May 23, 2017, ABN AMRO Capital USA LLC (the "<u>Agent</u>"), which

serves as syndication agent, administrative agent and collateral agent for itself and a group of

prepetition lenders[1] that hold a first priority blanket lien against essentially all of TCG's assets,

filed a motion to convert TCG's chapter 11 case to a case under chapter 7 of the Bankruptcy

Code [Case No. 16-13625, Docket No. 295]; and

**WHEREAS**, on July 11, 2017, the Bankruptcy Court entered an order which approved

conversion of the TCG Bankruptcy Case to chapter 7 and granted related relief [Case No. 16-

13625, Docket No. 388], and on July 26, 2017, the Bankruptcy Court entered an order converting

---

[1] The prepetition lenders are ABN AMRO Bank N.V., Bank Hapoalim, The Bank of Tokyo Mitsubishi
UFJ, Ltd., BNP Paribas, Israel Discount Bank of New York, Macquarie Bank, Natixis, and Societe
Generale (collectively, the "<u>Prepetition Lenders</u>").



the TCG Bankruptcy Case to a chapter 7 case [Case No. 16-13625, Docket No. 402]; and

**WHEREAS**, upon conversion of the TCG Bankruptcy Case to chapter 7, the United States Trustee appointed the TCG Trustee as interim trustee of TCG's chapter 7 estate [Case No. 16-13625, Docket 403]; and

**WHEREAS**, TCG's creditors did not seek the election of a permanent trustee and, as a result, the TCG Trustee became the permanent trustee; and

**WHEREAS**, on July 14, 2017, Cocoa Services and Morgan Drive, which are wholly-owned subsidiaries of TCG, each filed voluntary Chapter 11 petitions for relief with the Bankruptcy Court (the "Subsidiary Debtors' Bankruptcy Cases"); and

**WHEREAS**, the Subsidiary Debtors' Bankruptcy Cases are being jointly administered before the Bankruptcy Court under Case No. 17-11936 (JLG); and

**WHEREAS**, Cocoa Services and Morgan Drive are operating their respective businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code; and

**WHEREAS**, by order dated July 20, 2017, the Bankruptcy Court authorized the retention of Prime Clerk, LLC as the Subsidiary Debtors' claims agent (the "Claims Agent") to, among other things, maintains the claims register (the "Claims Register") in connection with the Subsidiary Debtors' Bankruptcy Cases [Case No. 17-11936, Docket No. 22]; and

**WHEREAS**, on August 28, 2017, Cocoa Services filed with the Bankruptcy Court its Schedules of Assets and Liabilities [Case No. 17-11936, Docket No. 86] (the "Cocoa Services Schedules"); and

**WHEREAS**, as reflected on Schedule E/F of the Cocoa Services Schedules, Cocoa Services' books and records reflect that Cocoa Services has, *inter alia*, the following unsecured debts: (i) $3,811,085.39 due to "Transmar" and (ii) $3,093,074.30 due to TCG; and



WHEREAS, as reflected on Schedule D of the Cocoa Services Schedules, Cocoa Services' books and records reflect a disputed, contingent, unliquidated secured claim (the "Cocoa Services Schedule D Claim") held by TCG relating to certain cocoa product owned by TCG that was in the possession of Cocoa Services at the time Cocoa Services filed the Cocoa Services Schedules; and

WHEREAS, on August 28, 2017, Morgan Drive filed with the Bankruptcy Court its Schedules of Assets and Liabilities [Case No. 17-11936, Docket No. 88] (the "Morgan Drive Schedules"); and

WHEREAS, as reflected on Schedule E/F of the Morgan Drive Schedules, Morgan Drive's books and records reflect that Morgan Drive owes the sum of $51,990.00 to TCG; and

WHEREAS, on or about November 2, 2017, the TCG Trustee, on behalf of TCG, filed the following four (4) separate proofs of claim against Cocoa Services:  (i) Claim No. 32 in an unliquidated amount relating to the TCG inventory that was formerly in Cocoa Services' possession; (ii) Claim No. 34 in the amount of $1,200,181.32 for alleged preferential transfers made by TCG to Cocoa Services; (iii) Claim No. 43 in the amount of $3,093,074.30; and (iv) Claim No. 44 in the amount of $3,811,085.39 (collectively, the "TCG/Cocoa Services Claims"); and

