**Hearing date and time: July 10, 2018 at 11:00 a.m. (Eastern Time)**

**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, NY 10019
(212) 839-5300 (tel.)
(212) 839-5599 (fax)
John G. Hutchinson
Lee S. Attanasio
Benjamin F. Burry

*Counsel for AMERRA Capital Management LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
In re:                                                          :
                                                                :        Chapter 7
**TRANSMAR COMMODITY GROUP LTD.,**                              :
                                                                :        Case No. 16-13625 (JLG)
                                        Debtor.                 :
---------------------------------------------------------------- x

### OBJECTION OF AMERRA CAPITAL MANAGEMENT LLC TO THE MOTION FOR AN ORDER PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING THE TRUSTEE TO ISSUE SUBPOENAS FOR THE EXAMINATION OF, AND THE PRODUCTION OF DOCUMENTS FROM, AMERRA CAPITAL MANAGEMENT LLC AND NANCY OBLER

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................1

BACKGROUND ..........................................................................................................3

ARGUMENT ..............................................................................................................7

I.      LEGAL STANDARD...........................................................................................7

II.     THE REQUESTED DISCOVERY WILL IMPOSE AN UNDUE BURDEN ON
        AMERRA ......................................................................................................8

        A.    The Trustee purports to request discovery to evaluate and investigate claims by
              and against the Debtor and to administer assets for the estate, but his Disputed
              Requests do not accomplish those goals. ................................................9

        B.    Even to the extent that the Trustee's Disputed Requests would reveal information
              relating to the Debtor's assets and affairs, the information is unnecessary in light
              of information already available to the Trustee, including from AMERRA's prior
              and promised productions. .................................................................14

        C.    The burden on AMERRA to provide discovery to the Trustee pursuant to his
              Disputed Requests far outweighs any benefit to the Trustee. ...............16

        D.    The Trustee's Disputed Requests would require AMERRA to dig into its business
              records and provide confidential information. .......................................19

III.    THE DISPUTED REQUESTS HAVE AN IMPERMISSIBLE PURPOSE ....................20

IV.     THE TRUSTEE SHOULD NOT BE PERMITTED TO TAKE ANY ORAL
        EXAMINATION OF MS. OBLER ..................................................................22

CONCLUSION...........................................................................................................24

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AOG Entm't, Inc.*,
558 B.R. 98 (Bankr. S.D.N.Y. 2016) ........................................................................ 7

*Bank One, Columbus, N.A. v. Hammond (In re Hammond)*,
140 B.R. 197 (S.D. Ohio 1992) ............................................................................... 17

*In re Bennett Funding Gr., Inc.*,
203 B.R. 24 (Bankr. N.D.N.Y. 1996) ...................................................................... 18

*In re Coffee Cupboard, Inc.*,
128 B.R. 509 (Bankr. E.D.N.Y. 1991) ......................................................... 8, 20, 23

*In re Continental Forge Co.*,
73 B.R. 1005 (Bankr. W.D. Pa. 1987) ............................................................... 19, 20

*In re Dinubilo*,
177 B.R. 932 (E.D. Cal. 1993) ............................................................................... 18

*In re Drexel Burnham Lambert Gr., Inc.*,
123 B.R. 702, 712 (Bankr. S.D.N.Y. 1992) .............................................................. 8

*In re Duratech Indus., Inc.*,
241 B.R. 283 (E.D.N.Y. 1999) ......................................................................... 14, 16

*In re Eagle-Picher Indus., Inc.*,
169 B.R. 130 (Bankr. S.D. Ohio 1994) ..................................................................... 7

*In re Express One Int'l, Inc.*,
217 B.R. 215 (Bankr. E.D. Tex. 1998) ...................................................................... 8

*In re Fearn*,
96 B.R. 135, 138 (Bankr. S.D. Ohio 1989) ............................................................... 8

*In re GHR Energy Corp.*,
33 B.R. 451 (Bankr. D. Mass. 1983) ...................................................................... 20

*Intercontinental Enters., Inc. v. Keller (In re Blinder, Robinson & Co., Inc.)*,
127 B.R. 267 (D. Colo. 1991) ................................................................................. 17

*Keene Corp. v. Johns–Manville Corp. (In re Johns–Manville Corp.)*,
42 B.R. 362 (S.D.N.Y. 1984) ................................................................................. 20

*Picard v. Marshall* (*In re Bernard L. Madoff Inv. Secs. LLC*),
 No. 09-11893, 2014 WL 5486279 (Bankr. S.D.N.Y. Oct. 30, 2014) ...................................... 7

*In re Strecker*,
 251 B.R. 878 (Bankr. D. Colo. 2000) ...................................................................................... 19

*In re SunEdison, Inc.*,
 562 B.R. 243 (Bankr. S.D.N.Y. 2017) ................................................................... 7, 8, 22, 23

*In re Texaco Inc.*,
 79 B.R. 551 (Bankr. S.D.N.Y. 1987) ...................................................................................... 14

*In re Underwood*,
 457 B.R. 635 (Bankr. S.D. Ohio 2011) ............................................................................... 7, 19

*In re Wilcher*,
 56 B.R. 428 (Bankr. N.D. Ill. 1985) ................................................................................... 7, 20

*In re Zaruba*,
 No. 07-00100, 2007 WL 4219406 (Bankr. D. Alaska Nov. 29, 2007) .................................... 23

**Other Authorities**

Fed. R. Bankr. P. 2004(a) ........................................................................................................ 17

Fed. R. Bankr. P. 2004(b) ..................................................................................................... 7, 20

Fed. R. Civ. P. 26(b)(1) ............................................................................................................ 22

AMERRA Capital Management LLC ("AMERRA"), by and through its undersigned

counsel, respectfully objects to the motion by Alan Nisselson (the "Trustee") for entry of an

order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Rule 2004"),

authorizing the Trustee to issue subpoenas for the examination of, and the production of

documents from, AMERRA and Nancy Obler, a Managing Director of AMERRA [ECF No.

542] (the "Motion").

