**Hearing Date: July 10, 2018 at 11:00 a.m.**

WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for Alan Nisselson Chapter 7 Trustee*
156 West 56th Street
New York, New York 10019
Tel. (212) 237-1000 / Fax. (212) 262-1215
Attorneys appearing:  James Sullivan (jsullivan@windelsmarx.com)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>TRANSMAR COMMODITY GROUP LTD.,<br><br>Debtor. | Chapter 7<br><br>Case No. 16-13625-jlg |

**TRUSTEE'S REPLY IN SUPPORT OF HIS MOTION FOR AN ORDER PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING THE TRUSTEE TO ISSUE SUBPOENAS FOR THE EXAMINATION OF, AND THE PRODUCTION OF DOCUMENTS FROM, AMERRA CAPITAL MANAGEMENT LLC AND NANCY OBLER**

Alan Nisselson (the "**Trustee**"), trustee for the chapter 7 estate (the "**Estate**") of Transmar Commodity Group Ltd. (the "**Debtor**"), by and through his attorneys, Windels Marx Lane & Mittendorf, LLP ("**Windels Marx**"), hereby submits this Reply in support of his Motion for an Order Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure Authorizing the Trustee to Issue Subpoenas for the Examination of, and the Production of Documents from, AMERRA Capital Management LLC and Nancy Obler (Docket No. 542) (the "**Motion**").[1]

A.  **THE DISCOVERY SOUGHT BY THE TRUSTEE IS WELL WITHIN THE SCOPE OF RULE 2004 AND IS NOT UNDULY BURDENSOME**

Amerra asserts a number of purported reasons why it believes responding to two of the requests set forth in the Motion, namely requests (d) and (g) (the "**Disputed Requests**"),

---
[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

{11570207:3}

would impose an undue burden on Amerra.  Once a trustee has established good cause for a request under Bankruptcy Rule 2004, the party opposing the request bears the burden of proving that responding to the request would be oppressive or unduly burdensome.  *See, e.g., In re Hammonds*, 131 B.R. 78 (Bankr. S.D. Ohio 1991), *rev'd on other grounds*, 140 B.R. 197, 201 (S.D. Ohio 1992); *In re Wilcher*, 56 B.R. 428 (Bankr. N.D. Ill. 1985) (citing *Freeman v. Seligson*, 405 F.2d 1326, 1337 (D.C. Cir. 1968)); *In re SunEdison, Inc.*, 562 B.R. 243, 250 (Bankr. S.D.N.Y. 2017); *In re Madison Williams & Co., LLC,* Case No. 11-15896, 2014 WL 56070, at *5 (Bankr. S.D.N.Y. Jan. 7, 2014) (Glenn, J.).  As set forth below, Amerra has not demonstrated that responding to the Disputed Requests would be oppressive or unduly burdensome.

### 1. The Disputed Requests are Not a Repackaging of the Agent's Requests

Amerra first asserts that the Disputed Requests should be denied because they "are simply a repackaging of the requests made in the Agent's Second Rule 2004 Motion." (Amerra's Obj. ¶ 27.)  That is not the case.  A side by side comparison of the Disputed Requests with the prior requests of the Agent will show that the Trustee's requests are much narrower.  For example, the Agent's requests had no temporal limitation whereas the Trustee's requests are limited to a two year period.  In addition, the Agent's requests covered all documents whereas the Trustee's requests are limited to electronic communications.  Further, as discussed in detail in the Motion, the Trustee's reasons for requesting the Disputed Requests (e.g., (i) to evaluate the significant claim filed by Amerra and any defenses thereto and (ii) to discover causes of action the Trustee may have against Amerra or third parties who interacted with the Debtor and Amerra) are materially different from the Agent's reason, which was primarily to assist the Agent in connection with a litigation it intended to bring against Amerra – i.e., not on behalf of

the Estate but on its own account. (Mot. ¶ 45.) Moreover, the interests at stake in connection with the Trustee's motion (where the Trustee is acting as a fiduciary for all the Debtor's creditors with a statutory obligation to "investigate the financial affairs of the debtor," "collect and reduce to money the property of the estate for which the trustee serves . . ." and "examine proofs of claim and object to the allowance of any claim that is improper") are much greater than the interests that were at stake in connection with the Agent's motion (where the Agent was acting on its own behalf, and not as a fiduciary of the Estate, and had no statutory duty to investigate). (Mot. ¶¶ 40-41.) Accordingly, the Trustee believes that the grounds relied upon by the Bankruptcy Court to deny the Agent's Second Rule 2004 Motion are not applicable to his motion.

