**SIDLEY AUSTIN LLP**
787 Seventh Ave
New York, New York 10019
(212) 839-5300 (tel.)
(212) 839-5599 (fax)
Lee S. Attanasio

*Attorneys for AMERRA Capital Management LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------x
In re:                                                                                           :
                                                                                                      :     Chapter 7
TRANSMAR COMMODITY GROUP LTD.,                              :
                                                                                                      :     Case No. 16-13625 (JLG)
                                                              Debtor.                   :
-----------------------------------------------------------------------x

**MOTION OF AMERRA CAPITAL MANAGEMENT LLC TO ENFORCE THE ORDER AND FINDINGS OF FACT AND CONCLUSIONS OF LAW AUTHORIZING AND APPROVING DEBTOR'S MOTION FOR ENTRY OF AN ORDER APPROVING THE PRIVATE SALE AND ASSIGNMENT OF DEBTOR'S POWDER BOOK FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS PURSUANT TO 11 U.S.C. §§ 105, 363 AND 365 AND FED. R. <u>BANK. P. 2002, 6004 AND 6006 AND GRANTING RELATED RELIEF</u>**

AMERRA Capital Management LLC ("<u>AMERRA</u>"), by and through its undersigned counsel, respectfully submits this motion (the "<u>Motion</u>") to enforce the Sale Order (as defined below) and to declare that Clasen Quality Chocolate, Inc. ("<u>Clasen</u>") is bound by the terms of the Sale Order to perform under the Assigned Contracts (as defined below) with AMERRA. In support of the Motion, AMERRA respectfully represents as follows:

**BACKGROUND**

1.    On December 31, 2016 (the "<u>Petition Date</u>"), Transmar Commodity Group Ltd. (the "<u>Debtor</u>") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court. Until July 2017, the Debtor had been operating its business and managing its assets

1

as a debtor-in-possession under 11 U.S.C. §§ 1107(a) and 1108.  On July 26, 2017, this Court converted the chapter 11 case to a case under chapter 7 (Dkt. No. 402).  Alan Nisselson was appointed as Trustee for the case (Dkt. No. 403).

2. As of the Petition Date, the Debtor was a party to many forward contracts (each, a "Forward Contract" and together, the "Forward Book") both to purchase and to supply cocoa beans and cocoa products ("Product") to various counterparties (each, a "Counterparty," and together, the "Counterparties").

3. Certain of the Forward Contracts relate to the Debtor's agreements to sell cocoa powder to third party Counterparties (each, a "Powder Contract," and together, the "Powder Book").

4. In connection with a marketing process conducted by the Debtor approximately a year ago, the Debtor received bids for both the Forward Book and the Powder Book, including a bid from AMERRA for the Powder Book.

5. The Debtor, in its business judgment, determined that an emergent sale of the Powder Book to AMERRA was the best opportunity to preserve the value of the Powder Book and maximize value for the Debtor's estate.  Because AMERRA was in possession of the specific cocoa powder necessary to fulfill certain of the Powder Contracts, the Debtor determined, in its business judgment, not to proceed with an auction for the Powder Book. Instead, the Debtor determined that AMERRA's proposal for the Powder Book by way of private sale would likely be the best and highest offer that the Debtor would receive for the Powder Book.

6. On May 17, 2017, the Debtor filed its "*Motion for Entry of an Order Approving the Private Sale and Assignment of the Debtor's Powder Book Free and Clear Of All Liens,*

2

*Claims, Encumbrances and Other Interests Pursuant to 11 U.S.C. §§ 105, 363 and 365 and Fed. R. Bank. P. 2002, 6004 and 6006 and Granting Related Relief*" (Dkt. No. 275) (the "Sale Motion").  The terms of AMERRA's offer were reflected in an Asset Purchase Agreement ("APA") attached to the Sale Motion.

7. The Debtor stated numerous times in its Sale Motion that it would be unable to perform on its obligations to acquire and supply Product during the pendency of the sale.  *See, e.g.,* Sale Motion ¶ 21 at 8, ¶ 45(a) at 20–21, and ¶ 67 at 27.

8. The Debtor also included the "*Declaration of Robert J. Frezza in Support of Debtor's Motion for Entry of an Order Approving the Private Sale and Assignment of the Debtor's Powder Book Free and Clear of All Liens, Claims, Encumbrances and Other Interests Pursuant to 11 U.S.C. §§ 105, 363 and 365 and Fed. R. Bank. P. 2002, 6004 and 6006 and Granting Related Relief*" in its Sale Motion (the "Frezza Declaration").  Sale Motion Ex. C at 88. In the Frezza Declaration, the Debtor stated that numerous Counterparties, including Clasen, had sent post-petition notices to the Debtor attempting to cancel their Powder Contracts, and that the Debtor advised these Counterparties that such purported terminations were improper and ineffective.[1]  Sale Motion Ex. C, ¶ 12 at 92.

