WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for Alan Nisselson, Trustee, Plaintiff*
156 West 56th Street
New York, New York 10019
Tel: (212) 237-1000 / Fax: (212) 262-1215
Attorneys appearing:  James M. Sullivan (jsullivan@windelsmarx.com)
       Leslie S. Barr (lbarr@windelsmarx.com)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re : <br> : <br> TRANSMAR COMMODITY GROUP, LTD., : <br> : <br>                    Debtor. : <br> : | Chapter 7 <br><br> Case No. 16-13625-jlg |
| ALAN NISSELSON, as Chapter 7 Trustee of the estate of TRANSMAR COMMODITY GROUP, LTD., : <br> : <br>             Plaintiff, : <br>   -against- : <br> : <br> PETER B. JOHNSON, : <br> : <br>             Defendant. : | Adv. Pro. No. 18-0____-jlg |

**COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO
11 U.S.C. §§ 544, 548, AND 550 AND NEW JERSEY UNIFORM FRAUDULENT
TRANSFER ACT, N.J.S.A. 25:2-20, et seq., OR SIMILAR APPLICABLE STATE OR
OTHER LAW**

Alan Nisselson ("**Plaintiff**" or "**Trustee**"), as trustee for the chapter 7 estate (the "**Estate**") of Transmar Commodity Group, Ltd. ("**Transmar**" or the "**Debtor**"), the Debtor in the above-captioned chapter 11 case (the "**Bankruptcy Case**"), by his counsel, Windels Marx Lane & Mittendorf, LLP, for his Complaint against Peter B. Johnson ("**Peter Jr.**", or "**Defendant**"), upon knowledge with respect of his own acts and upon information and belief and to the best of his knowledge with respect to all other matters, respectfully alleges as follows:

{11645389:6}

**Nature of the Action**

1. Plaintiff seeks to avoid and recover from Defendant, an insider of the Debtor, excessive and fraudulent transfers and/or compensation he received during the two year period prior to the Debtor's bankruptcy filing.

**Jurisdiction; Venue; Statutory Bases**

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference of the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.).

3. Venue of the Bankruptcy Case and of this proceeding is proper in this District under 28 U.S.C. §§ 1408 and 1409.

4. This adversary proceeding is brought pursuant to Rule 7001, *et seq.* of the Federal Rules of Bankruptcy Procedure and sections 544(b), 548(a), and 550(a) of title 11, United States Code, 11 U.S.C. § 101, *et seq.* (the "**Bankruptcy Code**"), and New Jersey Uniform Fraudulent Transfer Act, NJ Rev. Stat. 25:2-20, et seq. (2017) (the "**Act**"), or similar state or other law applicable pursuant to Bankruptcy Code § 544(b).

5. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A), (F), (H), and (O).

6. The Trustee consents to the entry of final orders or judgment by the Bankruptcy Court if it is determined that consent of the parties is required by the Bankruptcy Court to enter final orders or judgment consistent with Article III of the United States Constitution.

**Background**

**A. Procedural Background.**

7. On December 31, 2016 (the "**Petition Date**"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

{11645389:6}  2

8. On May 23, 2017, ABN AMRO Capital USA LLC, which serves as syndication agent, administrative agent and collateral agent for itself and a group of prepetition lenders (collectively, the "**Lenders**") that hold a first priority blanket lien against essentially all of the Debtor's assets, filed a motion to convert the Debtor's chapter 11 case to a case under chapter 7 of the Bankruptcy Code.

9. On July 11, 2017, the Court entered an Order that approved conversion of the Bankruptcy Case to a case under chapter 7 of the Bankruptcy Code, and granted related relief.

10. On July 26, 2017 (the "**Conversion Date**"), the Court entered an order converting the Debtor's chapter 11 case to a case under chapter 7 of the Bankruptcy Code.

11. On July 26, 2017, the Office of the United States Trustee appointed Alan Nisselson as the interim trustee of the Debtor's Estate, and he has since qualified and is now serving as the permanent trustee of the Estate.

**B.    The Parties.**

12. The Trustee is a resident of the State of New York maintaining an office at Windels Marx Lane & Mittendorf, LLP, 156 West 56th Street, New York, New York 10019. The Trustee brings this action solely in his capacity as trustee for the Debtor's Estate. On the Petition Date, the Debtor was a New York corporation with its principal place of business in Logan Township, New Jersey.