WHEREAS, on or about November 2, 2017, the TCG Trustee, on behalf of TCG, also filed the following two (2) proofs of claim against Morgan Drive: (i) Claim No. 41 in the amount of $51,990.00; and (ii) Claim No. 42 in an unliquidated amount for alleged preferential payments made by TCG to Morgan Drive (collectively, the "TCG/Morgan Drive Claims" and, together with the Cocoa Services Claims, the "TCG Claims"); and



**WHEREAS**, on January 12, 2018, the Subsidiary Debtors filed their *Joint Plan of Liquidation of Cocoa Services, L.L.C. and Morgan Drive Associates, L.L.C. Under Chapter 11 of the Bankruptcy Code* (the "Plan") [Case No. 17-11936, Docket No. 160] and corresponding disclosure statement [Case No. 17-11936, Docket No. 161]; and

**WHEREAS**, by order dated February 23, 2018, the Bankruptcy Court approved the Subsidiary Debtors' disclosure statement relating to the Plan; and

**WHEREAS,** the Subsidiary Debtors and the TCG Trustee have engaged in settlement discussions regarding the TCG Claims and the Plan.  In connection with those settlement discussions, Cocoa Services and Morgan Drive have provided the TCG Trustee with information and documentation concerning the TCG Claims; and

**WHEREAS**, to avoid the expense and the risk associated with potential litigation related to the allowance of the TCG Claims and confirmation of the Plan, the Subsidiary Debtors and the TCG Trustee have agreed to a resolution with respect to the TCG Claims and the Plan, as set forth below, which the Parties believe is in the best interests of both the Subsidiary Debtors' and the TCG estates; and

**WHEREAS**, except as expressly set forth herein, none of the terms of the settlement set forth herein shall become effective until the date when the orders approving this Settlement Agreement in both the TCG Bankruptcy Case and the Subsidiary Debtors' Bankruptcy Cases (the "Approval Orders") have been entered by the Bankruptcy Court.

**NOW, THEREFORE**, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which are acknowledged, and subject to approval by the Bankruptcy Court of the settlement set forth in this Settlement Agreement, the Parties agree as follows (including and incorporating the recitals set forth above):

{11506733:4}                                    4

1.      <u>Allowance of TCG Claim Nos. 41, 43 and 44</u>.  Claim No. 41 ($51,990.00 claim against Morgan Drive), Claim No. 43 ($3,093,074.30 claim against Cocoa Services), and Claim No. 44 ($3,811,085.39 claim against Cocoa Services) are allowed on a final basis as general unsecured claims pursuant to section 502 of the Bankruptcy Code, and shall not be subject to any further objection by any party in interest or reconsideration under section 502(j) of the Bankruptcy Code.

2.      <u>Withdrawal of TCG Claims No. 32, 34 and 42</u>.  Claim No. 32 (unliquidated claim against Cocoa Services), Claim No. 34 ($1,200,181.32 claim against Cocoa Services) and Claim No. 42 (unliquidated claim against Morgan Drive) shall be deemed withdrawn.  Upon entry of the Approval Orders, the Subsidiary Debtors shall direct the Claims Agent to remove these claims from the Claims Register.  The Cocoa Services Schedule D Claim shall be of no further force or effect in accordance with Rule 3003(c)(2) of the Federal Rules of Bankruptcy Procedure.

3.      <u>Covenants of TCG Trustee</u>.  The TCG Trustee shall (i) not object to confirmation of the Plan, (ii) not object to any amendment to the Plan unless such amendment would impair the TCG Trustee's rights under this Settlement Agreement or the Plan or would otherwise deprive the TCG Trustee of the benefits he is contemplated to receive under the Plan or this Settlement Agreement, (iii) not take any actions intended to frustrate or interfere with confirmation of the Plan, and (iv) not take any actions intended to frustrate or interfere with confirmation of any amendment to the Plan unless such amendment would impair the TCG Trustee's rights under this Settlement Agreement or the Plan or would otherwise deprive the TCG Trustee of the benefits he is contemplated to receive under the Plan or this Settlement Agreement.