**PRELIMINARY STATEMENT**

1.       Once again, a party – this time the Trustee, rather than ABN AMRO Capital USA

LLC ("ABN AMRO") – approaches this Court, under the guise of Rule 2004, with a request to

obtain broad discovery from AMERRA regarding its communications about Transmar

Commodity Group Ltd. (the "Debtor") and the Debtor's affiliates, including Euromar

Commodities GmbH ("Euromar"), purportedly in an effort to investigate AMERRA's claim filed

against the Debtor (the "AMERRA Claim") and to determine whether any additional assets of

the Debtor's estate exist.  The Trustee also seeks – as did ABN AMRO – to orally examine Ms.

Obler on the theory that she "was a key advisor" to the Debtor's insiders.  This repackaged Rule

2004 application should be denied.

2.       The Trustee represents that the Motion is filed for the purposes of obtaining

documents and an examination to aid in the administration of the estate.  AMERRA does not

necessarily disagree that five of the seven categories of documents sought fit (loosely) within this

description, and AMERRA already has agreed to produce documents within those five categories

– those that concern the AMERRA Claim and those that concern a specific transaction between

AMERRA and the Debtor and the Receivables Claim related thereto, including internal

communications and communications with third parties.  AMERRA also has agreed to produce

communications using an email address to which the Debtor does not otherwise have access

between AMERRA and Euromar or any one of nine individuals associated with the Debtor.

These agreements are in addition to AMERRA's voluntary production, at substantial expense, of

voluminous records concerning 48 separate cocoa transactions between AMERRA and the

Debtor and/or Euromar, as well as documentation relating to claims AMERRA held against the

Debtor, Euromar, and other affiliates.  AMERRA's continued willingness to cooperate in

reasonable, tailored discovery requests is evident – but it is limited by the bounds of Rule 2004.

    3.      The remaining two categories of documents requested fall outside the appropriate

scope of Rule 2004.  With disputed requests (d) and (g) [*see* Mot. at 8-9], the Trustee seeks *all*

electronic communications within AMERRA regarding the Debtor, Euromar, or any of their

affiliates, and *all* communications with *any* third parties regarding certain non-Debtor affiliates.[1]

The Trustee already has or will have every communication in the requested period that

AMERRA ever had with anyone at Transmar or Euromar,[2] as well as over 1.1 million

documents totaling over 2.7 million pages produced by the Debtor to ABN AMRO, a production

that included over 13,000 emails (including the over 8,000 attachments to those emails, totaling

almost 57,000 pages) to or from AMERRA. There is no dispute that the Trustee has access to all

of these documents, and there should be no dispute that these documents provide the Trustee

with more than adequate basis to determine whether there are other estate assets or claims to

pursue.

---

[1] The Trustee characterizes request (d) as maybe "the most important request included in the Motion," [Mot.
¶ 36(a)], which may be true, but not because it is uniquely focused to assist in the discovery of potential targets of
avoidance, as the Trustee suggests, but because it is so completely unbounded that it makes every other request
unnecessary.

[2] To the extent that there may be a small exception to this statement because different (*i.e.*, non "Transmar" domain)
email addresses were used, the Trustee has asked AMERRA to produce these documents and AMERRA has agreed
to do so.

4.      Discovery of the additional communications responsive to the disputed requests is impermissible under Rule 2004 because it is not likely to result in any material additional information relevant to the Debtor and its financial condition, it is redundant and unnecessary, and it will be unduly burdensome and hugely expensive to AMERRA.  Moreover, the Trustee's justifications in the Motion should be seen for what they are:  pretexts for obtaining pre-litigation discovery for use against AMERRA.  In fact, these requests are substantially the same as those included in ABN AMRO's last motion for Rule 2004 discovery, which this Court rightfully denied on that very basis, among others.

5.      The Trustee asserts – without citation to any authority – that even though this Court firmly denied ABN AMRO's requests for the same discovery, he should be entitled to it because he is the Trustee.  While the Trustee is indeed tasked with the administration of the Debtor's estate, Rule 2004 does not differentiate between parties that may seek discovery, and despite his role in this case, as to the two disputed requests, the Trustee fails to meet the standards for discovery pursuant to Rule 2004.

6.      Finally, any oral examination of Ms. Obler will be unduly burdensome and also should be denied, unless the Court imposes restrictions (such as those previously proposed by AMERRA) on such oral examination to properly balance AMERRA's and Ms. Obler's interests against the attenuated, marginal benefits to the Trustee.

## **BACKGROUND**

7.      In addition to being a prepetition trading partner with Transmar and Euromar, AMERRA also is a creditor holding subordinated debt against Transmar in excess of $8.5 million and a creditor of Euromar.

8.      On December 7, 2016, Euromar initiated insolvency proceedings in Germany.

3

9.      On December 31, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.  [*See* ECF No. 1.]

10.     On April 14, 2017, AMERRA filed its claim against the Debtor in the amount of $8,918,213.19 plus unliquidated amounts.  [*See* Claim No. 40.]

**ABN AMRO's Rule 2004 Motions Against AMERRA**

11.     Not three weeks after the Petition Date, and before an official committee of unsecured creditors had even been appointed, on January 17, 2017, ABN AMRO, as agent for a group of lenders, submitted an *ex parte* motion for an order pursuant to Rule 2004 to authorize subpoenas for the production of documents and to conduct oral examinations of a broad swath of parties, including AMERRA (the "Agent's First Rule 2004 Motion").  [ECF No. 71.]  After multiple filings and conferences with the Court, AMERRA and ABN AMRO agreed on an order (the "AMERRA 2004 Order") under which AMERRA would produce to ABN AMRO documents, dating from January 1, 2016 to the present, sufficient to evidence the fact, terms and conditions of transactions between or among AMERRA, Euromar and/or the Debtor.  [ECF No. 125.]

12.     Pursuant to the AMERRA 2004 Order, AMERRA voluntarily produced documents evidencing all 48 cocoa transactions between AMERRA and one or both of the Debtor and Euromar during the time period requested, as well as documents evidencing claims AMERRA held against the Debtor, Euromar, and other affiliates.[3]  On this Motion, the Trustee has asked for additional information, including internal emails and other documents, concerning one of those 48 transactions, and AMERRA has agreed to that request.

---

[3] At the same time, ABN AMRO received discovery from other parties, including the Debtor – whose productions to ABN AMRO totaled at least 1,115,136 documents (or 2,763,398 pages).  At least 13,275 of these documents were emails to or from AMERRA; taking into account attachments to those emails, at least 21,364 documents (or 56,763 pages) produced by the Debtor had been sent to or by AMERRA.