### 2. The Trustee Has a Need for the Disputed Requests

Amerra admits that "in the final months before bankruptcy, Amerra communicated with the Debtor and its creditors frequently in the hope of securing a strategy that would turn Transmar and Euromar around." (*Id.* ¶ 31.) Amerra also acknowledges that the Disputed Requests, which in part seek to learn the substance of such communications, "may shed light on the [D]ebtor's operations and financial affairs," but asserts that "the Trustee has not established why the requested documents would shed meaningful light on these questions that cannot be gleaned from the vast information already available to the Trustee." (Obj. ¶ 28.) Thus, Amerra appears to concede that the Disputed Requests would likely be helpful to the Trustee but believes that the Trustee should be able to obtain sufficient information from other sources.[2] As set forth below, the Trustee has a sufficient need for the communications covered by the Disputed Requests.

---

[2] Even if the discovery were available from other sources, a trustee is entitled to subpoena under Rule 2004 documents from multiple sources in order to assure that he is receiving accurate and complete copies. *In re Shelton*

{11570207:3}    3

*a. Request (d)*

With respect to request (d), which requests Amerra's internal communications related to the Debtor or Euromar, Amerra argues that "the Trustee has or will have, based on what Amerra agreed to produce, any documents reflecting discussions between Ms. Obler and the Debtor or Euromar." (*Id.* ¶ 30.) Amerra also argues that "[t]o demonstrate Ms. Obler's guidance to or strategizing with the Debtor or Euromar, the Trustee does not need Amerra's internal documents; by definition, such documents would not reveal any advice or guidance provided to the Debtor or Euromar."

Amerra's arguments make the incorrect assumption that discussions between Ms. Obler, who was the key person at Amerra dealing with Transmar and Euromar matters for many years, and the Debtor or Euromar would only be evidenced in communications between Ms. Obler and the Debtor or Euromar and not in internal communications Ms. Obler may have had with her colleagues at Amerra. Amerra lays no foundation for that assumption. The Trustee posits that such conversations are just as likely to be evidenced in internal communications with Ms. Obler's colleagues as in external communications with the Debtor or Euromar.

Such internal communications may also help shed light on the legitimacy of Amerra's claim and whether such claim is subject to any equitable defenses or equitable subordination. Finally, the internal communications may help the Trustee determine which transactions involving the Debtor, Euromar, and their numerous affiliates may have been legitimate and which transactions may be avoidable by the Trustee.

"In conducting [the] balancing test [required in evaluating a request under Bankruptcy Rule 2004], courts have indicated that the trustee's latitude should be greater where

---

*Federal Group, LLC*, Case No. 15-00623, 2017 WL 3190558, at *3 (Bankr. D.D.C. July 26, 2017) (citing *Liberty Fin. Servs. v. United States*, 778 F.2d 1390, 1393 (9th Cir. 1985)).

there has been a showing that the debtor has engaged in questionable conduct." *In re Vantage Petroleum Corp.*, 34 B.R. 650, 652 (Bankr. E.D.N.Y. 1983) (citing *In re Foerst,* 93 F. 190, 191 (S.D.N.Y. 1899) ("Where questionable proceedings have been disclosed, greater latitude in the prosecution of inquiries should be allowed. . . ."); *Marx v. Chase Nat. Bank,* 117 F.2d 800, 802 (2d Cir. 1941) (where the affairs of the debtor corporation, its sole stockholder, and its subsidiaries were inextricably commingled, the trustee is entitled to examine anyone who had dealings with the stockholder or any of his companies, because it would be "impossible otherwise to unravel such a tangled corporate skein").[3]