9. All parties, including Clasen, received proper, timely, and sufficient notice of the Sale Motion as set forth in the Affidavit of Service (Dkt. No. 307).  *See also* Sale Order ¶ C at 2. Objections to the Sale Motion were due on May 26, 2017 at 4:00 pm.  The Court held a hearing on the Sale Motion on May 31, 2017 (the "Sale Hearing").

---

[1] To the extent that it is later determined that the Assigned Contracts were in fact properly terminated prior to entry of the Sale Order, AMERRA reserves all rights against the Debtor and its estate.

3

10.  Only one Counterparty, the Benjamin P. Forbes Company ("Forbes"), objected to the Sale Motion.[2] No other Counterparty, including Clasen, which was party to several Powder Contracts (the "Assigned Contracts") with the Debtor, objected or otherwise appeared in the proceeding.

11.  This Court entered the "*Order Approving the Private Sale and Assignment of the Debtor's Powder Book Free and Clear of All Liens, Claims, Encumbrances, and Other Interests Pursuant to 11 U.S.C. §§ 105, 363, and 365 and Fed. R. Bank. P. 6004 and Granting Related Relief*" (Dkt. No. 328) (the "Sale Order").  The Court found that all parties had had an opportunity to object to the Sale Motion, and to the extent that any objections were not withdrawn, waived, or settled, the Court overruled those objections on the merits.  Sale Order ¶ 3 at 11.

12.  In the Sale Order, this Court found that the consummation of the transaction was legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), 365(b), and 365(f), and that all applicable requirements of such sections were complied with in respect of the sale.  Sale Order ¶ Y at 7.

13.  The Court's Sale Order approving the sale of the Powder Book to AMERRA is attached hereto as **Exhibit A**.

14.  Since entry of the Sale Order, AMERRA has been in contact with Clasen. Notwithstanding AMERRA's repeated reference to the Sale Order and Clasen's obligations

---

[2] The Debtor and Forbes engaged in negotiations concerning the Debtor's potential assumption and assignment of Forbes's contracts and resolved their dispute before the Sale Hearing in a manner that removed Forbes's contracts from the Motion.

4

thereunder, Clasen has refused to take delivery from AMERRA and otherwise cooperate with AMERRA regarding the Assigned Contracts.[3]

## JURISDICTION

15. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

16. By this Motion, AMERRA requests that the Court enforce its Sale Order by declaring that the Assigned Contracts are valid and enforceable by AMERRA, along with such other relief as may be appropriate.

## BASIS FOR RELIEF REQUESTED

17. It is well settled that bankruptcy courts have the jurisdiction to interpret and enforce their own orders. *Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 230 (2d Cir. 2002); *In re Old Carco LLC*, 529 B.R. 42, 53 (Bankr. S.D.N.Y. 2015). This authority is especially clear when the court explicitly retains jurisdiction to do so. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009). This Court specifically reserved this jurisdiction in its Sale Order:

> "The Court shall retain exclusive jurisdiction: (a) to enforce and implement the terms and provisions of the APA and each of the agreements, documents and instruments executed therewith; (b) to resolve any disputes, controversies or claims arising out of or relating to the APA; and (c) to interpret, implement and enforce the provisions of this Order."

Sale Order ¶ 26 at 15.

---

[3] After entry of the Sale Order, AMERRA made several attempts to work with Clasen regarding the Assigned Contracts, but was unsuccessful. AMERRA reached out to Clasen again in recent weeks, but has not received any response.

5

18.     Furthermore, bankruptcy courts have previously enforced sale orders that approved the assignment of the debtor's contracts. *See, e.g., In re TLFO, LLC*, 572 B.R. 391 (Bankr. S.D. Fl. 2016) (enforcing a sale order approving, *inter alia*, the assumption and assignment of certain contracts to the purchaser of the debtor's assets and holding that the defendants' lack of objection to the sale of the assets, despite having adequate notice, constituted consent to the sale). Bankruptcy courts in this district have also enforced sale orders approving the sales of the debtor's assets. *See In re Ritchie Risk-Linked Strategies Trading (Ireland), Ltd.*, 471 B.R. 331 (Bankr. S.D.N.Y. 2012) (enforcing sale order approving the sale of substantially all of the debtor's assets after finding that the debtor provided sufficient notice of the sale). *See also In re Motors Liquidation Co.*, 447 B.R. 142 (Bankr. S.D.N.Y. 2011) (enforcing sale order approving, *inter alia*, the sale of the debtor's assets and assumption of certain of the debtor's product liabilities).

**A. The Sale Order is Valid and Enforceable Against Clasen**

19.     This Court's Sale Order is valid and binds Clasen to the Assigned Contracts. The Debtor properly brought the Sale Motion under section 365 of the Bankruptcy Code, and all parties, including Clasen, had proper and sufficient notice of the Sale Motion. In its Sale Order, this Court found that "(i) proper, timely, and sufficient notice of the Sale Motion, and the transactions contemplated therein (including the assumption and assignment of the Assigned Contracts) and the Sale Hearing has been provided…; (ii) such notice was good and sufficient under the particular circumstances; and (iii) no other or further notice… is required." Sale Order ¶ C at 2. A copy of the Affidavit of Service is attached hereto as **Exhibit B**.