13. Upon information and belief, at all relevant times, Defendant is an individual who has maintained an address at 133 Glen Alpin Road, Morristown, New Jersey 07960.

14. At all relevant times, Defendant was an employee, officer, director, shareholder, or otherwise a person in management or control of the Debtor, and therefore is a statutory insider of the Debtor within the meaning of Bankruptcy Code § 101(31), as defined by Act § 25:2-22, and a non-statutory insider.

**C.    Debtor's Insolvency.**

15.    Prior to the Conversion Date, the Debtor was engaged in the business of trading cocoa and cocoa products for sale within the international confectionary industry.

16.    In September 2011, the Debtor entered into a Credit Agreement with the Lenders, pursuant to which the Lenders made available to the Debtor certain extensions of credit secured by substantially all of Transmar's assets.

17.    Beginning no later than year-end 2014, the Debtor induced the Lenders to increase the amount of, and extend the maturity date of, the Credit Agreement based on false financial statements.

18.    Among other things, analysis of the Debtor's December 31, 2014 audited financials shows that the values of its forward contracts and accounts receivable were overstated by approximately $92.2 million and $23.7 million, respectively, resulting in negative shareholder equity of approximately $43.8 million (liabilities greater than assets).

19.    Over a period of years, and possibly since entering into the 2011 Credit Agreement, the Debtor submitted false borrowing base reports, which, among other things, certified to the Lenders false descriptions of the types and amount of assets serving as collateral for the Lenders' loan.

20.    Over a period of years, and possibly since entering into the 2011 Credit Agreement, the Debtor moved inventory and receivables back and forth between and among its affiliated companies and falsified the balances owed between Transmar and its affiliates in order to mislead the Lenders regarding the nature and value of the assets serving as collateral for the Lenders' loan.

21.    Transmar overstated the accounts receivable on its financial statements by including certain "circle contracts".

22. The Debtor disguised the foregoing activities by maintaining two sets of books and records.

23. The purpose of these false borrowing base reports and activities was to intentionally inflate the amount and value of Transmar's assets in order to obtain additional borrowings and avoid defaults under the Credit Agreement and other existing loans.

24. Since at least year-end 2014, the asset values shown in the Debtor's financial statements and borrowing base reports were grossly inflated and the Debtor's liabilities were greater than the fair value of the Debtor's property, exclusive of any property transferred, concealed, or removed with an intent to hinder, delay, or defraud the Debtor's creditors.

25. Upon information and belief, the Debtor had not generated a positive operating cash flow since 2012.

26. Given that the Debtor was in violation of its existing loan agreements, was relying on false borrowing base reports to avoid defaults under such loans and to obtain additional loans, and was not generating a positive cash flow, the Debtor was insolvent as of at least year-end 2014, as it would not have been able to pay its existing debts as they became due absent the submission of the false borrowing base reports.

27. Since at least year-end 2014, the Debtor was undercapitalized and was unable to finance its day-to-day business operations without defrauding the Lenders and its other creditors.

28. At all relevant times, the Debtor was insolvent within the meaning of Bankruptcy Code § 101(32) and Act § 25:2-23.

**D.    The Indictment and Guilty Pleas of Transmar Executives.**

29. On or about August 8, 2017, the United States Attorney for the Southern District of New York and the New York Office of the Federal Bureau of Investigation announced the unsealing of an indictment (the "**Indictment**") against Peter Jr., his father, Peter G. Johnson, and

{11645389:6}    5

Thomas Reich (collectively, the "**Indicted Transmar Executives**"). The Indictment charged the Indicted Transmar Executives with defrauding a group of lenders with false "borrowing base" reports from at least in or about 2014 through at least in or about November 2016 designed to secure and maintain a $400 million line of credit for the Debtor.

30. According to the Indictment, the Debtor utilized a number of means to falsify the "borrowing base" reports, including arrangements or "circle" transactions with amenable third party intermediaries, who agreed to execute contracts with, and receive invoices from, the Debtor, but which never took physical possession of the invoiced goods and "paid for" the goods with cash received from the Debtor itself through the Debtor's European affiliate, Euromar Commodities GmbH ("**Euromar**").