4.     Covenants of Subsidiary Debtors.  Effective immediately, the Subsidiary Debtors shall not seek to amend the Plan in a way that would impair the TCG Trustee's rights under this Settlement Agreement or the Plan or would otherwise deprive the TCG Trustee of the benefits he is contemplated to receive under the Plan or this Settlement Agreement.

5.     Bankruptcy Court Approval of Settlement.  The settlement contained herein is expressly subject to approval of the Bankruptcy Court in both the TCG Bankruptcy Case and the Subsidiary Debtors' Bankruptcy Cases, upon notice to all appropriate parties in the TCG Bankruptcy Case and the Subsidiary Debtors' Bankruptcy Cases.  TCG and the Subsidiary Debtors shall jointly and promptly seek the entry of orders by the Bankruptcy Court in the TCG Bankruptcy Case and the Subsidiary Debtors' Bankruptcy Cases authorizing the settlement contained herein.  To the extent the Bankruptcy Court declines to approve the settlement contained herein, this Settlement Agreement shall be of no force or effect.

6.     Authority.  Subject only to approval of this settlement by the Bankruptcy Court, each signatory to the Settlement Agreement expressly warrants that he has the authority to execute the Settlement Agreement on behalf of the Party noted.

7.     Release.  Except for the claims expressly allowed hereby, the TCG Trustee, on one hand, and the Subsidiary Debtors, on the other hand, release the other from any and all claims, causes of action, suits, debts, obligations, liabilities, accounts, damages, demand rights, titles, defenses, or demands whatsoever, known or unknown, asserted or unasserted to the extent permitted by law.  For the avoidance of doubt, the releases granted hereunder shall inure only to the benefit of the Parties and not any nondebtor third parties.

8.     Binding Effect.  Subject only to approval of the settlement contained herein by the Bankruptcy Court, the provisions of the Settlement Agreement are binding on and shall inure to

{11506733:4}                                    6

the benefit of the Parties to the Settlement Agreement and to each Party's respective successors and assigns, including the plan administrator under the Plan.

9.    Governing Law; Jurisdiction. The Settlement Agreement will be governed by, and construed and enforced in accordance with, the laws of the State of New York. The Bankruptcy Court shall retain jurisdiction to enforce the terms of the Settlement Agreement. The Parties hereby submit themselves to the exclusive jurisdiction of the Bankruptcy Court to the fullest extent permissible by law.

10.    Entire Agreement. The Settlement Agreement and the applicable provisions in the Plan constitute the complete and entire agreement between the Parties with respect to the matters contained in the Settlement Agreement, and supersedes all prior agreements, negotiations, and discussions between the parties with respect thereto.

11.    Non-Reliance. Each of the Parties acknowledge that, in entering into the Settlement Agreement, they are not relying upon any representations or warranties made by anyone other than those terms and provisions expressly set forth in the Settlement Agreement and the applicable provisions in the Plan.

12.    Amendment. It is expressly understood and agreed that the Settlement Agreement may not be altered, amended, waived, modified or otherwise changed in any respect or particular whatsoever except by a writing duly executed by authorized representatives of each of the Parties.

13.    Counterparts. The Settlement Agreement may be executed in counterparts, and delivery may be effectuated by transmission of executed counterparts by email, which shall be given the same force and effect as a manually executed original.



14.   Effective Date. Except as set forth in this Settlement Agreement, the terms of this

Settlement Agreement shall become effective upon entry of the Approval Orders.

COCOA SERVICES, L.L.C.

By: _____
      Bernd Herrmann
      Authorized Officer

MORGAN DRIVE ASSOCIATES, L.L.C.

By: _____
      Bernd Herrmann
      Authorized Officer

TRANSMAR   COMMODITY   GROUP,
LTD.

By _____
      Alan Nisselson
      Chapter 7 Trustee of Transmar
      Commodity Group, Ltd.

4924588v3