13.    After AMERRA made its productions pursuant to the AMERRA 2004 Order, on

May 5, 2017, ABN AMRO filed a motion (the "Agent's Second Rule 2004 Motion") seeking

further productions from AMERRA and the oral examination of Ms. Obler.  [ECF No. 255.]  The

Agent's Second Rule 2004 Motion sought production of:

> All Documents, including emails, text messages, and Bloomberg terminal
> messages, to or from Nancy Obler (including communications in which Nancy
> Obler was copied as a "cc") and any Employee concerning (i) the Debtor, and/or
> (ii) any of the Affiliates.

and

> All Documents, including emails, text messages, and Bloomberg terminal
> messages, to or from Nancy Obler (including communications in which Nancy
> Obler was copied as a "cc") and any Person concerning (i) the Debtor, and/or (ii)
> any of the Debtor's Affiliates, *expressly excluding* (i) any Documents sent to or
> from the Debtor and/or any of the Affiliates (including as a "cc"), and (ii) any
> custodian using the email domain "transmargroup.com".

[Agent's Second Rule 2004 Motion, Sch. A, Document Requests Nos. 1-2.]

14.    AMERRA objected to the Agent's Second Rule 2004 Motion.  [ECF No. 273.]

**This Court's Denial of the Agent's Second Rule 2004 Motion**

15.    At a hearing on June 9, 2017, this Court read a decision into the record denying

the Agent's Second Rule 2004 Motion.  [ECF No. 367 (the "June 9, 2017 Tr.").]  The Court

found ABN AMRO's "requested discovery [to be] unduly burdensome."  [June 9, 2017 Tr. at

17:14-15.]  The Court noted that ABN AMRO had access to Ms. Obler's and AMERRA's

communications with the Debtor and to its own consultants' analyses.  [*Id.* at 17:15-21.]  Even

though the documents and testimony ABN AMRO sought "may shed light on the debtor's

operations and financial affairs," [*id.* at 18:3-5], because of ABN AMRO's access to the relevant

information and the burden discovery would have on AMERRA, this Court denied the request.

[*Id.* at 18:6-13.]

16.     Further, this Court found that

> ABN AMRO is seeking to confirm not only that Amerra, through Ms. Obler, was aware of the events and causes of action that led to the debtor's failure, but that Amerra played an active role in assisting the debtors in formulating their strategy for dealing with the lenders. In that way the focus of the requested discovery is on Amerra, not the debtors.

[June 9, 2017 Tr. at 21:18-24.] It was "clear to the Court that ABN AMRO has identified Amerra as a litigation target and is seeking to utilize the liberal discovery available under Rule 2004 to further this ultimate litigation. That's not permitted." [*Id.* at 22:7-11.] The Court therefore found that the discovery "goes beyond 'the acts, conduct, or property, or to the liabilities and financial condition of the debtor or to any matter which may affect the administration of the debtor's estate," providing an independent basis for denying the Agent's Second Rule 2004 Motion. [*Id.* at 22:23-23:4.]

17.     This Court entered an order memorializing its decision on June 26, 2017. [ECF No. 362.]

**The Trustee**

18.     On July 26, 2017, the Court entered an order converting the Debtor's chapter 11 case to a chapter 7 case [ECF No. 402], and the United States Trustee appointed the Trustee as interim trustee. [ECF No. 403.] The Trustee subsequently qualified, and currently serves, as the permanent trustee.

19.     The Trustee has made informal requests to counsel to AMERRA for the production of a wide range of documents and for the oral examination of Ms. Obler. Counsel to AMERRA negotiated with counsel to the Trustee on the scope of such document production and of the oral examination. AMERRA has consented to providing most categories of documents requested, as well as (in theory) producing Ms. Obler for a limited oral examination, but in the interest of keeping its burden reasonable and in protecting its own internal confidential

6

information, AMERRA has not consented to all of the Trustee's request.  Because of the

significant differences between the Trustee's sweeping requests and AMERRA's counteroffers

with regard to two of the Trustee's document requests and his demand for Ms. Obler's oral

examination, on June 6, 2018, the Trustee filed the Motion.

## ARGUMENT

### I.   LEGAL STANDARD

20.   As this Court already has observed with regard to the Agent's Second Rule 2004

Motion [June 9, 2017 Tr. at 18:17-20], a party seeking Rule 2004 discovery bears "the burden to

show good cause for the examination it seeks, and relief lies within the sound discretion of the

Bankruptcy Court."  *In re SunEdison, Inc.*, 562 B.R. 243, 249 (Bankr. S.D.N.Y. 2017); *see also*

*In re AOG Entm't, Inc.*, 558 B.R. 98, 108 (Bankr. S.D.N.Y. 2016); *Picard v. Marshall* (*In re*

*Bernard L. Madoff Inv. Secs. LLC*), No. 09-11893, 2014 WL 5486279, at *2 (Bankr. S.D.N.Y.

Oct. 30, 2014).  Accordingly, on this Motion, the Trustee "bears the burden of proving that good

cause exists for taking the requested discovery."  *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D.

Ill. 1985); *see also In re Eagle-Picher Indus., Inc.*, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994)

(holding that the party requesting Rule 2004 examination "has the burden of showing good cause

for the examination which it seeks").  "Generally, this requires the proposed examiner to show

that the examination is necessary to establish a claim or that the denial of such a request would

cause the examiner undue hardship or injustice."  *In re Underwood*, 457 B.R. 635, 643 (Bankr.

S.D. Ohio 2011).

21.   Further, "by its terms Rule 2004 permits discovery only when it regards the acts,

conduct, or property or the liabilities and financial condition of the debtor or to any matter which

may affect the administration of the debtor's estate or to the debtor's right to a discharge."  June

9, 2017 Tr. at 18:21-19:1; *see also* Fed. R. Bankr. P. 2004(b).

22.     The Trustee has failed to meet his burden, and accordingly, except to the extent

AMERRA has consented, the Motion should be denied.