There is no doubt that the Debtor has engaged in questionable conduct. As described in the Motion, three of the Debtor's officers have already pled guilty to engaging in criminal activity involving circular transactions involving the Debtor, the Debtor's affiliates, and a number of third-party intermediaries. (Mot. ¶¶ 21-24.) The Trustee believes that these circular transactions may have been used to strip away valuable assets from the Debtor and its creditors for the benefit of Euromar, Cocoa Origins Africa, and the Debtor's African affiliates. In conducting his investigation, the Trustee has uncovered unusual transactions that the Debtor had with Cocoa Origins Africa and the other African affiliates. With respect to many such transactions it appears that funds may have been transferred from the Debtor to such entities for no or inadequate consideration. It appears that Amerra was involved with respect to many of these transactions. For example, it appears that Ms. Obler was a director of Cocoa Origins Africa during the relevant time frame, as was Peter B. Johnson, one of the persons who pled guilty to engaging in criminal activity involving the circular transactions. It also appears that Ms. Obler and/or her colleagues at Amerra had communications regarding some of these

---

[3] This line of cases also adds additional support for the Trustee's position that the interests of the Trustee in pursuing the requested discovery are materially greater than the interests of the Agent in connection with the Agent's Second Rule 2004 Motion. (*See* Mot. ¶¶ 40-41, 45.) Amerra's arguments to the contrary are unpersuasive. (Obj. ¶¶ 38-40.)

transfers. Thus, Amerra's internal communications may help shed light on the nature of such transactions and disclose potential targets for further investigation.

    b.    *Request (g)*

With respect to request (g), which requests external communications regarding Cocoa Origins Africa or any African affiliates of the Debtor or Euromar, Amerra argues that request (g) "relates only to Amerra's dealings with non-Debtor parties." (Obj. ¶ 32.) Amerra also argues that "[t]he Debtor has no interest whatsoever in the vast majority of the entities implicated by this request, with substantially all of the Debtor's affiliates being distant cousins of the Debtor rather than subsidiaries." (*Id.*) Amerra further argues that "[t]ransactions entered into by any non-subsidiary affiliates would have no direct effect on the Debtor's assets, and any challenge to any of such affiliates transactions would result in no recovery by the Trustee for the Debtor's creditors." (*Id.*) Finally, Amerra claims that with respect to Cocoa Origins Africa, "[s]eeking from Amerra documents related to this entity would stretch the bounds of Rule 2004 far beyond what courts . . . allow." (*Id.*)

As set forth above with respect to request (d), the Trustee should be given greater latitude to investigate the Debtor's financial affairs given that three of the Debtor's officers have admitted to engaging in criminal activity. *See In re Vantage Petroleum Corp.*, 34 B.R. at 652. As set forth above, such criminal activity involved circular transactions involving the Debtor, the Debtor's affiliates, and a number of third-party intermediaries. The Trustee believes that these circular transactions may have been used to strip away valuable assets from the Debtor and its creditors for the benefit of Cocoa Origins Africa and the Debtor's African affiliates. Given that Amerra admits that it was part owner of Cocoa Origins Africa along with Morristown Group, which also owned the Debtor, and that Amerra appeared to be among the largest creditors of

Cocoa Origins Africa, it is certainly fair for the Trustee to request Amerra's external communications relating to Cocoa Origins Africa. The Trustee believes that similar economic or financial agreements involving the Debtors other African affiliates may also have been in place.

As set forth above, in conducting his investigation, the Trustee has uncovered unusual transactions that the Debtor had with Cocoa Origins Africa and the other African affiliates. With respect to many such transactions it appears that funds may have been transferred from the Debtor to such entities for no or inadequate consideration. It appears that Amerra was involved with respect to many of these transactions. For example, it appears that Ms. Obler and Peter B. Johnson, one of the persons who pled guilty to engaging in criminal activity involving the circular transactions, were directors of Cocoa Origins Africa. It also appears that Ms. Obler and/or her colleagues at Amerra may have helped facilitate some of these transfers. Accordingly, it is certainly fair for the Trustee to request that Amerra be examined regarding Cocoa Origins Africa and the Debtor's African affiliates.