20.     In addition, this Court found that all parties in interest had had the opportunity to object to the Sale Motion, and that the parties who did not object were "deemed to have

consented to the relief set forth therein." Sale Order ¶ 3 at 11. Clasen did not object or otherwise appear in the proceeding to raise the issue of termination of the Assigned Contracts or any other issue. Sale Hearing Tr., 37:24–25. A copy of the transcript from the Sale Hearing is attached hereto as **Exhibit C**.

21. This Court further held that the Assigned Contracts are valid and enforceable under section 365. As stated in the Sale Order, "[t]he Debtor is authorized pursuant to 11 U.S.C. § 365(a) to assume and assign the Assigned Contracts… including but not limited to the Assigned Contracts with Clasen Quality Chocolates, Inc., Tootsie Roll Industries, Tate & Lyle, and R.M. Palmer Company." Sale Order ¶ 9 at 12. The Court further held that "[t]he assignment by the Debtor of the Assigned Contracts to AMERRA pursuant to 11 U.S.C. § 365(f) is binding on the Counterparties to those contracts." Sale Order ¶ 11 at 12.

**B. The Assigned Contracts With Clasen Were Not Terminated**

22. On February 14, 2017, Clasen sent a letter to the Debtor attempting to cancel all outstanding purchase balances. Sale Motion Ex. C at 95. Notwithstanding this letter, the Assigned Contracts were not terminated,[4] and were thus assignable, as the Court found in entering the Sale Order. When the Debtor filed the Sale Motion, it specifically disclosed in the Frezza Declaration that five Counterparties, including Clasen, had sent post-petition notices to the Debtor attempting to cancel their Powder Contracts. Sale Motion Ex. C, ¶ 12 at 92. The Debtor stated that it "has advised these Counterparties that such purported terminations are improper and ineffective," and "seeks to assign these Powder Contracts in accordance with this

---

[4] Among other things, any unilateral attempt by Clasen to terminate the Assigned Contracts post-petition would have been in violation of the automatic stay and void *ab initio*. *See In re Signature Apparel Grp. LLC*, 577 B.R. 54, 88 (Bankr. S.D.N.Y. 2017) ("Actions taken in violation of the automatic stay are void"); *In re Enron Corp.*, 300 B.R. 201, 212 (Bankr. S.D.N.Y. 2003) ("The Second Circuit has held that actions taken in violation of the automatic stay are void and without effect."). *See also In re Elder-Beerman Stores Corp.*, 195 B.R. 1019, 1025 (Bankr. S.D. Ohio 1996) (holding that the attempted post-petition termination of the contract with the debtor was void *ab initio* and the contract was presently intact).

7

Sale Motion." Sale Motion Ex. C, ¶ 12 at 92. The Debtor included the letter from Clasen in Exhibit 1 to the Frezza Declaration. Sale Motion Ex. C at 97.

23. If Clasen believed it had properly terminated the Assigned Contracts by way of its letter in February 2017, it should have objected to the Sale Motion and appeared at the Sale Hearing to raise this issue. The Sale Motion clearly identifies Clasen's contracts with the Debtor as part of the Powder Book the Debtor was seeking to assign, and states that Clasen's attempted termination in February 2017 was improper and ineffective. Despite receiving proper and sufficient notice of the Sale Motion, Clasen failed to object or otherwise participate in the proceeding. The Court held that "the Assigned Contracts to be assumed and assigned to AMERRA are valid and binding, in full force and effect, and enforceable in accordance with their terms" against all Counterparties, including Clasen, and Clasen is now bound by the terms of the Sale Order. Sale Order ¶ HH at 8.

## NOTICE

24. Notice of this Motion and the hearing thereon will be given to: (a) counsel to the Chapter 7 Trustee; (b) Clasen Quality Chocolate, Inc.; (c) counsel to the U.S. Trustee; (d) the other Counterparties to the Powder Contracts or counsel thereto; and (e) any such other party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-1(b).

## CONCLUSION

25. For all of the foregoing reasons, AMERRA respectfully requests that the Court enforce the Sale Order and declare that the Assigned Contracts are valid and binding against Tate.

26. WHEREFORE, AMERRA requests that the Court grant the Motion and other such relief as is just and proper.

Dated: New York, New York
       July 9, 2018                                         SIDLEY AUSTIN LLP

                                        By:   /s/ *Lee S. Attanasio*
                                                Lee S. Attanasio
                                                787 Seventh Avenue
                                                New York, New York 10019
                                                Telephone: (212) 839-5300
                                                Facsimile: (212) 839-5599
                                                lattanasio@sidley.com

                                                *Attorneys for AMERRA Capital Management LLC*