31. Peter Jr. and the other Indicted Transmar Executives have pled guilty to one count of conspiracy to commit bank fraud and wire fraud affecting a financial institution and have been sentenced to prison for his role in these transactions.

32. In his plea allocution, Peter Jr., a former Transmar and Euromar executive, admitted that between 2014 and 2016 he falsified reports, or was aware of such false reports, that overstated the Debtor's collateral/inventory to its Lenders in order to support the Debtor's credit facilities. The false information provided by the Debtor to its lenders included borrowing base reports listing fictitious inventory.

33. In his plea allocution, Thomas Reich, also a former Transmar executive, succinctly summarized the fraud involving Transmar and Euromar perpetrated by the Defendant and the other Indicted Transmar Executives, the Debtor and Euromar: "We, at Transmar and Euromar, worked to document fictitious transactions in order to borrow against in order to try to save the company. We booked assets we did not own. We ignored liabilities we owed."

**E.      Defendant's Transactions with Debtor; the Transfers.**

34.     During the two year period before the Petition Date, the Debtor transferred its funds to Defendant, in payment of indebtedness or obligations in the form of wages, salary, or compensation incurred and owed by the Debtor to Defendant, as set forth on the list attached hereto as **Exhibit "A"** (collectively, the "**Transfers**").

35.     The Transfers were made outside the ordinary course of business under an employment contract.

36.     While employed by the Debtor, Defendant actively assisted, promoted, and concealed the fraudulent conduct described above.

37.     Defendant Peter Jr., who functioned as a de facto Transmar officer, was its senior decision-maker, and oversaw Transmar's European affiliate, Euromar, directed the fraudulent activities described above, and pled guilty to criminal charges arising from his activities.

38.     The Debtor received no benefit from the services allegedly rendered by Defendant because Defendants actions helped perpetuate the fraudulent conduct for the benefit of affiliates such as Euromar, or other third parties, rather than for the Debtor and its creditors.

39.     In fact, many of the Defendants' actions caused more harm to the Debtor than good.

40.     During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers of an interest of the Debtor in property made to Defendant that may be recoverable under the Bankruptcy Code or applicable non-bankruptcy law, including any transfers of an interest of the Debtor in property made to Defendant before or after the Petition Date. It is Plaintiff's intention to avoid and recover all such transfers made by the Debtor. Plaintiff reserves the right to amend this original complaint to include: (i) further information regarding the Transfer(s); (ii) additional transfers; (iii) modifications of and/or revision to

Defendant's name; (iv) additional defendants; and/or (v) additional causes of action (collectively, the "**Amendments**"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original complaint.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**(Avoidance and recovery of intentionally fraudulent transfers pursuant to Bankruptcy Code §§ 548(a)(1)(A) and 550(a))**

41.     The Debtor made the Transfers with actual intent to hinder, delay, or defraud its existing or future creditors.

42.     Peter Jr. exercised sufficient managerial control over the Debtor to be an insider of the Debtor.

43.     Defendant knowingly participated in making the fraudulent representations of material fact to the Lenders about Transmar's financial condition and its borrowing base, instructed Transmar employees about how to implement them, and moved or caused to be moved the Debtor's accounts receivable and inventory to and from Euromar.

44.     Defendant knew about, directed, and participated in the creation and dissemination of the false reports about Transmar's borrowing base and Transmar's false monthly and annual financial statements, which misstated the amount of the company's inventory, the Transmar-Euromar balance, and the value of Transmar's forward transactions, among other deficiencies.

45.     Defendant pled guilty to criminal charges of conspiracy to commit bank fraud and wire fraud.

46.     Defendant was privy to critical information about the Debtor's finances, controlled and set firm policy regarding the Debtor's disposition of assets and the treatment of

liabilities, and was in a position to secure payment ahead of other creditors.

47. The Transfers may be avoided pursuant to Bankruptcy Code § 548(a)(1)(A), and recovered by Plaintiff pursuant to Bankruptcy Code § 550(a)(1).