## II.     THE REQUESTED DISCOVERY WILL IMPOSE AN UNDUE BURDEN ON AMERRA

23.     Even if a moving party successfully shows that the requested discovery falls

within the purview of Rule 2004, the court still must weigh the relevance and value of the

discovery sought against the burden it will impose upon the producing party.  As explained in

*Coffee Cupboard*, "Rule 2004 requires that we balance the compelling interests of the parties,

weighing the relevance of and necessity of the information sought by examination."  *In re Coffee

Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (internal quotations omitted).  "In

evaluating a request to conduct a Rule 2004 examination, the Court must 'balance the competing

interests of the parties, weighing the relevance of and necessity of the information sought by

examination.  That documents meet the requirement of relevance does not alone demonstrate that

there is good cause for requiring their production.'"  *In re SunEdison, Inc.*, 562 B.R. at 249

(internal quotation omitted); *see also* June 9, 2017 Tr. at 14:19-22 (same) (quoting *In re Drexel

Burnham Lambert Gr., Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1992)).  Courts will deny a

Rule 2004 motion when the "cost and disruption to the examinee attendant to a requested

examination outweigh the benefits to the examiner."  *In re Express One Int'l, Inc.*, 217 B.R. 215,

217 (Bankr. E.D. Tex. 1998); *see In re SunEdison*, 562 B.R. at 249 (requests cannot be "so broad

as to be more disruptive and costly to the [examinee] than beneficial to the [examiner]") (quoting

*Fearn*, 96 B.R. 135, 138 (Bankr. S.D. Ohio 1989)).  The balancing here requires denial of the

Motion.

**A.** **The Trustee purports to request discovery to evaluate and investigate claims by and against the Debtor and to administer assets for the estate, but his Disputed Requests do not accomplish those goals.**

24.     The Trustee purports to be requesting discovery pursuant to Rule 2004 in order

"to evaluate the merits of proofs of claim filed against the Debtor, including the Amerra Claim

. . . and to determine whether there are any legal or equitable bases to disallow or subordinate

them," and "to investigate and evaluate the merits of any claim held by the Debtor, including the

Receivable Claim."  [Mot ¶ 32.]

25.     The Trustee's initial requests sought the following:

a.      all documents AMERRA referred to or relied upon in preparing the Amerra Claim;

b.      all communications (including electronic communications such as emails, text messages and Bloomberg terminal messages) between AMERRA or Obler and any other person or entity relating to the Amerra Claim;

c.      all communications (including electronic communications such as emails, text messages and Bloomberg terminal messages) between AMERRA or Obler and any other person or entity relating to the Debtor's sales invoice S55281 to AMERRA dated August 15, 2016 in the amount of $8,243,384.76 (the "Receivable Claim") . . . ;

d.      all electronic communications (including emails, text messages and Bloomberg terminal messages) between Obler and any other AMERRA officer, director, employee or representative concerning the Debtor, Euromar, any of their affiliates, or any related entities from January 1, 2015 through December 31, 2016 . . . ;

e.      all electronic communications (including emails, text messages and Bloomberg terminal messages) between Obler and Euromar from January 1, 2013 through December 31, 2016 . . . ;

f.      all electronic communications (including emails, text messages and Bloomberg terminal messages) between Obler and any of the following persons from January 1, 2013 through December 31, 2016: Peter B. Johnson, Peter G. Johnson, Mary Johnson, Timothy Johnson, William Yu, Thomas Reich, Nathaniel Durant, Nancy Pizzi, and Richard Gary O'Connor concerning the Debtor, Euromar, any of their affiliates, or any related entities from January 1, 2013 through December 31, 2016 . . . ; and

g.      all electronic communications (including emails, text messages and Bloomberg terminal messages) between Obler and any non-Debtor third party

9

concerning Cocoa Origins Africa or any African affiliates of the Debtor or
Euromar from January 1, 2015 through December 31, 2016.

[Mot. ¶ 27.][4]

26.    Consistent with the Trustee's first stated basis for the Motion, requests (a) and (b)

focus on the AMERRA Claim, and AMERRA has agreed to provide documents responsive to

such requests.  Consistent with the Trustee's second stated basis for the Motion, request (c) seeks

documents related to a specified transaction between AMERRA and Transmar and Euromar (the

transaction documents for which were previously provided by AMERRA), and the related

Receivable Claim, and AMERRA has agreed to provide documents responsive to such request.

Requests (e) and (f) are narrowly tailored and limited, and AMERRA acknowledges that

documents responsive to such requests could provide incremental information that may be

relevant to the Trustee's performance of his duties, and AMERRA has agreed to provide

documents responsive to such requests.  Therefore, as a result of AMERRA's pre-Motion

agreements, only requests (d) and (g) are in dispute (the "Disputed Requests").

27.    The first problem with the Disputed Requests is that they are simply a

repackaging of the requests made in the Agent's Second Rule 2004 Motion, as is clear upon a

side-by-side comparison:

---

[4] Each of requests (c) through (g) included an exception "to the extent such communications were sent by email to a
recipient using an email with a 'transmargroup.com' or 'transmarusa.com' domain name."  A document that had
been sent or received by someone using a transmargroup.com or transmarusa.com email – which would constitute
the vast majority of the responsive documents – would, by definition, already be in the Debtor's, and therefore the
Trustee's, possession.

| Agent's Second Rule 2004 Motion | Trustee's Motion |
| --- | --- |
| All Documents, including emails, text messages, and Bloomberg terminal messages, to or from Nancy Obler (including communications in which Nancy Obler was copied as a "cc") and any Employee concerning (i) the Debtor, and/or (ii) any of the Affiliates.<br><br>[Agent's Second Rule 2004 Motion, Sch. A, Document Request No. 1.] | [A]ll electronic communications (including emails, text messages and Bloomberg terminal messages) between Obler and any other AMERRA officer, director, employee or representative concerning the Debtor, Euromar, any of their affiliates, or any related entities from January 1, 2015 through December 31, 2016 (except to the extent such communications were sent by email to a recipient using an email with a "transmargroup.com" or "transmarusa.com" domain name)<br><br>[Mot. ¶ 27(d).] |
| All Documents, including emails, text messages, and Bloomberg terminal messages, to or from Nancy Obler (including communications in which Nancy Obler was copied as a "cc") and any Person concerning (i) the Debtor, and/or (ii) any of the Debtor's Affiliates,[5] *expressly excluding* (i) any Documents sent to or from the Debtor and/or any of the Affiliates (including as a "cc"), and (ii) any custodian using the email domain "transmargroup.com".<br><br>[Agent's Second Rule 2004 Motion, Sch. A, Document Request No. 2.] | [A]ll electronic communications (including emails, text messages and Bloomberg terminal messages) between Obler and any non-Debtor third party concerning Cocoa Origins Africa or any African affiliates of the Debtor or Euromar from January 1, 2015 through December 31, 2016 (except to the extent such communications were sent by email to a recipient using an email with a "transmargroup.com" or "transmarusa.com" domain name).<br><br>[Mot. ¶ 27(g).] |