### 3. The Burden on Amerra to Provide Responses to the Disputed Requests Does Not Outweigh the Benefit to the Trustee

Amerra asserts that requiring it "to spend hundreds of thousands of dollars and devote its internal resources and the time of its personnel to searching for internal emails or emails with parties other than the Debtor will be both an inconvenience and a waste of time given the massive volumes of material already in the Trustee's hands." Amerra also argues that the additional information and examination "will add virtually nothing to elucidate the Trustee's understanding of the matters he claims to be investigating." Amerra offers no facts to support these incredulous assertions.

First, it is hard to fathom that running a few additional electronic searches using search terms provided to Amerra by the Trustee would require Amerra to incur hundreds of

thousands of dollars in costs. The Trustee surmises that Amerra will likely spend more money contesting the Disputed Requests than they could hope to save should their objection to the Disputed Requests be sustained.

Second, Amerra offers no basis for suggesting that the additional information and the examination of Amerra will add nothing to the Trustee's understanding of the matters he is investigating. Respectfully, the Trustee would not be wasting his time pursuing such discovery unless he hoped that it would be fruitful and benefit the Estate.

Further, as set forth above, in conducting the balancing test required under Rule 2004, the Trustee should be given greater latitude to investigate the Debtor's financial affairs given that three of the Debtor's officers have admitted to engaging in criminal activity. *See In re Vantage Petroleum Corp.*, 34 B.R. at 652.

For each of these reasons, Amerra has failed to demonstrate that the burden on Amerra in responding to the Disputed Requests outweighs the benefit to the Trustee in obtaining such responses.

### 4. The Trustee is Permitted to Use Rule 2004 to Prepare for the Initiation of Litigation.

The Trustee argues that the Disputed Requests "appear directed at substantiating alleged wrongdoing by Amerra." (Obj. ¶ 46.) Amerra argues that "the Trustee should be able to determine whether he can [commence litigation (including a claim objection) against Amerra] based on the voluminous discovery already had or promised in this case. (*Id.*) Finally, Amerra argues that the Trustee should not be permitted to use Rule 2004 to obtain pre-litigation discovery against a third party such as Amerra, but instead should be obligated to request discovery under the Federal Rules of Civil Procedure after initiating an action. (*Id.*)

First, the Trustee has not yet decided whether to commence litigation (including a claim objection) against Amerra. However, one of the reasons the Trustee has filed the Motion is to determine whether the Trustee has any legal basis for bringing a claim against Amerra or whether there are grounds for objecting to Amerra's claim. Rule 11 of the Federal Rules of Civil Procedure does not permit a trustee to commence litigation against a party without conducting a reasonable investigation first. In addition, failure to conduct a proper investigation before commencing such litigation could result in any such litigation being dismissed based on the pleadings.

"[U]se of Rule 2004 to prepare for the initiation of litigation is allowed." 9 Collier on Bankruptcy P 2004.01[7] (2018). *See also, e.g., In re Drexel Burnham Lambert Group*, 123 B.R. 702, 709-10 (Bankr. S.D.N.Y. 1991) (holding that it is no defense to the production of information that an applicant for a Rule 2004 examination seeks information to prosecute an action against the witness) (citing cases). Accordingly, even if the sole purpose of the Motion were to obtain information to prosecute an action against Amerra, such purpose would be permissible under Rule 2004.

For each of the foregoing reasons, Amerra and Obler should be obligated to respond to the Disputed Requests.

### B. THE TRUSTEE'S ABILITY TO ORALLY EXAMINE MS. OBLER SHOULD NOT BE UNREASONABLY RESTRICTED.

Amerra has requested that any oral examination of Ms. Obler be restricted. In particular, Amerra requests that the oral examination be limited to the subjects dealt with by the documents that are to be, or have been, produced by Amerra or, in the alternative, if the Trustee wishes to take a broader oral examination pursuant to Rule 2004, that the Trustee agrees in advance to waive the right to take a further oral examination or deposition of her in the case,

including in any adversary proceeding he may commence. (Obj. ¶ 47.) Amerra has cited no legal authority for either of these restrictions and the Trustee is not aware of any other case in which a trustee's ability to orally examine a witness was limited in this way.