## SECOND CLAIM FOR RELIEF
### (Avoidance and recovery of constructively fraudulent transfers pursuant to Bankruptcy Code §§ 548(a)(1)(B) and 550(a))

48. Plaintiff repeats, realleges and incorporates by reference the allegations contained in all preceding paragraphs of this complaint as though set forth at length herein.

49. The Debtor did not receive reasonably equivalent value in exchange for the Transfers.

50. The Debtor was insolvent on the dates that the Transfers were made or became insolvent as a result of the Transfers.

51. Alternatively, the Debtor engaged in business or a transaction, or was about to engage in business or a transition, for which any property remaining with the Debtor who made or for whose benefit the Transfers were made was an unreasonably small capital.

52. Alternatively, the Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

53. Alternatively, the Debtor made such Transfers to or for the benefit of Defendant as an insider, under an employment contract and not in the ordinary course of business.

54. The Transfers were made to or for the benefit of Defendant within the two year period prior to the Petition Date.

55. The Transfers may be avoided pursuant to Bankruptcy Code § 548(a)(1)(B), and recovered by Plaintiff pursuant to Bankruptcy Code § 550(a)(1).

### THIRD CLAIM FOR RELIEF
**(Avoidance and recovery of intentionally fraudulent transfers pursuant to
Act §§ 25:2-25(a), 25:2-27, and 25:2-29, and Bankruptcy Code §§ 544, 550(a),
or similar state or other law applicable pursuant to Bankruptcy Code § 544(b))**

56. Plaintiff repeats, realleges and incorporates by reference the allegations contained in all preceding paragraphs of this complaint as though set forth at length herein.

57. At all times relevant to the Transfers, and as of the Petition Date, there existed actual unsecured creditors of the Debtor who could have avoided any transfer of an interest of the Debtor in property that is avoidable under the Act or similar state or other law applicable pursuant to Bankruptcy Code § 544(b).

58. The Transfers constituted transfers by the Debtor of its assets under the Act or similar state or other law applicable pursuant to Bankruptcy Code § 544(b).

59. The Transfers were made with actual intent to hinder, delay, or defraud either present or future creditors.

60. The Transfers are voidable under Act § 25:2-25(a) and Bankruptcy Code § 544(b), or similar state or other law applicable pursuant to Bankruptcy Code § 544(b).

61. Under Act § 25:2-29 and Bankruptcy Code § 550(a), or similar state or other law applicable pursuant to Bankruptcy Code § 544(b), Plaintiff may recover the Transfers or the value thereof.

62. By reason of the foregoing, Plaintiff is entitled to set aside the conveyance of the Transfers and recover them or the value thereof.

### FOURTH CLAIM FOR RELIEF
**(Avoidance and recovery of constructively fraudulent transfers pursuant to
Act §§ 25:2-25(b), 25:2-27, and 25:2-29, and Bankruptcy Code §§ 544 and 550(a),
or similar state or other law applicable pursuant to Bankruptcy Code § 544(b))**

63. Plaintiff repeats, realleges and incorporates by reference the allegations contained in all preceding paragraphs of this complaint as though set forth at length herein.

64. At all times relevant to the Transfers, and as of the Petition Date, there existed actual unsecured creditors of the Debtor who could have avoided any transfer of an interest of the Debtor in property that is avoidable under the Act or similar state or other law applicable pursuant to Bankruptcy Code § 544(b).

65. The Transfers constituted transfers by the Debtor of its assets under the Act or similar state or other law applicable pursuant to Bankruptcy Code § 544(b).

66. The Debtor did not receive reasonably equivalent value in exchange for the Transfers within the meaning of the Act or similar state or other law applicable pursuant to Bankruptcy Code § 544(b).

67. Based upon the foregoing, (a) the Transfers were fraudulent transfers pursuant to Act § 25:2-27(a) or similar state or other law applicable pursuant to Bankruptcy Code § 544(b), because the Debtor was either insolvent at the time the Transfers were made to Defendant or was rendered insolvent thereby within the meaning of the Act; (b) the Transfers were fraudulent transfers pursuant to Act § 25:2-27(b) or similar state or other law applicable pursuant to Bankruptcy Code § 544(b), because the Transfers were made to Defendant, an insider for an antecedent debt, the Debtor was insolvent at that time, and the Defendant had reasonable cause to believe that the Debtor was insolvent; (c) the Transfers were, pursuant to Act § 25:2-25(b)(1) or similar state or other law applicable pursuant to Bankruptcy Code § 544(b), fraudulent to the Debtor's present and future creditors because the Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or (d) the Transfers were fraudulent transfers pursuant to Act § 25:2-25(b)(2) or similar state or other law applicable pursuant to Bankruptcy Code § 544(b), because at the time the Debtor made the Transfers, the Debtor intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the

debtor's ability to pay as they become due.