28.    ABN AMRO argued that the documents that would be produced in response to these requests would be "a primary source of information" regarding the Debtor's affairs, including "what happened to the Debtor's missing assets." [ECF No. 289 ¶ 10; June 9, 2017 Tr. at 16:22-17:1.] The Court was not convinced by this argument, and with good reason: the requests do not seek information about the Debtor's affairs or assets or the disposition thereof,

---

[5] "Affiliates" was defined broadly and included, as relevant here, Cocoa Origins Africa, LLC and any of its subsidiaries. [Agent's Second Rule 2004 Motion, Sch. A, Definitions ¶ 2.]

but rather about AMERRA's internal discussions and its dealings with non-Debtor entities.  The

Trustee's argument in support of the relevance of these requests is similar to ABN AMRO's:

request (d) "may assist the Trustee in discovering potential targets of avoidance and other

claims," and request (g) "is important because the Debtor and Euromar engaged in many unusual

transactions with Cocoa Origins Africa and the other African affiliates and the Trustee would

like to determine whether there are any potential claims."  [Mot. ¶ 36(a)-(b).]  In other words,

AMERRA would be, as ABN AMRO phrased it, "a primary source of information" regarding

the Debtor's affairs, including "what happened to the Debtor's assets."  [ECF No. 289 ¶ 10.]  As

with ABN AMRO's request, while these requests "may shed light on the debtor's operations and

financial affairs," [June 9, 2017 Tr. at 18:3-5], the Trustee has not established why the requested

documents would shed meaningful light on these questions that cannot be gleaned from the vast

information already available to the Trustee.  This omission is especially striking given the

Court's previous denial of similar requests.

29.      The Trustee also claims that document discovery from AMERRA and Ms. Obler

is "particularly important because . . . for a significant period of time [Ms.] Obler was a key

advisor to the Johnson family regarding financial issues at the Debtor and Euromar."  [Mot.

¶ 36(a).]  The Trustee also states that

> AMERRA, and Obler in particular, closely advised the Debtor and its principals
> concerning, among other things, the Debtor's operations and management, its
> relationship and communications with the Prepetition Lenders, and the
> transactions between the Debtor and its affiliate, Euromar.  The investigation has
> revealed that Obler often strategized with the Debtor, Euromar, and their affiliates
> regarding their efforts to restructure their assets and businesses, including
> transactions among the Debtor, Euromar, and their affiliates.

[Mot. ¶ 42.]

30.      Even if the Trustee's assertions were correct, which AMERRA disputes, the

Trustee has or will have, based on what AMERRA agreed to produce, any document reflecting

discussions between Ms. Obler and the Debtor or Euromar.  To demonstrate Ms. Obler's

guidance to or strategizing with the Debtor or Euromar, the Trustee does not need AMERRA's

internal documents; by definition, such documents would not reveal any advice or guidance

provided to the Debtor or Euromar.

31.     Without a doubt, in the final months before bankruptcy, AMERRA communicated

with the Debtor and its creditors frequently in the hope of securing a strategy that would turn

Transmar and Euromar around – as is common for creditors and trading partners of a potential

debtor.  However, the Trustee never explains how Ms. Obler's perspective at this time is relevant

to the Debtor's financial affairs, nor does he provide any basis on which to conclude that

AMERRA's internal documents would furnish any material additional information about the

Debtor's financial condition beyond the thousands of documents he already has reflecting actual

communications between AMERRA and Euromar or Transmar.  Nor does he explain why

AMERRA's and Ms. Obler's advice *to the Debtor and its principals* justifies any discovery

sought in the Disputed Requests, given that such requests explicitly carve out communications

*with the Debtor using the Debtor's email domains* (and which would be duplicative of request (f)

to the extent communications were had with the principals using third-party email addresses,

which communications AMERRA has agreed to provide).

32.     Notably, the Trustee's request for all electronic communications between Ms.

Obler and "any non-Debtor third party concerning Cocoa Origins Africa or any African

affiliates" relates *only* to AMERRA's dealings with non-Debtor parties.  The Debtor has no

interest whatsoever in the vast majority of the entities implicated by this request, with

substantially all of the Debtor's affiliates being distant cousins of the Debtor rather than

subsidiaries.  [*See* ECF No. 4, Ex. A (showing three direct subsidiaries of the Debtor – Morgan

Drive Associates LLC, Cocoa Services LLC, and Cocoa Services West LLC – out of 23 total

"affiliates" that are, like the Debtor, subsidiaries of Transmar Group Ltd.).]  Transactions entered

into by any non-subsidiary affiliates would have had no direct effect on the Debtor's assets, and

any challenge to any of such affiliates' transactions would result in no recovery by the Trustee

for the Debtor's creditors. Even more troubling, Cocoa Origins Africa, the one entity specifically

identified in request (g), is neither a subsidiary nor an affiliate of the Debtor – it is indirectly,

partially owned by an entity with the same ownership as the Debtor.[6]  Seeking from AMERRA

documents related to this entity would stretch the bounds of Rule 2004 far beyond what courts,

including this Court, allow.