The only cases cited by Amerra are inapplicable and easily distinguishable. For example, *In re Zaruba*, 2007 WL 4219406 (Bankr. D. Alaska 2007), is an unpublished opinion with a very different set of facts. In *Zaruba*, the court limited a creditor's oral examination of an individual debtor to 4 hours and the creditor's examination of the debtor's accountant to 3 hours. *Id.* at *1. The requests involved a $400,000 case with a lengthy and contentious history. *Id.* Further, the applicant had already deposed the debtor at length earlier in the case and the court determined that a lengthier examination of the witnesses was not needed at the late stage of the case. *Id.* The case did not discuss why any particular area of inquiry was deemed inappropriate for use in a Rule 2004 examination.

*In re Coffee Cupboard, Inc.*, 128 B.R. 509 (Bankr. E.D.N.Y. 1991), involved a request by two creditors to examine the principal of the debtor in a post-confirmation chapter 11 case that was reopened and converted to chapter 7 solely to give the trustee an opportunity to investigate two narrow issues. Further, even though the decision limited the witness's testimony to the documents to be produced, there was no discussion in the decision whether the applicants sought to examine the witness about matters other than the documents that were requested.

Finally, *In re SunEdison, Inc.*, 562 B.R. 243 (Bankr. S.D.N.Y. 2017), discussed the application by analogy of the 2015 proportionality amendments to Rule 26 of the Federal Rules of Civil Procedure.[4] Although there has been a lot of discussion regarding the 2015 amendments, the changes were exceedingly modest as the Rule already included a reference to proportionality factors. In fact, the only substantive change to the Rule was the addition of one

---

[4] This appears to be the only reported case that applied the concept of proportionality to Rule 2004.

additional factor, i.e., the parties' "relative access to information."[5] As one judge in this district described them, "the 2015 Amendments constitute a reemphasis on the importance of proportionality in discovery but not a substantive change in the law." *Vaigasi v. Solow Mgmt. Corp.*, 2016 WL 616386, at *13 (S.D.N.Y. Feb. 16, 2016).

Even if the concept of proportionality were applicable to Rule 2004, all of the proportionality factors contained in Rule 26 would support the granting of the relief requested by the Trustee without the imposition of any unreasonable restrictions. The first factor is the importance of the issues at stake in the action. As set forth in the Motion, an examination of Ms. Obler is critical to the Trustee's analysis -- not only of the claims filed by Amerra and the potential claims the Estate may have against Amerra, but also with respect to the Trustee's understanding of potential claims he may have against other parties. The second factor is the amount in controversy. Amerra has one of the largest claims in the case (Amerra filed a secured claim of in excess of $8 million) and the Trustee is investigating at least one potential seven figure avoidance claim against Amerra and other even larger claims against it and other parties. The third factor is the parties' relative access to relevant information. As set forth in the Motion, the Trustee has no other easy way to obtain the information it seeks. The fourth factor is the parties' resources. Amerra was one of the Debtor's primary sources of liquidity prior to its bankruptcy. As such, Amerra appears to have the necessary resources to provide the requested discovery. The fifth factor is the importance of the discovery in resolving the issues. As set forth in the Motion and herein, the Trustee does not believe it can obtain the requested discovery

---

[5] Fed. R. Civ. P. 26(b)(1) now says,
> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

{11570207:3}                                11

from any other source and such information is needed to assist the Trustee in carrying out his statutory duties. The final factor is whether the burden or expense of the proposed discovery outweighs its likely benefit. As discussed above, Amerra has not adequately explained why the burden or expense of providing the additional incremental discovery to which it objects would add a significant expense to the overall cost of discovery. In any case, Amerra has failed to show that any such additional expense would outweigh the likely benefit to the Trustee. Accordingly, each of the proportionality factors favors the granting of the requested relief.

## CONCLUSION

The Trustee respectfully requests that the Court grant the relief requested in the Motion and such other and further relief as is just.

Dated: New York, New York
July 6, 2018

Respectfully submitted,

WINDELS MARX LANE & MITTENDORF
*Attorneys for Alan Nisselson, Chapter 7 Trustee*

By: */s/ James Sullivan*
James Sullivan (jsullivan@windelsmarx.com)
156 West 56th Street
New York, New York 10019
Tel. (212) 237-1000 / Fax. (212) 262-1215