68.   By virtue of the foregoing, Plaintiff is entitled to judgment against Defendant (a) pursuant to Act §§ 25:2-25 or 25:2-27 or similar state or other law applicable pursuant to Bankruptcy Code § 544(b), finding the Transfers were fraudulent transfers, and (b) pursuant to Bankruptcy Code §§ 544(b) and 550(a) and Act § 25:2-29 or similar state or other law applicable pursuant to Bankruptcy Code § 544(b), setting aside and recovering such Transfers, or the value thereof for the benefit of the Debtor's Estate, in an amount sufficient to pay all allowed pre-petition claims and administrative claims in this bankruptcy case, with applicable interest.

**WHEREFORE**, Plaintiff prays that the Court enter a judgment against Defendant:

(a)   On Plaintiff's First Claim for Relief, pursuant to Bankruptcy Code §§ 548(a)(1)(A) and 550(a), (i) in favor of Plaintiff in an amount not less than the amount of the Fraudulent Transfers; (ii) avoiding and recovering the Fraudulent Transfers or the value thereof for the benefit of the Estate; and (iii) directing Defendant to surrender and transfer or to otherwise facilitate the surrender and transfer of such avoided Fraudulent Transfers from the Defendant to Plaintiff for the benefit of the Estate;

(b)   On Plaintiff's Second Claim for Relief, pursuant to Bankruptcy Code §§ 548(a)(1)(B) and 550(a), (i) in favor of Plaintiff in an amount not less than the amount of the Fraudulent Transfers; (ii) avoiding and recovering the Fraudulent Transfers or the value thereof for the benefit of the Estate; and (iii) directing Defendant to surrender and transfer or to otherwise facilitate the surrender and transfer of such avoided Fraudulent Transfers from the Defendant to Plaintiff for the benefit of the Estate;

(c)   On Plaintiff's Third Claim for Relief, pursuant to Bankruptcy Code §§ 544(b) and 550(a) and Act § 25:2-25(a), or similar state or other law applicable pursuant to Bankruptcy Code § 544(b), setting aside, and recovering each of the Transfers from Defendant, and

preserving such transfers, or the value thereof for the benefit of the Debtor's Estate, in an amount not less than the amount of the Fraudulent Transfers;

(d) On Plaintiff's Fourth Claim for Relief, pursuant to Bankruptcy Code §§ 544(b) and 550(a) and Act §§ 25:2-25 and 25:2-27, or similar state or other law applicable pursuant to Bankruptcy Code § 544(b), setting aside, and recovering each of the Fraudulent Transfers from Defendant, and preserving such transfers, or the value thereof for the benefit of the Debtor's Estate, in an amount not less than the amount of the Fraudulent Transfers;

(e) On all Claims for Relief, pursuant to federal common law and N.Y. CPLR 5001 and 5004, awarding Plaintiff pre-judgment interest at the maximum legal rate running from the date of the Transfers to the date of judgment herein;

(f) On all Claims for Relief, pursuant to federal common law and N.Y. CPLR 5003 and 5004, awarding post-judgment interest at the maximum legal rate running from the date of judgment herein until the date the judgment is paid in full, plus costs;

(g) Awarding to Plaintiff the costs and disbursements of this action; and

(h) Granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
December 18, 2018

Respectfully submitted,

WINDELS MARX LANE & MITTENDORF, LLP
*Attorneys for Alan Nisselson, Trustee, Plaintiff*

By: /s/ Leslie S. Barr
James M. Sullivan (jsullivan@windelsmarx.com)
Leslie S. Barr (lbarr@windelsmarx.com)
156 West 56th Street
New York, New York 10019
Tel: (212) 237-1000 / Fax: (212) 262-1215