> **B.** **Even to the extent that the Trustee's Disputed Requests would reveal information relating to the Debtor's assets and affairs, the information is unnecessary in light of information already available to the Trustee, including from AMERRA's prior and promised productions.**

33.      Even if documents responsive to the Trustee's Disputed Requests would address

the Debtor's assets and illuminate potential claims by and against the Debtor, the Trustee has

abundant information at his fingertips regarding the transactions and communications AMERRA

was involved in with the Debtor and its affiliates and regarding AMERRA's broader dealings

with those entities.  Accordingly, the Court should deny the Disputed Requests.  *See In re*

*Duratech Indus., Inc.*, 241 B.R. 283, 289-90 (E.D.N.Y. 1999) (affirming denial of Rule 2004

examination because, among other reasons, the movant could get "sufficient information" from

other sources); *In re Texaco Inc.*, 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987) (reducing Rule 2004

discovery where creditor had the benefit of financial information debtor already supplied, and

---

[6] Cocoa Origins Africa was a joint venture between AMERRA and the Morristown Group – making Cocoa Origins Africa several steps removed from the Debtor, and any dealings AMERRA had with Cocoa Origins Africa, its own affiliate, even further removed from the Debtor's affairs and assets.

noting that a "requested examination should not encompass matters that will be unduly

burdensome . . . and duplicative of previously furnished information").

34.     In 2017, pursuant to the AMERRA 2004 Order, AMERRA produced documents

evidencing 48 different transactions between AMERRA and one or both of the Debtor and

Euromar, as well as additional documents evidencing claims AMERRA held against Euromar

and other affiliates.  Furthermore, AMERRA understands that the Trustee has particular interest

in one transaction – the transaction related to the Debtor's sales invoice S55281 in the amount of

$8,243,384.76, referenced in Paragraph 27(c) of the Trustee's Motion (request (c)).  Although

the Trustee already has all documentation for that transaction and all correspondence between

Debtor and AMERRA regarding that transaction, AMERRA has agreed to provide the additional

documents requested with regard to that transaction.  AMERRA also is providing documents

related to the AMERRA Claim (requests (a) and (b) and other additional requested materials).

35.     But most importantly, in 2017, the Debtor *itself* made massive productions to

ABN AMRO, productions to which the Trustee has access.  These productions totaled at least

1,115,136 documents (or 2,763,398 pages).  At least 13,275 of these documents were emails to

or from AMERRA; taking into account attachments to those emails, at least 21,364 documents

(or 56,763 pages) produced by the Debtor had been sent to or by AMERRA.[7]  Furthermore, the

Trustee has control over any other correspondence the Debtor may have had with AMERRA that

was not produced to ABN AMRO.[8]  The Trustee therefore has access to an astounding body of

documents evidencing the Debtor's relationship and communications with AMERRA and Ms.

---

[7] In addition, these documents include at least 5,942 documents with the phrase "Cocoa Origins Africa", suggesting that the Debtor's own records contain significant amounts of information about dealings with that entity.

[8] The Trustee also acknowledges that he has had access to documents produced by 10 additional entities.  [Mot. ¶ 33.]

Obler. Indeed, despite acknowledging that ABN AMRO's requests "may shed light on the

debtor's operations and financial affairs," [June 9, 2017 Tr. at 18:3-5], this Court nonetheless

found ABN AMRO's requested discovery of these same materials "unduly burdensome" [June 9,

2017 Tr. at 17:14-15] in part because "ABN AMRO had access to documents produced by the

debtor that contained Ms. Obler's emails and other communications between Amerra and the

debtor." [June 9, 2017 Tr. at 17:15-18].

36.    The Trustee currently has access to all of the aforementioned documents, and far

more. The justification that Debtor's counsel stated, many months ago, that "the debtor's

records are not in the best shape," [Mot. ¶ 36 (quoting ECF No. 90 at 17:9)], is wholly

inadequate, and the Trustee has not sought from AMERRA any documents sent or received by

the Debtor – no doubt because these documents are in perfectly fine shape. Nor has the Trustee

identified any particular gaps in the Debtor's records that he believes will be filled by collecting

documents from AMERRA, with the possible exception that certain individuals associated with

the Debtor may have used email accounts with third-party service providers to correspond with

AMERRA – and AMERRA has agreed to search for and produce any such correspondence. The

Trustee unquestionably has access to more than "sufficient information" from the Debtor's

records, the Debtors' previous professionals, and productions that have been made (or that

AMERRA has agreed to make) such that the Trustee is not entitled to the additional, unbounded

information requested in the Disputed Requests. *In re Duratech Indus.*, 241 B.R. at 289-90.

### C.    The burden on AMERRA to provide discovery to the Trustee pursuant to his Disputed Requests far outweighs any benefit to the Trustee.

37.    Requiring AMERRA to spend hundreds of thousands of dollars and devote its

internal resources and the time of its personnel to searching for internal emails or emails with

parties other than the Debtor will be both an inconvenience and a waste of time given the

16

massive volume of material already in the Trustee's hands.  The additional information and

examination currently being sought will massively burden AMERRA (which already has been

massively burdened) but will add virtually nothing to elucidate the Trustee's understanding of

the matters he claims to be investigating.  Clearly, the best source of information about

AMERRA's or any other party's dealings with the Debtor is their communications with the

Debtor, and all of that information is in the Trustee's possession.

38.     The Trustee "submits," without one scintilla of support, that "the 'undue burden'

analysis differs when the requesting party is a bankruptcy trustee as opposed to a single creditor"

and that "the analysis performed by the Court when balancing the interests looks *very different*"

depending on whether the party requesting Rule 2004 discovery of a creditor is another creditor

or a trustee.  [Mot. ¶ 40 (emphasis added).]  The Trustee argues that his statutory duty to act as a

fiduciary for all creditors and his duty to investigate the Debtor's affairs and object to proofs of

claim create a "strong interest and need for the requested discovery [that] sufficiently outweighs

the interests of AMERRA and Obler in avoiding such discovery."  [Mot. ¶¶ 40-43.]

39.     The Trustee's spin on Rule 2004 is not supported by the text of the rule itself –

the only mention of the examining party is for the purpose of stating that "any party in interest"

may request an examination, Fed. R. Bankr. P. 2004(a) – and the case law suggests that the

Trustee at best overstates the distinction between creditors and trustees for purposes of Rule

2004.  *See Bank One, Columbus, N.A. v. Hammond (In re Hammond)*, 140 B.R. 197, 202 (S.D.

Ohio 1992) (rejecting bankruptcy court's imposition of a heightened standard on *creditor*

seeking Rule 2004 examination); *Intercontinental Enters., Inc. v. Keller (In re Blinder, Robinson*

*& Co., Inc.)*, 127 B.R. 267, 274-75 (D. Colo. 1991) (rejecting trustee's argument that unlike a

creditor his right to a Rule 2004 examination is not limited by a pending adversary proceeding

17

and stating the court does not "think the creditor/trustee distinction is a valid one"); *In re Bennett Funding Gr., Inc.*, 203 B.R. 24 (Bankr. N.D.N.Y. 1996) ("[I]t is more appropriate to focus on the relationship between the requesting party and the information and parties the examination has targeted rather than simply basing access to a Fed. R. Bankr. P. 2004 examination on the type of party requesting the information." (*citing Blinder, Robinson*, 127 B.R. at 274-75)).  This Court's decision on the Agent's Second Rule 2004 Motion, decided in the context of a creditor's request for Rule 2004 discovery, provides no basis for applying a different standard to the Trustee.  That ruling sets forth the standards applicable to "the party seeking discovery," not any purported standards applicable to a "creditor, as opposed to a trustee."  *See* June 9, 2017 Tr. at 18:10-13 ("It is settled that in situations like this where the party seeking Rule 2004 discovery has access to the information it is seeking from other sources courts will deny the request for the discovery."), 18:17-18 ("As the party seeking discovery ABN AMRO has the burden of showing good cause for the examination.").

40.      Even if there were any room for providing additional leeway for a trustee, it is at the margins.  *See In re Dinubilo*, 177 B.R. 932, 942 (E.D. Cal. 1993) ("The creditor/trustee distinction may be a valid one under certain circumstances. In keeping with a trustee's duty to maximize the realization of the debtor's estate, a court may find it necessary to expand the period of investigation in which a Rule 2004 examination is applicable so that the trustee may obtain a complete inventory of the debtor's assets.").  Here, the burden analysis under Rule 2004 is far from the margins.  The Trustee has failed to show how his "need" for internal communications by AMERRA outweighs AMERRA's interests in avoiding the burden and expense in locating, reviewing, and producing such communications – or even why he believes such communications

will shed any additional light on the Debtor's affairs.  Even if one puts a thumb on the scale due

to the Trustee's role as trustee, the Trustee fails to meet his burden under Rule 2004.

> ### D.    The Trustee's Disputed Requests would require AMERRA to dig into its business records and provide confidential information.

41.    Rule 2004 discovery also should be denied because the Trustee has not met the

additional burden courts have imposed for Rule 2004 discovery that intrudes into a party's

business affairs and requires gathering confidential information.  *See In re Underwood*, 457 B.R.

at 644-45 (denying requests for policies and procedures on how mortgage creditor processed

payments and transfer of mortgage accounts, and noting that "a greater level of cause must be

demonstrated when the potential burden and intrusiveness to the creditor is high").  Rule 2004

requests for examination of third parties are considered especially burdensome because they

often risk intruding into the party's business affairs or unearthing proprietary information, and

they are "not intended to be used as a vehicle for gathering confidential information for which no

reasonable need is shown."  *In re Continental Forge Co.*, 73 B.R. 1005, 1006 (Bankr. W.D. Pa.

1987); *see also In re Strecker*, 251 B.R. 878, 882-83 (Bankr. D. Colo. 2000) (refusing to allow

creditor to examine debtor's bank records where it had not presented independent facts to

support a claim that the debtor had engaged in wrongdoing).  Here, the Trustee's Motion seeks

document production that would include broad categories of sensitive and internal documents

reflecting AMERRA's confidential, proprietary pricing, investment and trading strategies, and

deal structures merely because they are "concerning" the Debtor, Euromar, or a potentially vast

and indeterminate list of non-Debtor parties that are "affiliates" or "related entities."  [Mot.

¶ 27(d), (g).]  The Motion should be denied on this basis as well.

## III.    THE DISPUTED REQUESTS HAVE AN IMPERMISSIBLE PURPOSE

42.    By its terms, Rule 2004 permits discovery only when it regards "the acts, conduct, or property or to the liabilities and financial condition of the *debtor*, or to any matter which may affect the administration of the *debtor's* estate, or to the *debtor's* right to a discharge."  Fed. R. Bankr. P. 2004(b) (emphasis added).  The underlying purpose of Rule 2004 is to "allow the court to gain a clear picture of the condition and whereabouts of the bankrupt's estate."  *Keene Corp. v. Johns–Manville Corp.* (*In re Johns–Manville Corp.*), 42 B.R. 362, 364 (S.D.N.Y. 1984).  "A 2004 examination should only be used for the legitimate purpose of obtaining information relating to 'the acts, conduct, or property or to the liabilities and financial condition of the debtor.'"  *See In re Coffee Cupboard*, 128 B.R. at 514.

43.    Here, the Trustee's Motion is beyond the scope of Rule 2004 because, as described above, it is aimed at gathering information relevant to AMERRA, not the Debtor.  *See In re GHR Energy Corp.*, 33 B.R. 451, 455 (Bankr. D. Mass. 1983) ("While it is true, in some instances, that creditors may possess information relative to the debtor's business and conduct which the debtors do not possess, this would be the exception.").  "The examination of a witness [under Rule 2004] as to matters having no relationship to the debtor's affairs or no effect on the administration of his estate is improper."  *In re Continental Forge Co., Inc.*, 73 B.R. at 1007; *see also In re Wilcher*, 56 B.R. at 434 ("It is clear that Rule 2004 may not be used as a device to launch into a wholesale investigation of a non-debtor's private business affairs.").  Accordingly, requests for discovery of a third party's internal affairs often are considered to be beyond the permissible scope of a 2004 examination.  *See, e.g.*, *In re Johns-Manville Corp.*, 42 B.R. at 365 (creditor's internal financial information was beyond the scope of Rule 2004 because "[n]othing presented to the bankruptcy court indicates any connection between [creditor's] documents . . . and [debtor]'s financial affairs").

20

44.     The Agent's Second Rule 2004 Motion had a predicate similar to the Trustee's

Motion – that "in the months leading up to the commencement of the Chapter 11 cases Ms.

Obler played an active role in advising the debtor's management team." [June 9, 2017 Tr. at 8:1-

4.] With regard to that motion, this Court

> agree[d] with Amerra that the motion is aimed at gathering information relevant
> to Amerra's actions and connections with the debtors and its role, if any, in
> advising the debtor in its dealings with the lenders.  ABN AMRO is seeking to
> confirm not only that Amerra, through Ms. Obler, was aware of the events and
> causes of action that led to the debtor's failure, but that Amerra played an active
> role in assisting the debtors in formulating their strategy for dealing with the
> lenders.  In that way the focus of the requested discovery is on Amerra, not the
> debtors.

[June 9, 2017 Tr. at 21:14-24.]

45.     This Court concluded that although no litigation was then pending against

AMERRA, "it's clear to the Court that ABN AMRO has identified Amerra as a litigation target

and is seeking to utilize the liberal discovery available under Rule 2004 to further this ultimate

litigation.  That's not permitted."  [June 9, 2017 Tr. at 22:7-11.]

46.     The Trustee's Disputed Requests here seek the same information as ABN AMRO

sought in the Agent's Second Rule 2004 Motion.  Despite the Trustee's protestation that he "has

no self-interested litigation objectives" and that his "only objective is to locate, recover, and

administer assets for the benefit of all of the Debtor's creditors, including AMERRA, within the

context of the bankruptcy case" [Mot. ¶ 45], he provides no explanation for how his requests

differ from those previously denied.  The point remains that the discovery requests focus on

*AMERRA's* affairs and not *the Debtor's*, and they appear directed at substantiating alleged

wrongdoing by AMERRA.[9]  If the Trustee determines to commence litigation (including a claim

---

[9] It cannot go without mention that the Trustee states that he had "held off on requesting an examination of
AMERRA and Obler until now because AMERRA was a potential bidder for the Debtor's inventory assets.  Now
that the Trustee has completed the asset sale process with respect to its cocoa inventory, he now wishes to examine

objection) against AMERRA – and the Trustee should be able to determine whether he can do so

based on the voluminous discovery already had or promised in this case – he will have all the

discovery rights made available through the Federal Rules of Civil Procedure, and so will

AMERRA.  In the meantime, however, Rule 2004 is not a vehicle to permit excessive, one-way,

unlimited pre-litigation discovery against a third party, and the Trustee should not be permitted

to use it as he requests.  *See In re SunEdison*, 562 B.R. at 250 (explaining that even though Rule

2004 was not amended when Fed. R. Civ. P. 26 was amended, "the spirit of proportionality"

embodied in the latter rule is applicable to Rule 2004); *cf.* Fed. R. Civ. P. 26(b)(1) (imposing

requirements of reciprocity, proportionality, and limited scope on discovery).  The Motion

should be denied.

## IV.    THE TRUSTEE SHOULD NOT BE PERMITTED TO TAKE ANY ORAL EXAMINATION OF MS. OBLER

47.    The Trustee also has demanded the oral examination of Ms. Obler.  In the spirit of

compromise, and in an attempt to resolve all matters consensually and avoid motion practice,

AMERRA offered to accommodate the Trustee's request and make Ms. Obler available for oral

examination subject to one of two conditions designed to avoid undue burden, including

expense.  Those two conditions, offered in the alternative, were (a) that the oral examination be

limited to the subjects dealt with by the documents that are to be, or have been, produced by

AMERRA, or (b) that if the Trustee insists on now taking a broader oral examination of Ms.

Obler, he will take no further oral examination or deposition of her in this case, including in any

adversary proceeding he may commence.[10]  The Trustee refused to accept AMERRA's proposal,

---

AMERRA and Obler as set forth herein."  [Mot. ¶ 34.]  This further suggests the Trustee views his relationship with AMERRA as adversarial, rather than as cooperative.

[10] The Trustee lists only one of these proposed accommodations, and provides inaccurate terms for that proposal. *See* Mot. ¶ 36(c) (AMERRA and Ms. Obler "have asked the Trustee to agree in advance that the questions asked will be limited to the documents produced in response to this Motion.").

and indicated that he intends any oral examination to be free-ranging, with any and all subjects

being fair game, and that he is unwilling to limit the number of oral examinations or depositions.

Given those facts, AMERRA objects to any examination at all.

48.      The Trustee should not be permitted to examine Ms. Obler pursuant to Rule 2004.

Neither Ms. Obler nor AMERRA's counsel is up to speed on the many thousands of documents

the Trustee has access to and on which he might question her.  The relationship between

AMERRA and Transmar and Euromar was long and extensive, and AMERRA has no knowledge

of what documents the Trustee has or may rely on.  As a result, getting Ms. Obler and

AMERRA's counsel fully up to speed will be extremely expensive and time-consuming.  In such

situations, denial of the Trustee's request is warranted.  *See, e.g.*, *In re SunEdison, Inc.*, 562 B.R.

at 250 (explaining that "[t]he proliferation of information and the costs associated with

retrieving, reviewing and producing discovery in civil litigation have led to the 2015

amendments to the Federal Rules of Civil Procedure which emphasize the concept of

proportionality. . . .  Rule 2004 has not been similarly amended but the spirit of proportionality is

consistent with the historic concerns regarding the burden on the producing party and is relevant

to the determination of cause.").  If, however, this Court determines that some oral examination

is proper, it should impose restrictions at least as protective as those previously offered in order

to avoid undue burden on AMERRA and Ms. Obler and to balance AMERRA's interests with

the Trustee's interests and the information expected to be obtained.  *See, e.g.*, *In re Zaruba*, No.

07-00100, 2007 WL 4219406, at *1-*2 (Bankr. D. Alaska Nov. 29, 2007) (limiting both duration

and scope of oral examination); *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 516-17 (Bankr.

E.D.N.Y. 1991) (limiting scope of oral examination to documents directed to be produced); *see

also In re SunEdison, Inc.*, 562 B.R. at 252-53 (denying Rule 2004 request, which included

23

demand for oral testimony, except that targets were directed to provide information sufficient to identify a flow of funds).

## CONCLUSION

For the reasons set forth above, the Motion should be denied except to the extent otherwise agreed to by AMERRA.

Dated: New York, New York
      June 27, 2018

SIDLEY AUSTIN LLP

By: _/s/ Lee S. Attanasio_
        John G. Hutchinson
        Lee S. Attanasio
        Benjamin F. Burry
        787 Seventh Avenue
        New York, New York  10019
        Telephone:  (212) 839-5300
        Facsimile:  (212) 839-5599

_Attorneys for AMERRA Capital Management LLC_